No. 23-1377

# In the United States Court of Appeals
# for the Tenth Circuit

JOANNE BLACK,

*Petitioner - Appellee,*

v.

BERNARD BLACK,

*Respondent - Appellant.*

---

On Appeal from the United States District Court
for the District of Colorado
No. 1:22-CV-03098
Hon. Daniel Domenico

---

## APPELLANT'S BRIEF
## Oral Argument Requested

---

Bernard Black, *Pro Se*
bernardsblack@gmail.com
2829 Sheridan Place
Evanston IL 60201
847-807-9599

*Attorney for Respondent - Appellant*
BERNARD BLACK

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................ iv

GLOSSARY ..................................................................................... ix

STATEMENT OF RELATED CASES ............................................ 1

APPELLANT'S BRIEF ................................................................... 2

   JURISDICTIONAL STATEMENT ........................................... 2

   PRELIMINARY STATEMENT ................................................. 2

      A.  Overview and Basis for Appeal ................................... 2

      B.  Broader Context: Cascading Travesties of Justice ... 6

   STATEMENT OF ISSUES ...................................................... 10

   STATEMENT OF THE CASE ................................................ 12

   FACTUAL BACKGROUND ..................................................... 13

      A.  General Background .................................................. 13

      B.  The Eight Claims in the DPC Pleading .................. 14

      C.  The Magistrate's Decision ........................................ 15

      D.  The District Court Decision ...................................... 16

      E.  Initial Appeal ............................................................ 18

      F.  Final Sanctions Award ............................................. 18

      G.  Evidence of DPC Bias ............................................... 19

   STANDARD OF REVIEW ...................................................... 19

   SUMMARY OF ARGUMENT ................................................. 20

   ARGUMENT ........................................................................... 21

   I.  Sanctions Can be Proper Only if None of the Claims in the DPC Pleading Could be Brought in Federal Court ............. 21

      A.  Summary of Removal Rights .................................... 21

      B.  Legislative History of §1447(c) ............................... 23

      C.  Applying §1447(c) to an Action Containing Multiple Claims . 25

D.   Sanctions Cannot be Based on Non-Subject-Matter Objections ................................................................... 27

II.   Remand was Improper: The Probate Exception does not Apply 28

III.   Appellant Had an Objectively Reasonably Basis for Seeking Removal ........................................................... 32

A.   A Motion Can Begin a New Civil Action ................................ 32

B.   The DPC Pleading Initiated a New Civil Action ..................... 34

C.   The District Court Did not Assess Whether An Independent Controversy Existed ............................. 36

IV.   The Tenth Circuit Standard for Sanctions Is Not Met ............. 37

A.   Appellant Had an Objectively Reasonable Basis for Seeking Removal ....................................................... 37

B.   Bar Referral Sanction ..................................................... 39

C.   Multiple Sanctions are Improper ........................................ 40

D.   Punitive Sanctions Were Improper: Criminal-Type Procedures Were Not Used ........................................ 41

E.   The Removal Statute Authorizes Fee-Shifting But Not Other Sanctions ................................................. 42

F.   Rule 11 Requires Notice Before Levying Sanctions ............... 42

G.   The Magistrate's Show Cause Order Did Not Provide Adequate Notice ...................................................... 43

H.   The District Court Improperly Relied on Other Cases .......... 45

I.   If Rule 11 is Available, Relying on Inherent Authority is Unjustified ............................................................. 45

J.   Conclusion on Fees and Sanctions ...................................... 46

V.   Sanctions Should not Be Based on the Court's Reading of Other Cases ............................................................. 47

A.   Dangers in Relying on Other Cases .................................... 47

B.   Misreading of Illinois Appellate Decision .............................. 48

C.   Misreading of Oregon Filing ............................................... 52

D.   Misreading of Second Circuit Footnote ................................ 53

E.   Ignoring Context for the DPC's Rulings ............................... 55

    F.   Ignoring the Black Family's Successes in Other Cases .......... 55

  VI.  Sanctions Cannot Be Based on Conduct of Other Legal Persons ................................................................................. 56

  VII.  Double Fees Cannot Be Awarded ............................................... 57

 VIII.  Appellee Standing ....................................................................... 58

  IX.  DPC Bias and Misconduct ......................................................... 59

   X.  The DPC Lacks Jurisdiction to Maintain the Conservatorship 63

  XI.  Conclusion .................................................................................. 64

REASONS FOR REQUESTING ORAL ARGUMENT ........................... 67

CERTIFICATE OF COMPLIANCE ......................................................... 71

CERTIFICATE OF SERVICE .................................................................. 72

ATTACHMENT 1. MAGISTRATE JUDGE NEURITER RECOMMENDATION (FEB. 14, 2023) ................................................ 73

ATTACHMENT 2. DISTRICT JUDGE DOMENICO DECISION (APRIL 4, 2023) ......................................................... 118

ATTACHMENT 3. MAGISTRATE JUDGE NEURITER RECOMMENDATION ON FEES (AUGUST 9, 2023) ........................ 130

ATTACHMENT 4. DISTRICT JUDGE DOMENICO DECISION ON FEES (NOVEMBER 8, 2023) .................................... 138

# TABLE OF AUTHORITIES

Page

**Cases:**

*Ace Investors LLC v. Rubin*
   494 F.App'x 856 (10th Cir. 2012)   ...................................................... 56

*Adriaenssens v. Allstate Ins. Co.*
   258 F.2d 888 (10th Cir. 1958)   ......................................................... 35

*Air-Shields, Inc. v. Fullam*
   891 F.2d 63 (3d Cir. 1989)   .............................................................. 22

*Applebaum v. Fabian*
   No. 22-1049
   2022 WL 17090172 (3d Cir. Nov. 21, 2022)   ................................... 26

*Ariel Land Owners, Inc. v. Dring*
   351 F.3d 611 (3d Cir. 2003)   ............................................................. 22

*Becker v. Ute Indian Tribe*
   No. 22-4022
   2023 WL 5051167 (10th Cir. Aug. 8, 2023)   .............................. 47, 48

*Bedree v. Bedree*
   396 F.App'x 312 (7th Cir. 2010)   ...................................................... 26

*Black v. Black II*
   482 P.3d 460 (Colo.App. 2020)   ....................................... 14, 52, 54, 59

*Black v. Black*
   422 P.3d 592 (Colo. App. 2018)   ....................................................... 33

*Black v. Black*
   No. 23-1155
   2023 WL 7439109 (10th Cir. July 19, 2023)   ................................... 18

*Bradley v. Fisher*
   80 U.S. 335 (1871)   ........................................................................... 44

*Braley v. Campbell*
   832 F.2d 1504 (10th Cir. 1987)   ....................................................... 44

*Butler v. Biocore Med. Techs., Inc.*
   348 F.3d 1163 (10th Cir. 2003)   ......................................................... 6

iv

*Butler v. Biocore Med. Techs., Inc.*
348 F.3d 1163 (10th Cir. 2003) ................................................ 19, 58

*Chambers v. NASCO*
501 U.S. 32 (1991) ........................................................... 42, 46, 48

*Chevalier v. Estate of Barnhart*
803 F.3d 789 (6th Cir. 2015) ................................................ 26

*Collins v. Daniels*
916 F.3d 1302 (10th Cir. 2019) ............................................ 39

*Cooter & Gell v. Hartmarx Corp.*
496 U.S. 384 (1990) ............................................................ 39

*Dal v. Black*
No. 1-19-1348
2020 WL 7046887 (Ill. App. Ct. Nov. 30, 2020) ........................ 50, 51

*Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.*
98 F.App'x 752 (10th Cir. 2004) ........................................... 16, 23

*Fed. Nat. Mortg. Ass'n v. Sechrist*
No. 11–cv–02392–WJM–MJW
2012 WL 3778288 (D. Colo. Aug. 30, 2012) ............................... 38

*Fox v. Vice*
563 U.S. 826 (2011) ........................................................... 39, 52

*Garbie v. DaimlerChrysler Corp.*
211 F.3d 407 (7th Cir. 2000) ................................................ 42

*GE Betz, Inc. v. Zee Co., Inc.*
718 F.3d 615 (7th Cir. 2013) ................................................ 36

*Goodyear Tire & Rubber Co. v. Haeger*
581 U.S. 101 (2017) ............................................................ 41, 42

*Hamilton v. Aetna Life & Cas Co.*
5 F.3d 642 (2d.Cir. 1993) ..................................................... 22

*In re Bethesda Mem. Hosp., Inc.*
123 F.3d 1407 (11th Cir. 1997) ............................................. 22

*In re Shell Oil Co.*
932 F.2d 1523 (5th Cir. 1991) ............................................... 22

*Jackson-Platts v. Gen. Elec. Capital Corp.*
727 F.3d 1127 (11th Cir. 2013) ............................................. 36

*Johnson v. Labs, Inc.*
No. 16–cv–00718–MEH
2016 WL 9735765 (D. Colo. Sept. 8, 2016) ...................................... 38

*Jones v. Brennan*
465 F.3d 304 (7th Cir. 2006) ................................................... 26

*Koon v. United States*
518 U.S. 81 (1996) ............................................................. 39

*Lebron-Yero v. Lebron-Rodriguez*
No. 20-1443
2022 WL 611589 (1st Cir. March 2, 2022) ...................................... 26

*Lefkowitz v. Bank of New York*
528 F.3d 102 (2d Cir. 2007) ................................................... 26

*Litvak v. Black*
147 N.E.3d 835 (Ill. App. Ct. 2019) ...................................... 8, 48, 51

*Loftis v. United Parcel Serv., Inc.*
342 F.3d 509 (6th Cir. 2003) .................................................. 22

*London & Lancashire Indem. Co. of Am. v. Courtney*
106 F.2d 277 (10th Cir. 1939) ................................................. 35

*Maniar v. FDIC*
979 F.2d 782 (9th Cir. 1992) .................................................. 22

*Markham v. Allen*
326 U.S. 490 (1946) ........................................................... 29

*Marshall v. Marshall*
547 U.S. 293 (2006) ..................................................... 14, 22, 29, 30

*Martin v. Franklin Capital Corp.*
546 U.S. 132 (2005) ...................................................... 19, 37

*Matios v. City of Loveland*
No. 22-1394
2023 WL 4145905 (10th Cir. June 23, 2023) ............................. 40, 42

*McKie v. Kornegay*
No. 21-1943
2022 WL 4241355 (2d Cir. Sept. 15, 2022) ..................................... 26

*Mem'l Health Sys. v. Aetna Health, Inc.*
730 F.Supp.2d 1289 (D.Colo. 2010) ............................................ 38

*Midlock v. Apple Vacations West, Inc.*
  406 F.3d 453 (7th Cir. 2005) ........................................................ 40, 42

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*
  877 F.3d 895 (10th Cir. 2017) ...................................................... 61

*Pelczar v. Pelczar*
  833 F.App'x 872 (2d Cir. 2020) .................................................... 26

*People ex rel. Smith v. Fremont Cnty.*
  102 P.2d 476 (1940) .................................................................... 64

*Positive Solutions Software, Inc. v. New Century Mortg. Corp.*
  619 F.3d 458 (5th Cir. 2010) ........................................................ 47

*Roadway Express, Inc. v. Piper*
  447 U.S. 752 (1980) ............................................................ 41, 42, 44

*Sandoval v. Archdiocese of Denver*
  8 P.3d 598 (Colo.App. 2000) ........................................................ 61

*Stark-Romero v. Nat'l R.R. Passenger Co.*
  763 F.Supp.2d 1231 (D.N.M. 2011) ............................................ 5, 35

*Stenson v. Edwards*
  86 F.4th 870 (10th Cir. 2023) ...................................................... 40

*Three Keys Ltd. V. SR Util. Holding Co.*
  540 F.3d 220 (3d. Cir. 2008) ........................................................ 26

*Ullman v. Safeway Ins. Co.*
  995 F.Supp.2d 1196 (D.N.M. 2013) ............................................ 37

*Vetro, Inc. v. Active Plumbing & Heating, Inc.*
  403 F.Supp.2d 1033 (D.Colo. 2005) ............................................ 37

*Wisecarver v. Moore*
  489 F.3d 747 (6th Cir. 2007) ........................................................ 26

**Statutes:**

28 U.S.C. § 1291 ........................................................................ 2

28 U.S.C. § 1332 ........................................................................ 2

28 U.S.C. § 1441 .............................................. 2, 13, 21, 28, 32

28 U.S.C. § 1446 .............................................................. 13, 32

28 U.S.C. § 1447 .............. 3, 4, 12, 13, 16, 18, 21, 23, 24, 38, 39, 42, 58

28 U.S.C. § 1927 ................................................................... 38, 39

Colo. Rev. Stat. § 13-1-124 ................................................... 60

Colo. Rev. Stat. § 13-80-101 ................................................ 61

**Court Rules:**

Colo. R. Civ. P. 3 ................................................................... 32, 60

Fed. R. Civ. P. 11 ................................................................. 42, 44

**Other:**

Wright and Miller, *Federal Practice and Procedure* § 3721.1 ............ 35

## Glossary

| Abbreviation | Definition |
|---|---|
| 2013 Trust | Joanne Black 2013 Trust |
| Bernard | Bernard Black, in contexts where it is not important to specify the capacity in which he is acting. |
| Conservatorship | Conservatorship over Joanne Black, DPC Case 12 PR 1272 |
| Dain | Anthony Dain, co-trustee of the SNT and former co-trustee of the Issue Trust (resigned in 2015) |
| DPC | Denver Probate Court |
| DPC Pleading | Pleading filed with the DPC, styled as a motion but in fact bringing new claims against new parties, which requires a complaint under Colorado Rules of Civil Procedure |
| EDNY Decision | *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y.), Memorandum and Order (March 30, 2023) ("**EDNY-Decision**"), at 30-35, *recons.denied* (July 31, 2023) |
| Issue Trust | Irrevocable Trust for the Benefit of the Issue of Renata Black |

| | |
|---|---|
| IT Trustee Black | Appellant, in his legal capacity as Issue Trust Trustee |
| Joanne | Joanne Black, Bernard's sister and the person subject to the Conservatorship |
| Non-subject-matter objections | Objections to removal, on any basis other than federal subject matter jurisdiction to hear the removed claims, once removed. |
| NY Guardianship Case | *In re Application of Bernard Black for Appointment of a Guardian for Joanne Black*, Index 80253/2014 (N.Y. Sup.Court, Richmond County) (June 7, 2016) |
| Renata | Renata Black, mother of Bernard and Joanne |
| SNT | Supplemental Needs Trust for the Benefit of Joanne Black |
| SNT Trustee Black | Bernard, in his legal capacity as SNT Trustee |
| UAGPPJA | Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act |

## STATEMENT OF RELATED CASES

Appellant appealed the remand decision by Judge Domenico, as well as his sanctions decision. *Black v. Black*
, Case 23-1155 (10th Cir. 2023). The Tenth Circuit determined that the remand decision was not reviewable, and that the sanctions decision was not yet final, and thus not ripe for review. Order in Case 23-1155 (July 19, 2023). The sanctions decision is now final and thus appealable.

**Appellant's Brief**

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction under 28 U.S.C.§1332. Appellant's notice of appeal was timely filed on December 8, 2023. This Court has appellate jurisdiction under 28 U.S.C.§1291 for a final judgment dated November 8, 2023. This brief was timely filed on April 22, 2024, and timely amended on April 26, 2024.

## PRELIMINARY STATEMENT

### A.   Overview and Basis for Appeal

Appellant, acting pro se in his capacity as trustee ("**IT Trustee Black**") of the Irrevocable Trust for the Benefit of the Issue of Renata Black ("**Issue Trust**"), sought removal from the Denver Probate Court ("**DPC**") to the Colorado District Court, of Appellee's filing in the DPC ("**DPC Pleading**"). 28 U.S.C.§1441(a), allows removal, as of right, of a "civil action."

The DPC Pleading was styled as a motion in a conservatorship case ("**Conservatorship**") involving Appellant's sister, Joanne Black ("**Joanne**"). However, it brought eight entirely new claims, never raised before the DPC, against multiple new parties, including Appellant. New claims against new parties constitute a new civil action. They require a

complaint, not a motion in a proceeding involving other parties. The complaint triggers standard procedural protections for defendants, including removal rights. Appellee cannot defeat the new parties' removal rights by calling her pleading a "motion."

Appellant timely filed for removal based on diversity. Appellee failed to timely object. Under 28 U.S.C.§1447(c), this waived all objections to removal other than lack of federal subject matter jurisdiction to hear the removed claims. Call these waived objections, "**non-subject-matter objections**." The sole relevant subject-matter-based objection is the probate exception. Whether a motion can begin a new civil action is moot, due to waiver.

Appellee later untimely objected to removal. His petition was referred to Magistrate Neuriter, who recommended remand primarily on non-subject-matter grounds, believing incorrectly that he could remand on these grounds *sua sponte*. Magistrate Neuriter also *sua sponte* awarded attorney fees and referred Appellant to the New York bar for potential disciplinary proceedings.

Appellant objected to the Magistrate's findings. The District Court affirmed remand, primarily on (different) non-subject-matter grounds, raised *sua sponte*. This was improper; the court lacked power to remand on waived grounds. The District Court also decided that the probate exception to federal jurisdiction barred federal jurisdiction, stating in a

conclusory sentence that the conservatorship action "is undoubtedly within [the probate] exception, as it regards the administration of a decedent's estate."

This was a new, patently incorrect basis for the probate exception, not raised before, nor briefed: the Conservatorship does not involve a decedent! The District Court affirmed the Magistrate's award of sanctions.

Appellant appealed. This Court held that the remand was non-appealable under 28 U.S.C.§1447(d). This appeal involves only the sanctions decision.

The sanctions decision should be reversed, for multiple reasons. First, all non-subject-matter objections were waived. Thus, sanctions cannot be based on whether these objections would have been valid if timely raised.

Appellant's argument for subject-matter jurisdiction needs only to be objectively reasonable to avoid sanctions. It is not only reasonable, it is correct. The District Court invoked the prong of the probate exception for administration of a decedent's estate, in a case with no decedent. Even if a decedent existed, applying the probate exception requires claim-by-claim analysis of whether each removed claim would involve the *federal court* administering an decedent's estate. The District Court conducted no such analysis.

Appellant's briefing analyzed the potentially applicable prong of the probate exception – would the federal court need to dispose of assets in state court custody. This prong does not apply; the relevant assets are in the custody of an Illinois federal court. Appellant's analysis was apparently persuasive; the District Court did not rely on this prong, and invoked a patently incorrect prong.

Moreover, even if waived objections are relevant for sanctions, they cannot support sanctions in this case. Removal was objectively reasonable. The closest Tenth Circuit case is *Stark-Romero v. Nat'l R.R. Passenger Co.*, 763 F.Supp.2d 1231 (D.N.M. 2011). This case *supports* removal; the District Court misread it. Thus, Appellant had a good faith basis for seeking removal.

To support sanctions, the Magistrate's and District Court relied on decisions in other cases. This was improper. First, Appellant had no notice that sanctions might be based on those cases. Second, punitive sanctions based on inherent judicial authority require heightened procedural protections, which were not provided.

Third, sanctions can be awarded only if they are proper *in this case*; not based on the court's view of other cases. Fourth, the District Court misread the cases it relied on. These misreadings underscore the danger in relying on these decisions.

The fee award involves small dollars and does not, by itself, warrant appeal. The bar referral is a different matter; it has already deeply

harmed Appellant's reputation, whether or not the New York bar acts on the referral. The harm arises because the referral was public. Normally, bar proceedings are private; they become public only if a sanction is applied, after full hearing. Reputational harm, including from a bar referral, is appealable. *Butler v. Biocore Med. Techs., Inc.*, 348 F.2d 1163 (10th Cir. 2003).

This appeal seeks reversal of the bar referral and a ruling that the fee award was not justified.

## B.   Broader Context: Cascading Travesties of Justice

This should be a technical case, about whether Appellant had a reasonable basis to believe that the probate exception did not apply, or at most, it should be about whether Appellant had a reasonable basis to seek removal, even considering waived objections. All else should be irrelevant. The Magistrate and District Court, however, engaged in ad-hominem attacks on Appellant, relying on supposed facts from other cases, which are irrelevant for removal (and were misread). To respond, Appellant provides here broader context. The District Court reached outside the record to levy sanctions; Appellant must do likewise to respond.

The purpose of removal is to provide a neutral forum, to protect against state court bias against out-of-state litigants. State court bias in this case has been extreme. The DPC has repeatedly acted without

notice, jurisdiction, or evidentiary hearing. As discussed below, this family saga should have been settled in 2015, before the first DPC decision, when Appellant offered to place *the entire disputed amount* in Joanne's trust, the SNT.

Worse yet, there should be no Conservatorship and thus no DPC jurisdiction to hear the DPC Pleading. Joanne left Colorado in 2013 and returned to her long-time home in New York. In 2016, she was found fully competent and to not need a conservator. This New York decision is binding on Colorado and divests the DPC of subject-matter jurisdiction to continue the Conservatorship, which should have been terminated long ago.

Appellant filed for removal, specifically to protect his son Samuel, who was sued despite no contacts with Colorado or prior involvement with the Conservatorship. The DPC previously ruled against Samuel, without notice, jurisdiction, or evidentiary hearing. Samuel appealed; the DPC decisions against him were vacated. After remand, Judge Leith has again ruled against Samuel, finding him liable for breach of fiduciary duty without proper notice, without jurisdiction, without allowing civil discovery, and without specifying what he did wrong. He must appeal again.

More broadly, the Conservatorship involve multiple travesties of justice, one building on the next. The first involved an attack on two Black family trusts, the Issue Trust and the Supplemental Needs Trust

for the Benefit of Joanne Black ("**SNT**") by Appellant's cousin and co-trustee, Anthony Dain ("**Dain**"). A federal court has since ruled that Dain's attacks breached his fiduciary duty to both trusts.[1]

The second travesty is the DPC's repeatedly ruling against Bernard and his family, often without notice, jurisdiction, or evidence. Many examples are provided below, but one here: The DPC issued scathing, unappealable obiter dicta against Appellant's nonparty wife, Katherine Litvak, based on no evidence whatsoever. An Illinois appellate court relied on the dicta, *Litvak v. Black*, 147 N.E.3d 835, 839 (Ill. App. Ct. 2019), and the Colorado Appellate Court and the Magistrate then relied on the Illinois court.[2] All smoke, no substance.

The third travesty is the DPC's role in fomenting endless litigation war. Bernard has offered to settle for *100 cents on the dollar*, in 2015 and many times since, by transferring the disputed Issue Trust funds to the SNT, where Dain claimed they belong.[3]

This would be a wonderful solution for Joanne, who would be a rich woman. Dain's refusal to settle has led to litigation expense far exceeding the amount in dispute, and caused the trusts to be frozen.

---

[1]  *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y., March 30, 2023) ("**EDNY Decision**")(App.Vol.4 at 854), *recons.denied* (July 31, 2023)(App.Vol.4 at 982).

[2]  See Part V.B *infra*.

[3]  See, .e.g,, App.Vol.4 at 936 (offering to "transfer the issue trust funds/assets straight over to the SNT**)**.

Joanne, now 67, has ever fewer years in which to enjoy the funds she will receive when the litigation ends.[4] Instead, DPC-fostered litigation continues, with Joanne as a principal victim.

The fourth travesty is the repeated claim, by the DPC and Dain, repeated by the District Court, that Bernard stole funds from his sister. He did not. To explain why, some background is needed. Renata Black ("**Renata**"), Bernard and Joanne's mother, died in 2012 in N.Y. Bernard thereafter sought authority from the DPC, as Joanne's conservator, to disclaim $3M in payable-on-death assets from so they would flow into Renata's estate and be distributed under her will, two-thirds to the SNT/one-third to the Issue Trust. Dain's core claim was that he believed all disclaimed assets would flow to the SNT, not two-thirds. Thus, the amount in dispute was the one-third ($1M) that went to the Issue Trust. All funds placed in the Issue Trust are still there (App.Vol.4 at 1006). *None were stolen*. Bernard's accounting for Renata's estate, prepared by forensic accountant Melinda Harper, confirms that the SNT received two-thirds of estate assets, as Renata's will requires (App.Vol.1 at 203).

The fifth travesty is the DPC maintaining, in 2024, a conservatorship over a non-resident, Joanne, who left Colorado in 2013, lives in New

---

[4]    Dain has DPC-appointed supporters, all of whom earn fees from the litigation. He sometimes acts through those supporters. However, as the EDNY found, Dain is the "driving force" behind the litigation (App.Vol.4 at 885).

York, and was found competent by a New York court in **2016**, in a decision binding on Colorado. The DPC refused to terminate the Conservatorship; Bernard is appealing (App.Vol.5 at 1049).

The final travesty is other courts, including the Magistrate and the District Court, relying on the DPC's rhetoric without assessing facts for themselves.

The DPC's conduct in this case is not unique to Appellant, and has led to numerous, scathing newspaper exposes and state audits.[5]

If this panel considers decisions outside the removal proceeding, which Appellant believes it should not, it must consider evidence of Dain's breach of duty and the DPC's improper conduct.

## STATEMENT OF ISSUES

1. Did the District Court err in awarding sanctions against Appellant, without a factual hearing, where the only issue for removal was federal subject matter jurisdiction, Appellant's extensive briefing supported jurisdiction, and the District Court found lack of subject matter jurisdiction on patently factually incorrect grounds, not mentioned in the Magistrate's decision or the parties' briefs?

---

[5]   See Reasons for Requesting Oral Argument, *infra*.

2. Can sanctions be based on non-subject-matter objections, which were waived by Appellee; if so, can they be sustained when the District Court ruled contrary to Tenth Circuit precedent, and misread the most relevant Tenth Circuit case?

3. Can the District Court award multiple sanctions – both attorney fees and the bar referral?

4. Can sanctions be awarded when there was no controlling contrary Tenth Circuit precedent?

5. Can the District Court award sanctions based on other cases; if so can it do so without notice to Appellant or factual hearing, despite misreading those cases?

6. Did the sua sponte referral to the New York bar based on other cases, without giving Appellant notice of this basis, violate due process?

7. Can the District Court treating Appellant as responsible for conduct of other legal persons in other cases.

8. Is the District Court's double fees award void for lack of subject-matter jurisdiction?

9. Does the District Court have discretion to double the fee award by requiring, after payment was made, a second payment in a different manner?

13. Since Appellant seeks no monetary relief, does Appellee have standing to object to the relief sought?

## STATEMENT OF THE CASE

Appellant brought the removal action; Appellee failed to timely object. Under 28 U.S.C.§1447(c), this waived all non-subject-matter objections to removal – all objections other than lack of subject-matter jurisdiction to hear the removed claims, if brought in federal court in first instance.

The Magistrate recommended remand, principally on non-subject-matter grounds. The Magistrate awarded two sanctions: attorney fees against Appellant, and referring Appellant to the New York bar. Appellant objected. The District Court affirmed the remand, on different grounds, also primarily on non-subject-matter grounds. The district court also decided that the probate exception to federal jurisdiction barred removal, on new and patently false grounds, not raised before, and affirmed the Magistrate's sanctions.

Appellant appealed. This Court determined that the remand order was non-appealable under 28 U.S.C.§1447(d), but the sanctions award was not final. *Black v. Black*, Case 23–1155 (July 19, 2023). The District Court thereafter issued a sanctions decision (App.Vol.4 at 979]); this appeal followed.

# FACTUAL BACKGROUND

## A.   General Background

There was no factual hearing, so factual statements in Appellant's pleadings must be accepted as true, analogous to a motion to dismiss. The DPC Pleading (App.Vol.2 at 406) was brought in the Conservatorship case, for which the only prior participants were Bernard, individually and as Joanne's former conservator, Joanne, and Bernard as SNT trustee ("**SNT Trustee Black**") (App.Vol.2 at 431,¶4). The DPC Pleading brought eight new claims, mostly against new parties, not previously before the DPC, including Appellant (*id.* ¶11). Appellant therefore viewed it as a new civil action, removable under 28 U.S.C. § 1441(a), which does not define the term "civil action."

Removal was based on diversity (App.Vol.2 at 431,¶¶1,9), which is not contested. It satisfied the procedural requirements in 28 U.S.C.§1446, also not disputed. The only procedural concern raised by the Magistrate and District Court involved whether the DPC Pleading is a separate civil action.

Appellee did not object to removal within the 30-day period in 28 U.S.C.§1447(c), and therefore waived all non-subject-matter objections to removal. Appellee later untimely sought remand based on the probate exception to federal jurisdiction (App.Vol.2 at 483,¶¶13–19).

The probate exception has three prongs, it "reserves to state probate courts [i] the probate or annulment of a will and [ii] the administration of a decedent's estate; it also [iii] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–312 (2006).

The Conservatorship does not involve a decedent. Renata, the only relevant decedent, died in New York; her will was probated there, *Estate of Renata Black*, File 2012–1209 (Surrogate's Court, Westchester County) (App.Vol.2 at 444,¶4). Thus, only the third probate exception prong s relevant.

## B.  The Eight Claims in the DPC Pleading

The DPC Pleading included eight new claims, none previously brought to the DPC.[6]

### Table 1. Summary of Removed Claims

| Claim |
| --- |
| 1. Damages against Samuel as SNT trustee |
| 2. Suspend Bernard as Issue Trust Trustee |

---

[6]  For claims 7 and 8, the DPC previously ordered remedies, sua sponte, with no notice or motion before it, which were vacated on appeal. *Black v. Black II*, 482 P.3d at 480–82.

| Claim |
| --- |
| 3. Suspend Samuel as Issue Trust trustee |
| 4. Suspend Samuel as SNT trustee |
| 5. Suspend Samuel as trustee of 2013 Trust |
| 6. Suspend Bernard as trustee of 2013 Trust |
| 7. Order deposit of SNT and Issue Trust assets with DPC |
| 8. Reverse disclaimer |

There were no other claims pending before the DPC. These claims involved the following new parties:

Samuel Black, as SNT Trustee

Samuel Black, as Issue Trust Trustee

Samuel Black, as Trustee of the Joanne Black 2013 Trust ("**2013 Trust**")

Bernard as IT Trustee

Bernard as 2013 Trust Trustee

## C. The Magistrate's Decision

The Magistrate recommended remand primarily on procedural grounds, notwithstanding waiver (App.Vol.3 at 619). The Magistrate

15

believed that he could remand sua sponte, as long as he had identified procedural defects within the 30-day period in 28 U.S.C.§1447(c) (App.Vol.2 at 639–648). As discussed below, this was clear error, as the District Court recognized.

The Magistrate also relied on the probate exception (App.Vol.2 at 648–652). He correctly discussed only the third prong, but assumes the DPC Pleading involved property "in the custody of a state probate court." This was clear error; the relevant assets were in the custody of a federal court hearing an interpleader case. *JPMorgan Chase Bank, N.A. v. Black*, 18-cv-03447 ("**Interpleader Case**")(App.Vol.1 at 200; App.Vol.3 at 693). The District Court implicitly recognized this error, by relying on different grounds.

The Magistrate sua sponte awarded fees to Appellee, and referred Bernard to the New York bar (App.Vol.2 at 653–662). He relied heavily on decisions in other cases, but misread the core case he relied on.[7] Reliance on other cases was without notice to Appellant.

### D.   The District Court Decision

Appellant objected to the Magistrate's report (App.Vol.3 at 663) Oral argument was denied. Appellant argued that Tenth Circuit precedent, overlooked by the Magistrate, barred sua sponte remand on procedural grounds. *Farmland Nat'l Beef Packing Co., L.P. v. Stone Container*

---

[7]   See Part V.B *infra*.

*Corp.*, 98 F.App'x 752, 756 (10th Cir. 2004). The District Court accepted this argument (App.Vol.4 at 906). Appellant also challenged the Magistrate's discussion of the probate exception. The District Court apparently accepted Appellant's argument, did not discuss the Magistrate's analysis of the probate exception, and instead developed its own (incorrect) interpretation.

The District Court remanded, on jurisdictional grounds, based on its view that: (i) a motion in an existing case could not be removed (App.Vol.4 at 904–905) and (ii) the Conservatorship was within the probate exception because "it regards the administration of a decedent's estate." App.Vol.4 at 905. As discussed below, both aspects of this decision are clearly wrong. Whether the DPC Pleading was properly removed is irrelevant; all non-subject-matter objections were waived. The court's invoking the probate exception relies on a factually false premise: the DPC proceeding involves no decedent. Moreover, even if a decedent's estate existed, removal is still proper for claims that do not directly interfere with estate administration.

The District Court also upheld sanctions (App.Vol.4 at 908–909). Like the Magistrate, the District Court relied on other cases and did so inaccurately, without notice to Appellant.

17

### E.   Initial Appeal

Appellant appealed the remand and sanctions (Case 23–1155). The Tenth Circuit held that 28 U.S.C.§1447(d) barred a merits appeal because the District Court invoked subject-matter jurisdiction as one basis for remand. *Black v. Black*, No. 23-1155, 2023 WL 7439109, at *2–3 (10th Cir. July 19, 2023). The Tenth Circuit declined to review sanctions because the fee amount had not been determined. *Id.* at *3–5.

### F.   Final Sanctions Award

The Magistrate thereafter specified the fee award at $5,031.60 (App.Vol.4 at 986), the District Court affirmed (App.Vol.4 at 1023). As Appellee's counsel proposed (App.Vol.4 at 960), Appellant paid $5,000 to charity and $31.60 to Appellee's counsel (App.Vol.4 at 1030). After this appeal was filed, Appellee's counsel wrote to the District Court asking whether the charity payment satisfied the District Court's order, without a motion (App.Vol.4 at 1033). This was not a motion. The court ordered payment to counsel, thus effectively doubling the fees award, since the charity payment had been made (App.Vol.4 at 1039). Appellant moved for reconsideration (App.Vol.4 at 1041). The District Court stayed enforcement of its double-fees order pending this appeal (App.Vol.4 at 1046).

### G.   Evidence of DPC Bias

The removal petition was an effort to obtain a fair federal forum, in the face of DPC bias. Evidence of bias, both before and after remand, is discussed below.[8]

## STANDARD OF REVIEW

The principal issues are legal issues, reviewed *de novo,* including: (i) were non-subject-matter objections to federal jurisdiction were waived; (ii) the scope of the probate exception; (iii) can the District Court impose sanctions based on waived objections; (iv) can the court impose sanctions based other cases; (v) can it do so without notice to Appellant specifying those other cases, with opportunity to respond; (vi) can it do so based on conduct of a different legal person?

Imposition of sanctions is generally reviewed under an abuse of discretion standard. *Butler*, 348 F.3d at at 1169. However, an error of law is necessarily abuse of discretion, and neither fees (nor, therefore, other sanctions) can be awarded in removal cases if an "objectively reasonable basis [for removal] exists." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). Moreover punitive sanctions (the bar referral) require enhanced procedural protections, whose scope is a legal issue.

---

[8]   See Part IX *infra.*

## SUMMARY OF ARGUMENT

This case is factually complex, but legally simple. Non-subject-matter objections to removal were waived. At the heart of this appeal is whether federal subject-matter jurisdiction exists for the removed claims? If yes, then remand was error and the sanctions decision cannot stand. Indeed, the sanctions decision cannot stand if Appellant was even *arguably* correct in asserting that the probate exception did not apply. Moreover, since the DPC Pleading contained multiple claims, removal was proper if federal jurisdiction arguably existed for some claims, even if not others.

Even if waived objections can support sanctions, Appellant had an objectively reasonable belief that the claims in the DPC Pleading involved an "independent controversy" under *Stark-Romero*, the closest relevant case. There was no binding, contrary Tenth Circuit precedent.

Appellant believes that conduct in other cases cannot support sanctions. Even if it can: (i) he received no notice that the District Court might consider other cases, or which cases; (ii) the District Court misunderstood the cases it relied on; (iii) punitive sanctions require criminal-type procedural protections, which were not provided; and (iv) Appellant should not be judged on conduct by different legal persons in other cases.

This should be a technical case, turning only on subject-matter jurisdiction; more specifically, the probate exception. The Magistrate's and District Court's ad hominem attacks on Appellant should be ignored. But because the Magistrate and District Court reached outside the record to make them, Appellant must do so to respond.

## ARGUMENT

### I. Sanctions Can be Proper Only if None of the Claims in the DPC Pleading Could be Brought in Federal Court

#### A. Summary of Removal Rights

Under 28 U.S.C.§1441(a), a defendant can remove *as of right* any civil action for which subject-matter jurisdiction exists. A removed civil action can be remanded only if the procedural requirements for removal are not met, or the federal courts would lack subject-matter jurisdiction, if the action had been brought in federal court in first instance. Under 28 U.S.C.§1447(c), the state court plaintiff has 30 days to move for remand:

> A motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

Without a timely motion for remand, _all_ objections to removal are waived, other than subject-matter jurisdiction – could the plaintiff have

brought the action in federal court, has she wanted to? If a civil action includes several claims, and only some can be heard in federal court, the court *must* retain claims for which federal jurisdiction exists, and remand the other claims. *Marshall*, 547 U.S. at 298–299 (Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").

Once non-subject-matter objections are waived, other issues become irrelevant, whether termed removal procedure or (as the District Court did) removal jurisdiction, All that matters is whether one or more claims may remain in federal court.

Once non-subject-matter objections are waived, even severe defects do not allow remand. For example, in *Hamilton v. Aetna Life & Cas Co.*, 5 F.3d 642, 644 (2d.Cir. 1993), the plaintiff *removed his own state-court complaint* to federal court. Remand motion was denied because the case could have been filed in federal court.[9] The standard is whether the removed claim could be heard in federal court, if brought there in first instance. *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 614 (3d Cir.

---

[9]    Valid but untimely objections were also waived in, *e.g.*, *Air-Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3d Cir. 1989)(removal petition filed too late); *Maniar v. FDIC*, 979 F.2d 782, 784–85 (9th Cir. 1992)(same); *In re Shell Oil Co.*, 932 F.2d 1523, 1528–29 (5th Cir. 1991) (fraudulent joinder); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003) (defendant objected to removal); *In re Bethesda Mem. Hosp., Inc.*, 123 F.3d 1407, 1410 (11th Cir. 1997) (several defendants did not join removal).

2003) ("irregularity in removal of a case to federal court is to be considered 'jurisdictional' only if the case could not initially have been filed in federal court.").

The Magistrate and District Court questioned whether the DPC Pleading, because styled as a motion, was removable. Appellant believes that the DPC Pleading initiated a distinct civil action, separate from the Conservatorship.[10] But this issue became moot when Appellee did not timely object to removal. It affects only whether removal was proper, not whether subject-matter jurisdiction exists for the removed claims.

Appellee's waiver binds the District Court. The circuit courts, including the Tenth Circuit in *Farmland*, 98 F.App'x at 756, are unanimous that under §1447(c): The district court lacks power to extend the 30-day deadline; and cannot remand *sua sponte*, on non-subject-matter grounds. (see App.Vol.3 at 674-675 for citations to other circuits).

## B.  Legislative History of §1447(c)

The legislative history confirms that once the 30-day period under §1447(c) expired, a removed action stays in federal court if it could have been brought there in first instance. Congress amended §1447(c) in 1988 and 1996, each time limiting remand. The 1988 amendment: (i)

---

[10]    See Part III *infra*.

removed removal procedure as a basis for remand, absent a timely remand motion; and (ii) clarified that remand on non-subject-matter grounds required a plaintiff motion. The relevant sentences of §1447(c) read, as amended (emphasis added):

> A motion to remand the case on the basis of *any defect in removal procedure* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded.

The accompanying House Report explained:[11]

> So long as the defect in removal procedure does not involve a lack of federal subject-matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject-matter jurisdiction.

After this amendment, some courts drew a distinction between removal *procedure* and removal *jurisdiction*, and remanded for lack of removal jurisdiction. Congress amended §1447(c) in 1996, to reject this distinction and clarify that the only issue is whether the case could have been brought in federal court. The first sentence of §1447(c) reads, after this amendment:

---

[11]   H.R.Rep.100-889 (1988), §1009.

> A motion to remand the case on the basis of *any defect other than lack of subject-matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a).

The House Report, 104–799, explains:

> The intent of this amendment was to impose a 30-day limit on all motions to remand except in those cases where the court lacks subject-matter jurisdiction. The intent of the Congress is not entirely clear from the [1988] wording of 28 U.S.C.§1447(c), and it has been interpreted differently by different courts. [This amendment] clarifies the intent of Congress that a motion to remand a case on the basis of any defect other than subject-matter jurisdiction must be made within 30 days after the filing of the notice of removal….

Given this clear legislative history, the District Court's remand for lack of removal jurisdiction (App.Vol.4 at 907) is improper.

### C.  Applying §1447(c) to an Action Containing Multiple Claims

The DPC Pleading contains 8 claims, against 6 legal persons. Appellant believes that federal jurisdiction exists for all 8 claims.[12] But removal would be proper, and not sanctionable, if jurisdiction exists for any of them, because some claims would remain in federal court and thus justify the removal petition.

---

[12]  See claim-by-claim analysis in App.Vol.3 at 697-700.

To assess the probate exception, the District Court needed to, but did not, conduct a claim-by-claim analysis. The need for claim-by-claim assessment is a specific instance of the general rule that federal courts review each claim separately in deciding whether subject matter jurisdiction exists.

Many probate-exception cases apply claim-by-claim analysis. *See, e.g., Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (five claims barred by probate exception; 4 damages claims not barred); *Three Keys Ltd. V. SR Util. Holding Co.*, 540 F.3d 220, 230 (3d. Cir. 2008); *Wisecarver v. Moore*, 489 F.3d 747 (6th Cir. 2007) (three claims barred, four not barred).[13]

*Marshall* specifically held that a damages claim against a probate executor was not barred. Since *Marshall*, lower courts have uniformly

---

[13]    *See also Lebron-Yero v. Lebron-Rodriguez*, No. 20-1443, 2022 WL 611589 (1st Cir. March 2, 2022) (probate exception applies to one of four claims); *Pelczar v. Pelczar*, 833 F.App'x 872 (2d Cir. 2020) (damages claim against executor not barred; claim involving estate asset is barred); *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355 (2d Cir. Sept. 15, 2022) (some claims barred, others not); *Applebaum v. Fabian*, No. 22-1049, 2022 WL 17090172 (3d Cir. Nov. 21, 2022) (one of five claims barred); *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 802–803 (6th Cir. 2015) (of six claims, only one is potentially barred); *Jones v. Brennan*, 465 F.3d 304, 307–308 (7th Cir. 2006) (barring estate administration claim; allowing damages claim); *Bedree v. Bedree*, 396 F.App'x 312, 315 (7th Cir. 2010) (barring one claim; allowing others).

held that the probate exception does not bar damages claims. Yet the District Court remanded the damages claim against Samuel. This claim alone justifies removal.

### D. Sanctions Cannot be Based on Non-Subject-Matter Objections

The District Court justified remand primarily on the grounds that the DPC Pleading was filed as a motion, stating that:

> A state-court *motion* is neither a civil action nor a proceeding, and thus is not within the ambit of the removal statute.

Appellant discusses below why removal was arguably proper even considering non-subject-matter objections.[14] However, non-subject-matter objections were waived. The only issue before the District Court was whether the probate exception applied to the removed claims, once removed.

Sanctions based on waived grounds cannot be proper. First, the power to waive rests with the state-court petitioner, not the federal court. Imposing sanctions substitutes the court's judgment on whether to object for the state-court petitioner. Second, allowing sanctions for

---

[14]    See Part III *infra.*

waived objections would *de facto* override the statutory 30-day limit for objecting. Third, allowing sanctions could lead to imposing sanctions even though the action remains removed.

Fourth, allowing these sanctions would deprive Appellant of due process. Non-subject-matter objections were waived, and therefore not fully briefed. The only basis that Appellant had to understand the Magistrate's concerns was a conclusory paragraph in the show-cause order stating, without further analysis, that 28 U.S.C.§1441 allows removal of civil actions, but "an individual motion is not a civil action." (App.Vol.2 at 441). Once non-subject-matter objections were waived, Appellant so informed the Magistrate (App.Vol.2 at 516**)**. and assumed that this procedural concern was no longer relevant.

Fifth, if sanctions based on waived objections were proper, this would unnecessarily complicate removal litigation by forcing removing parties to litigate waived objections, less they be sanctioned after failing to do so.

Appellant is aware of no prior case which imposes sanctions based on waived grounds for remand.

## II.  Remand was Improper: The Probate Exception does not Apply

As Marshall clarifies, the probate exception is a narrow, historically grounded exception to federal jurisdiction, with three prongs. It

28

"reserves to state probate courts [i] the probate or annulment of a will and [ii] the administration of a decedent's estate; it also [iii] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311–312. Under *Marshall*, courts cannot expand on these three categories; even if they could, an expansive reading cannot justify sanctions. The District Court erred by asserting that:

> The conservatorship action in general is undoubtedly within [the probate] exception, as it regards the administration of a decedent's estate.

This was multiply wrong. First, the Conservatorship does not involve a decedent, and thus cannot involve administration of a decedent's estate. The only relevant decedent, Renata, died in New York, and her estate is subject to probate there. This alone invalidates the District Court's reliance on the probate exception.

Moroever, even if a decedent existed, this would not bar federal jurisdiction, unless deciding a claim would require the federal court hearing the claim to *itself* administer that estate. This is clear from *Marshall*, which involved a decedent. Marshall narrowed the probate exception and rejected prior law, *Markham v. Allen*, 326 U.S. 490, 494 (1946), under which the probate exception could be invoked if the federal court's actions would "interfere" with probate proceedings.

*Marshall* rejected this standard as overbroad, and held that a claim for tort damages was not barred by the probate exception. It cited with approval prior cases holding that the probate exception does not bar *in personam* claims, including claims for breach of fiduciary duty. *Marshall*, 547 U.S. at 312.

Which claims, if any, would require the *federal court* to administer the nonexistent decedent's estate (or the actual Conservatorship estate) requires claim-by-claim analysis, which the District Court never conducted. In fact, none would, even positing a decedent. Table 1 *supra* summarizes the claims in the DPC Pleading. None would require a federal court to administer a decedent's estate.

This is beyond dispute for Claim #1, for damages against Samuel as SNT Trustee. *Marshall* held that a damages claim against an *executor* was outside the probate exception. The same must be true for a damages claim against a *trustee*. Since *Marshall*, lower courts have routinely refused to apply the probate exception to damages claims.

Claims 2–6 to suspend trustees would be unrelated to administration of a decedent's estate, even if there was a relevant decedent. Claims to suspend or remove trustees are routinely handled by non-probate courts. These claims do not require a court to administer a hypothetical decedent's estate. Moreover, all three trusts are intervivos trusts.[15]

---

[15]    Renata created the SNT and the Issue Trust during her lifetime; Bernard created the 2013 Trust after Renata's death.

Claim 7 seeks an order requiring deposit of trust assets with the DPC. This claim belongs before the NDIL, which is hearing the Interpleader Case. Indeed, the NDIL has barred:

> any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets from the accounts held by Plaintiff, without first filing a motion with this Court seeking approval for such withdrawal**.**

(App.Vol.1 at 200) Federal jurisdiction thus manifestly exists; conversely bringing claim 7 violated this order.

Claim 8 seeks to reverse the disclaimer for which Bernard, as Joanne's conservator, received DPC authority in 2012 and carried out then. This claim relates to the Conservatorship, but not so closely as to bar other courts addressing it. Indeed, Dain and supporters have brought similar claims in the Interpleader Case.

In short, even if the DPC was administering a decedent's estate, none of the 8 claims would have required the federal courts to administer that estate.

Finally, the District Court relied on a prong of the probate exception – for the federal court administering a decedent's estate – so obscure and rarely invoked that it was not discussed by the Magistrate or

briefed. Appellant carefully briefed the only prong which should have been relevant. The District Court's sua sponte reliance on a new theory should be enough to invalidate sanctions.

## III.  Appellant Had an Objectively Reasonably Basis for Seeking Removal

This section addresses whether sanctions are appropriate, assuming waived objections remain relevant. It explains Appellant's basis for arguing that the DPC Pleading commenced a new civil action, and could therefore be removed.

### A.   A Motion Can Begin a New Civil Action

Whether a particular pleading commences a civil action depends on the pleading's substance, not its name. First, 28 U.S.C.§1441 refers to removal of a "civil action," and §1446(b)(1) refers to removal of a "civil action or proceeding." If Congress wanted to allow removal only of "complaints," it could have said so. Thus, removal is not limited to a specific type of filing. This is also clear from §1446(b)(1), which allows removal within 30 days after the defendant receives "the *initial pleading* … upon which such action or proceeding is based" (emphasis added).

Colorado civil procedure rules require a civil action to be initiated through a "complaint." Colo.R.Civ.P.3. But this does not define "civil

action"; it is simply an instruction for how to initiate civil actions. The definition of "civil action" cannot require filing a document called a "complaint"; lest we have circular reasoning – we would not know whether something is a "civil action" until we see whether a complaint was filed, but cannot know whether to file a complaint until we know whether an action is a "civil action." Black's Law Dictionary (11th ed.) defines civil action broadly as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." The DPC Pleading satisfies this broad definition.

Moreover, under Colorado law, a "motion" can constitute a complaint. Earlier in this litigation, Joanne filed a motion with a new cause of action, just before trial. On appeal, Bernard objected that he was found liable without a complaint. The Colorado appellate court held that it does not matter what a court filing is called; what matters is substance. *Black v. Black*, 422 P.3d 592, 606 (Colo. App. 2018) ¶83:

> [T]though not styled as a complaint, the motion set forth the allegations against Mr. Black and explained how the allegations satisfied the elements of a [new claim].

Calling a pleading a motion, rather than a complaint, must not be used to evade removal to federal court. Otherwise, plaintiffs could evade removal by bringing what in substance are new civil actions via "motions" in an existing case. If the state courts allow a motion to

33

substitute for a complaint (as the DPC has), his will strip defendants of numerous procedural protections, including the ability to challenge jurisdiction, the right to a jury trial, the right to a complaint that meets standard pleading requirements and can withstand a motion to dismiss; the right to conduct civil discovery, etc.

Because Appellee filed a motion rather than a complaint, Appellant received no service of process, no complaint setting forth the basis for the relief sought against him, no opportunity to move to dismiss, and no opportunity to conduct discovery. Neither has Samuel, in any of the capacities in which he is named. These failures violate due process. They *strengthen* the case for removal. Appellant and Samuel are appealing in Colorado and should win, but this is no substitute for initial fair process.

### B.   The DPC Pleading Initiated a New Civil Action

On the issue of whether the DPC motion initiated a new civil action,. the closest district court case within the Tenth Circuit is *Stark-Romero*, which *supports* removal. The opinion quotes extensively from other cases that the court then disagrees with. Perhaps this is why the Magistrate and District Court misread it. *Stark-Romero* involves two damages actions against Amtrak, by separate accident victims, Esquibel and Stark-Romero. Their claims were combined into a single state case. The court allowed Amtrak to remove solely the Esquibel

claim. It framed the issue as whether the removed proceeding "involves an independent controversy, with distinct and separate issues"? The court found that "the Esquibels' claims are entirely separate and independent from Stark–Romero's claims . . . and [involve] a separate civil action"). *Stark-Romero*, 763 F.Supp.2d at 1261–62. As support for separating one case into two civil actions, *Stark-Romero* cites *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (10th Cir. 1958) and *London & Lancashire Indem. Co. of Am. v. Courtney*, 106 F.2d 277 (10th Cir. 1939), writing that "The Tenth Circuit appears to have broadly defined the term civil action." *Stark-Romero*, at 1262–1263.

*Stark-Romero* expressly rejects the view that only an entire "case" can be removed, explaining that if Congress held this view, it could have used the term "case" in the removal statute, instead of "civil action." *Stark-Romero*, 763 F.Supp.2d at 1273.

Further support for this approach comes from *Wright and Miller, Federal Practice and Procedure* § 3721.1. This treatise recites the general rule that proceedings "ancillary to an action pending in state court cannot be removed separately from the main claim." But it then explains that "supplemental proceedings that involve an independent

controversy with a new and different party ... are removable." As support, Wright and Miller cite *Stark-Romero*, and two appellate cases.[16]

This is the situation here. When the DPC Pleading was filed there was an ongoing Conservatorship, but only that. There were no pending claims by anyone against anyone, not even the *existing parties*. The DPC Pleading brought multiple new claims, against multiple new parties. These involved, per Wright and Miller, "independent controvers[ies]" with "new and different part[ies]."

### C. The District Court Did not Assess Whether An Independent Controversy Existed

Appellant does not claim that *Stark-Romero* is dispositive that the DPC Pleading is a separate civil action. But it surely provides a basis for him to so argue, with precedent support. No more is needed to avoid sanctions.[17] If non-subject-matter objections had remained in the case, the District Court should have assessed the connection between the

---

[16]   *GE Betz, Inc. v. Zee Co., Inc.*, 718 F.3d 615 (7th Cir. 2013)(removal of new claim against new party); *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013)(same). The Magistrate Report cites Wright and Miller for the general rule, but ignores the exception (App.Vol.3 at 641-642).

[17]   See Part IV *infra*.

Conservatorship and the new claims, with respect to the new parties. It did not, and instead substituted the *ipse dixit* that a motion cannot be a civil action.

## IV.  The Tenth Circuit Standard for Sanctions Is Not Met

### A.  Appellant Had an Objectively Reasonable Basis for Seeking Removal

Appellant seeks a decision reversing both aspects of the sanctions award (fees and bar referral), because both caused him reputational harm. His concern is with reputation; he does not seek return of fees.[18]

A court may award fees in removal proceedings "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141.

The Tenth Circuit narrowly interprets lack of "an objectively reasonable basis." Fees are not awarded if the removant advances a novel legal theory. "While [defendant's] interpretation of procedural misjoinder law is incorrect, it had an objectively reasonable basis for seeking removal." *Ullman v. Safeway Ins. Co.*, 995 F.Supp.2d 1196, 1251 (D.N.M. 2013) (internal quotations removed). See also *Vetro, Inc. v. Active Plumbing & Heating, Inc.*, 403 F.Supp.2d 1033, 1040 (D.Colo. 2005) (contention "not clearly without merit"; fees not awarded).

---

[18]   See Part VII *infra*.

A fee award is improper when there is no Tenth Circuit opinion squarely addressing the issues raised by the removant. *Mem'l Health Sys. v. Aetna Health, Inc.*, 730 F.Supp.2d 1289, 1298 (D.Colo. 2010); *Johnson v. Labs, Inc.*, No. 16–cv–00718–MEH, 2016 WL 9735765, at *9 (D. Colo. Sept. 8, 2016) (fees impermissible because Tenth Circuit doctrine not fully developed); *Fed. Nat. Mortg. Ass'n v. Sechrist*, No. 11–cv–02392–WJM–MJW, 2012 WL 3778288, at *4 (D. Colo. Aug. 30, 2012). (fees appropriate only when removal is clearly impermissible under "substantial and uniform … case law … in this Circuit").

Even if procedural objections could support sanctions, despite being waived, there is no contrary controlling precedent in the Tenth Circuit. The closest relevant case, *Stark-Romero*, supports removal, as do Wright and Miller and the Seventh and Eleventh Circuit cases cited above. The District Court cited only *Stark-Romero*, incorrectly, to support non-removability. Whether the DPC pleading involved an "independent controversy" has certainly not been conclusively resolved *against* removal.

In awarding fees the Magistrate relied on 28 U.S.C.§1447(c), 28 U.S.C.§1927 and inherent authority (App.Vol.3 at 658). The District Court relied solely on inherent authority (App.Vol.4 at 908). However, if

38

a fee award is improper under 28 U.S.C.§1447(c), relying on 28 U.S.C.§1927 or inherent authority cannot make it proper. The specific jurisprudence under §1447(c) should control.[19]

Finally, plaintiff did not seek a fees award.

## B.  Bar Referral Sanction

For the bar referral, the Magistrate did not specify a basis; the District Court relied solely on inherent authority, not on Rule 11. However, Rule 11 principles should still apply. This includes the "objectively reasonable" standard for legal argument. *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019).

Under Rule 11, a court abuses its discretion if sanctions are based on an error of law, or a clearly erroneous assessment of the facts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990):

> A district court would *necessarily* abuse its discretion if based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.

See also *Fox v. Vice*, 563 U.S. 826, 839 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)) (emphasis added) ("A district court *by definition* abuses its discretion when it makes an error of law"). The

---

[19]    It is unclear whether 28 U.S.C.§1927, which allows fees for "multipl[ying]" proceedings, even applies to removal, which substitutes one federal proceeding for one state proceeding. Appellant has found no precedent for applying §1927 to removal.

Tenth Circuit applies this standard to sanctions under inherent authority. *Stenson v. Edwards*, 86 F.4th 870, 877 (10th Cir. 2023); *Matios v. City of Loveland*, No. 22-1394, 2023 WL 4145905, at *2 (10th Cir. June 23, 2023).

Here, the District Court erred as to both law and fact. It erred legally in interpreting the probate exception and relying on waived objections. It clearly erred factually in stating that the DPC was administering a decedent's estate.

If a fees award is unjustified, the more severe sanction of bar referral must also be unjustified. The Tenth Circuit standard for awarding fees should also apply. It would make no sense for a court to be unable to award fees, despite an explicit statute authorizing them, yet award more severe sanctions, for the same conduct, under inherent authority.

### C.  Multiple Sanctions are Improper

There is no Tenth Circuit decision on point, but the Seventh Circuit has held that it is improper in the same case to both award fees and impose other sanctions ("while a judge is permitted by Rule 11 to impose sanctions on his own initiative, when he does that he cannot include an award of attorneys' fees"). *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 455 (7th Cir. 2005). Appellant urges the Tenth Circuit to adopt a similar rule.

### D. Punitive Sanctions Were Improper: Criminal-Type Procedures Were Not Used

For sanctions imposed under inherent authority, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017), explains that a fee award:

> when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. See *Mine Workers v. Bagwell,* 512 U.S. 821, 826–830 (1994)(distinguishing compensatory from punitive sanctions and specifying the procedures needed to impose each kind).

And:

> To level [a] separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a "beyond a reasonable doubt" standard of proof. See [*Bagwell*] at 826. When (as in this case) those criminal-type protections are missing, [only compensatory sanctions are permitted].

*Id.* The bar referral is clearly punitive. However, "criminal-type protections" for punitive sanctions, required by *Goodyear and Bagwell*, were not provided.

Moreover, sanctions based on inherent authority are available only in "narrowly defined circumstances," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980), and should be imposed with "especial

41

'restraint and discretion.'" *Goodyear*, 581 U.S. at 108, n.5 (quoting *Roadway Express*, at 764); see also *Chambers v. NASCO*, 501 U.S. 32, 44 (1991); *Matios*, 2023 WL 4145905, at \*2.

### E.  The Removal Statute Authorizes Fee-Shifting But Not Other Sanctions

The removal statute, 28 U.S.C.§1447(c), authorizes the court to award fees. It does not, however, authorize the court to issue other sanctions. *Midlock*, 406 F.3d at 455; *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (emphasis in original) ("§1447(c) is *not* a sanctions rule; it is a fee-shifting statute"). Rule 11 authorizes a court to impose sanctions, but not both fees and other sanctions. *Midlock*, at 455. And relying on inherent authority to impose punitive sanctions requires special, "criminal-type" procedures. *Bagwell*, 501 U.S. at 108.

### F.  Rule 11 Requires Notice Before Levying Sanctions

Fed.R.Civ.P.11(c)(3) authorizes a court to issue a show cause order and to thereafter impose sanctions. However, the show cause order must "specifically describe" the objectionable conduct, and the party receiving the order must have "a reasonable opportunity to respond." Fed.R.Civ.P.11(c)(1). The District Court relied instead on inherent authority, but this does not allow bypassing the Rule 11 notice-and-opportunity rules. See *Chambers*, 501 U.S. at 56 (because Chambers

received notice; use of inherent power "did not represent an end run around Rule 11's notice requirements"). Notice and opportunity-to-respond are aspects of due process. Sanctions imposed without them violate due process.

Conduct not specified in the show cause order cannot support sanctions, both because the order must specifically describe the conduct, and because otherwise, the receiving party cannot respond.

### G. The Magistrate's Show Cause Order Did Not Provide Adequate Notice

Sanctions can be based only on conduct specifically described in the Magistrate's show-cause order. That order reads, in relevant part:

> Mr. Black shall ... show cause in writing why this case should not be remanded due to the procedural improprieties of the removal and the Court's lack of subject matter jurisdiction. [Mr. Black] should also show cause why he should not be sanctioned or referred for discipline to the appropriate disciplinary authorities for what appears to be a frivolous and baseless attempt at removal ....

This refers only to "procedural improprieties" in this case, not Appellant's conduct in other cases. Appellant responded, noting that non-subject-matter objections were waived (docs.11,14).

The Magistrate's sanctions order relies extensively on the Appellant's conduct in other cases (App.Vol.3 at 660). However, the

Magistrate misread the Illinois case he relied on.[20] Appellant also believes that courts cannot impose sanctions based on other cases, let alone cases involving different legal persons.[21]

There are additional, fatal problems with the Magistrate's reliance on other decisions: First, this violates the Fed.R.Civ.P.11(c) requirement that the court issue a show cause order that "specifically describe[s]" conduct that the court believes warrants sanctions, and provide a "reasonable opportunity to respond." As explained in *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987) (*en banc*)(reversing sanctions):

> [T]he power of the court [to assess sanctions] should never be exercised without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense.

(quoting *Bradley v. Fisher*, 80 U.S. 335, 354–55 (1871). See also *Roadway Express*, 447 U.S. at 767:

> Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.

---

[20]    See Part V.B *infra.*
[21]    See Parts V.A, VI *infra.*

Second, by not providing even ordinary due process, the Magistrate necessarily did not provide the enhanced protections needed to use inherent authority to impose punitive sanctions.

## H.  The District Court Improperly Relied on Other Cases

The District Court held that the Magistrate was "permitted to look beyond the filings in this case" to assess whether sanctions were warranted (App.Vol.4 at 908). The District Court searched further, and found two more cases to rely on, (misreading both, see below) (App.Vol.4 at 908–909). Citing additional cases compounds the Magistrate's error in imposing sanctions without notice or opportunity to reply.

Appellant received and objected to the Magistrate's recommendation, which relied on the Illinois decision (App.Vol.3 at 726–731). This is insufficient notice. He was entitled to notice *in the show cause order*, so that he could oppose sanctions *before the Magistrate*. The District Court is silent on whether the Magistrate's (mis)reading of the Illinois decision formed part of its basis for affirming the bar referral.

## I.  If Rule 11 is Available, Relying on Inherent Authority is Unjustified

The District Court bypassed Rule 11, and its well-developed rules and case law, in favor of levying sanctions based on inherent authority. This was error. First, courts cannot avoid the notice-and-opportunity

and other procedural protections provided by Rule 11. Second, the District Court offered no explanation for this bypass. As stated in *Chambers*, 501 U.S. at 50, when conduct "could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." Using inherent authority is appropriate only "if in the informed discretion of the court, neither the statute nor the Rules are up to the task." *Id.* The District Court simply bypassed Rule 11, without explanation, evidence that it exercised "informed discretion" in doing so, or considering the enhanced protections required by *Goodyear*.

## J. Conclusion on Fees and Sanctions

Even if waived objections can form a basis for sanctions, Appellant had a reasonable basis, grounded in precedent, for believing that the DPC Pleading was removable. There is thus no basis for sanctions based on his actions in this case. Nor can there be any basis based on the Magistrate's and District Court's reading of cases in other jurisdictions, without notice and opportunity to respond. The District Court cannot invoke "inherent authority" to bypass the limits on sanctions in the removal statute and Rule 11. Punitive sanctions, imposed under inherent authority, require criminal-type protections for Appellant; who did not receive even ordinary due process.

## V.  Sanctions Should not Be Based on the Court's Reading of Other Cases

### A.   Dangers in Relying on Other Cases

Above, Appellant assumed *arguendo* that sanctions could be based on conduct in other cases, if this basis for doing was specifically described in a show cause order, with opportunity to respond. Appellant argues here that this should not be permitted, even with notice-and-opportunity. He also shows that the Magistrate and District Court misread all three cases they relied on.

The District Court cited no authority for looking outside its own case and record. Doing so exceeded the District Court's power. Courts can consider conduct outside their own case only in limited circumstances:

> [I]n the Fifth Circuit—like the Tenth—a court can only exercise its inherent sanctioning power over conduct in "collateral proceedings that ... threaten the court's own judicial authority or proceedings."

*Becker v. Ute Indian Tribe*, No. 22-4022, 2023 WL 5051167, at *4 (10th Cir. Aug. 8, 2023) (quoting *Positive Solutions Software, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460–61 (5th Cir. 2010). A court can consider, when levying sanctions, an arbitration proceeding launched to intimidate a party before it, *id.*, or disobeying its orders,

*id.*(quoting *Chambers*, 501 U.S. at 57). But a court cannot simply use another case in another jurisdiction, unconnected to its own case, to support punitive sanctions.

This limitation is salutary. Allowing a court to delve into other cases would create multiple problems. First, doing so would take the court into territory where the record will inevitably be incomplete. The court cannot feasibly reconstruct the context of another case, let alone multiple other cases. There is a severe risk of misreading other decisions, which this case illustrates. The Magistrate and District Court did not even try to assess whether the legal arguments or other conduct in the cases they cited were reasonable.

The inherent authority cases cited by the Magistrate and District Court do not contemplate reliance on decisions in other cases. Nor, absent a tight connection to the court's own case, is it clear how a court could do so while providing *Goodyear* enhanced procedural protections.

Appellant seeks below to correct the record for the three cases cited by the Magistrate and District Court.

## B.  Misreading of Illinois Appellate Decision

The Magistrate relied heavily on an appellate decision in *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. Ct. 2019), writing that the Illinois court "vacat[ed] on the basis of fraud and collusion an agreed judgment

48

between Bernard Black, his son Samuel, and his wife, Katherine Litvak" (App.Vol.3 at 622,n.1; many other references in the decision). This misreads both the Illinois decision and its context.

Since 2015, Anthony Dain, a Black family relative and minority SNT trustee, and his sister Cherie Wrigley have been seeking to defund the SNT and the Issue Trust, for personal benefit. To support his asset-stripping effort, Dain assigned legal bills to the SNT, even while spending money to defund the SNT.

Dain's defunding effort involved claiming that Bernard, as Joanne's conservator, did not sufficiently disclose that under a disclaimer that Bernard carried out, two-thirds of the disclaimed assets would go to Joanne's SNT and one-third to the Issue Trust. Dain and allies claimed they thought all of the disclaimed assets would go to the SNT, despite Bernard's proposed disclaimer order *explicitly stating* that two-thirds would go to the SNT.[22] Their false testimony persuaded the DPC to award damages for the one-third that went to the Issue Trust.

---

[22]   See App.Vol.1 at 16 (proposed order seeks authority to disclaim [Joanne's] interest … allowing [Joanne's] share to pass under Article Fourth of the Last Will and Testament of Renata Black, dated 12/19/1997, under which *two thirds* of the estate of Renata Black will be contributed to [the SNT].")(emphasis added).

The obvious remedy is to transfer the Issue Trust funds to the SNT, thus remedying the asserted harm. Bernard has proposed this remedy multiple times between 2015 and the present; Dain is not interested.[23]

The trust beneficiaries sued Dain for breach of fiduciary duty; the EDNY found that his defunding efforts were a breach of duty (App.Vol.4 at 883–889). In the meantime, Bernard and Samuel, as majority SNT trustees and sole Issue Trust trustees (Dain resigned in 2015), opposed Dain's defunding efforts. To pay legal bills, they borrowed on the trusts' behalf from Bernard's wife, Katherine Litvak, and her cousin, Olga Dal. All loans were meticulously documented; almost all involved direct payments by Litvak and Dal to lawyers for the trusts.[24]

Dain and Joanne's conservator, Jeanette Goodwin, challenged the loans, claiming fraud and collusion. The Dal loans were found to be proper, after an evidentiary hearing.[25] At the hearing, Dain's counsel "Essentially acknowledge[ed] that he had presented no affirmative evidence of fraud and collusion." *Dal v. Black*, No. 1-19-1348, 2020 WL 7046887, at *6 (Ill. App. Ct. Nov. 30, 2020), same judge as for *Litvak v. Black)*. "On cross-examination, Mr. Dain acknowledged that he had

---

[23]    See discussion of settlement efforts in trust beneficiaries' motion for summary judgment in EDNY case (App.Vol.2 at 372-373). See also App.Vol.4 at 936(offer during DPC hearing, quoted above).

[24]    The trust loans were reviewed, and confirmed as valid, by forensic accountant Melinda Harper. Harper Expert Report (App.Vol.1 at 172).

[25]    *Dal v. Black*, Case 2017 L9744 (Circuit Court for Cook County, IL) (June 3, 2019), *aff'd*, 2020 WL 7046887 (Ill.App.).

never spoken to Ms. Dal. Nor had he ever spoken to Bernard or Samuel about the loans Ms. Dal made to the trusts. He was aware of no conversations between Ms. Dal and defendants prior to those loans being made. When asked by the court what evidence he had that the agreed judgment in this case was the product of fraud and collusion, Mr. Dain stated [only] that Ms. Dal was Ms. Litvak's cousin." *Id.* at *4.

Katherine's loans are substantively identical to Dal's; the only difference is the specific legal bills that were paid. However, the challenge to Katherine's loans followed a more complex procedural path. The trial court allowed Goodwin to challenge the SNT loans but ruled that she lacked standing for the Issue Trust. Goodwin appealed, and the appellate court ruled that she had standing to *claim* fraud, in the decision cited by the Magistrate.

This was a technical decision on standing. The fraud allegations were *assumed* to be true; as is customary for a motion to dismiss. The court remanded for a merits hearing, without finding fraud. *Litvak v. Black,* 147 N.E.3d at 843 ("This case is remanded to the circuit court for a

decision on the merits of Ms. Litvak's claims.").[26] The Magistrate's misreading was an error of law, and thus "by definition" an abuse of discretion. *Fox*, 563 U.S. at 839.

The DPC had issued non-appealable obiter dicta about these loans, attacking Katherine's integrity for making them, in an proceeding to which Katherine was not a party, without notice, discovery, evidence, or an opportunity for Katherine to respond. The Illinois appellate court quoted the DPC's rhetoric. So did the appellate court in *Black v. Black II*, 482 P.3d at 487. The Magistrate Report repeats these accusations. Yet no fact finder has found wrongdoing for Katherine's loans. The only factual finding is for Dal, whose loans were found valid.

The Magistrate's misreading of the Litvak decision, and selectively citing the Litvak decision but not the Dal decision, illustrates why courts should not base sanctions on other cases and, if they can do so at all, why notice and opportunity to respond are essential.

## C.  Misreading of Oregon Filing

The District Court cited an Oregon case to justify sanctions, but clearly erred in understanding the case. In 2015, the DPC awarded

---

[26]    After remand, Katherine's counsel dismissed the original complaint without prejudice, filed new complaints against each trust, and obtained new judgments. App.Vol.1 at 236; App.Vol.2 at 404. Dain and Goodwin are challenging those judgments. No merits hearing has been held.

damages against Bernard, in favor of the Conservatorship and the SNT as joint and several creditors. (App.Vol.1 at 97). Conservator Goodwin improperly registered this judgment in Oregon solely in the name of the Conservatorship (App.Vol.1 at 197). **Samuel** (not Bernard) moved to add the SNT as a judgment creditor (App.Vol.3 at 735). This protected the SNT's interest in any amount collected from Bernard. After procedural skirmishing, the motion was granted (App.Vol.4 at 1018). Dain's contribution to this proceeding was to *oppose* adding his own trust as a judgment creditor! (App.Vol.4 at 760**)**. This filing shows both Samuel and Bernard **(**App.Vol.4 at 974) protecting the trust's interests, and Dain breaching his fiduciary duty by opposing relief. Why the District Court cited it to support sanctions against Bernard is inexplicable. This action was proper and successful.

### D.  Misreading of Second Circuit Footnote

The District Court also cited a Second Circuit appeal, but misunderstood this case as well. In 2016, Bernard and Samuel, as SNT trustees, sued Wrigley and her associate, Esaun Pinto, for stealing $250,000 from the SNT (App.Vol.1 at 18). The district court dismissed on summary judgment, reasoning that although Pinto had taken money from Joanne's bank accounts without authorization, with no documents

to show what he had done with the funds, the trustees could not prove that he had not returned them (App.Vol.1 at 237). The trustees appealed; Bernard represented the SNT pro se (App.Vol.3 at 740).

At oral argument in 2023, the Second Circuit sua sponte asked Bernard whether he could represent the SNT, since the DPC had suspended him as trustee in 2018. Bernard responded that: (i) he believed the suspension had lapsed because the DPC had not held the factual hearing required by Colorado law, despite an appellate instruction to do so;[27] and (ii) Samuel was a proper plaintiff. The Second Circuit found standing, without deciding whether the suspension remained valid (App.Vol.3 at 741 n.2) ("we do not purport to resolve questions surrounding [Bernard's] status [as SNT trustee] because there is no dispute [as to Samuel's standing].") Thus, the Second Circuit did not find misconduct. Its footnote, expressly not resolving a standing issue, cannot support sanctions. Moreover, Bernard *had standing*, which is measured when a case is filed, and cannot be lost later. App.Vol.4 at 880 (citing Second Circuit cases).

In short, none of these three decisions support sanctions. The Magistrate's and District Court's misreading of these decisions illustrates why courts should not base sanctions on other cases and why, if they may do so at all, specific notice and opportunity to respond are essential.

---

[27]  *Black v. Black II*, 482 P.3d at 483.

### E.   Ignoring Context for the DPC's Rulings

As discussed below, the sanctions ruling also ignores the context for the DPC's decisions, including repeated failing to attend to jurisdiction or notice.[28]

### F.   Ignoring the Black Family's Successes in Other Cases

In three instances, outside the DPC, the family feud has reached an evidentiary hearing. The Black family won all three. One was the Dal loan case, discussed above. Second, in a guardianship hearing in New York, Wrigley was found "unfit" to be Joanne's guardian based on having attacked Bernard and Katherine at their place of work.[29]

Third, Bernard and Samuel persuaded a FINRA arbitration panel to freeze the trusts against litigation spending, thus blocking Dain from continuing to spend SNT funds to support his litigation war against the Black family and the trusts (App.Vol.1 at 121). Joanne's trusts have still suffered severe harm from Dain's spending. The 2013 Trust, which once held $300,000 in assets, has been completely spent on litigation

---

[28]   See Part IX *infra.*

[29]   *In re Application of Bernard Black for Appointment of a Guardian for Joanne Black*, Index 80253/2014 (N.Y.Sup.Court, Richmond County) (2016) ("**NY Guardianship Case**") p.5 (sealed, so omitted from Appendix).

and conservator fees. Dain has also spent $761,000 in SNT funds – with harm to the SNT at least twice this, due to lost appreciation on the spent funds.[30]

Thus, the score in factual hearings outside the DPC is Black family (3); Dain (0). The Magistrate's and District Court's selective assertions of unjustified litigation ignore these victories, and further underscore the danger from courts forming ill-informed views about other cases.

## VI.   Sanctions Cannot Be Based on Conduct of Other Legal Persons

Appellant sought removal in his legal capacity as IT Trustee Black. It is standard law that an individual, when wearing different legal hats, is treated as separate legal persons. *Ace Investors LLC v. Rubin*, 494 F.App'x 856 (10th Cir. 2012). Thus, Bernard's conduct in another legal capacity, even if as objectionable as the District Court believed, cannot be ascribed to IT Trustee Black. Consider, then, which prior cases involve Appellant as IT Trustee. In the DPC, none do; he was newly named in the DPC Pleading. This is not disputed.

The Pinto-Wrigley case involved only SNT Trustee Black.

The Oregon case outcome was a success for the IT.

Thus, even if the court can rely on other cases in assessing sanctions, only the Dal and Litvak loan cases are relevant. They involve the Issue

---

[30]   Harper report (App.Vol.1 at 182-183).

Trust borrowing money and being a *defendant* in enforcement lawsuits.
They cannot support sanctions for bringing vexatious litigation.

## VII.   Double Fees Cannot Be Awarded

In April 2023, after the District Court awarded fees, Appellee's
counsel filed an affidavit stating that for her claimed legal fees of
$5,000, "rather than seeking those fees, I would prefer Mr. Black utilize
that money by making a donation to the charity of his choice in the
name of his deceased son." (App.Vol.4 at 960,¶5). Bernard did so
(App.Vol.4 at 1030).

Thereafter, while this appeal was pending, Appellee filed another
affidavit with the District Court asking whether the payment complied
with the court's fee decision (App.Vol.4 at 1033). This was not a motion;
moreover, the District Court lost jurisdiction to amend its sanctions
decision when the notice of appeal was filed. The District Court
nonetheless, treated the affidavit as if it were a motion and instructed
Appellant to pay the $5,000 again, thus *de facto* doubling the fees award
(*App.Vol.4 at 1039). Appellant moved to vacate under Rule 60(b),
based on lack of subject matter jurisdiction (App.Vol.4 at 1041). In
response, the District Court stayed, but did not vacate, its double-fees
order (App.Vol.4 at 1046). This was error. An order issued without
subject matter jurisdiction is void, and cannot be merely stayed.

If the fees sanction is affirmed, only then can Appellee start over, this time with a proper motion, giving Appellant a chance to respond. Filing such a motion would be inconsistent with Appellee's offer of a payment to charity. She should lack standing, since she cannot recover twice and Appellant's payment followed the form she proposed.

The District Court cited no authority for awarding double fees. Doing so would impose a punitive sanction, which is improper under either 28 U.S.C. § 1447(c) or the inherent authority cases discussed above.

Appellant seeks here an order vacating the double fees award and, to avoid further litigation; addressing whether Appellee has standing to seek a further fees award; and if so, whether awarding double fees is within the District Court's discretion.

## VIII.   Appellee Standing

Appellant appeals only to address reputational harm. This raises the question of whether Appellee has standing to submit an opposing brief. *Butler*, 348 F.3d at at 1169, suggests not:

> [C]oncern over the lack of an adversarial appeal in [punitive sanction] cases is assuaged by the fact that, on appeal, we review the district court's order detailing the reasons for any finding of attorney misconduct --in addition to the appellant's brief.

Appellee proposed a payment of the legal fee amount to charity. Appellant made such a payment and seeks no monetary relief. Appellee thus has no reason to oppose the relief sought. If she does, Appellant will move to strike, for lack of cognizable injury, and thus lack of standing.

## IX.  DPC Bias and Misconduct

Appellant sought removal due to the DPC's bias and repeated practice of ruling without jurisdiction, notice, or evidence. A particular goal was to protect his son Samuel against the DPC. In 2018, the DPC sua sponte took action against Samuel, without notice or any basis for personal jurisdiction. Samuel appealed, and the DPC's decisions involving him were vacated for lack of notice. *Black v. Black II*, 482 P.3d at 480. The DPC has repeatedly acted without notice or jurisdiction. Its prior actions also led to a 2018 remand for jurisdictional findings (App.Vol.1 at 99); to the appellate court instructing the DPC to hold a merits hearing on its sua sponte suspension of Bernard in 2018 (which the DPC has not held), *id.* at 483; and vacating the DPC's decision on the disclaimer for lack of subject matter jurisdiction; *id.* at 480–481.[31]

---

[31]  See also Part V.B *supra* (DPC diatribe against non-party Katherine Litvak)

In the DPC Pleading, Appellee again attacked Samuel, without any basis for personal jurisdiction in Colorado, where he has never litigated or even set foot. His contacts with Colorado do not satisfy the Colorado long-arm statute, let alone federal due process.[32]

The DPC's bias can be illustrated by summarizing its conduct after remand. Samuel is not a party to the Conservatorship proceeding. The only lawful way to add him is through a complaint. Colo.R.Civ.P.3. No complaint exists. Samuel has had no opportunity to respond to or move to dismiss the nonexistent complaint. The DPC pocket vetoed requests for civil discovery.

The DPC has nonetheless proceeded to (App.Vol.4 at 963, esp. 971–972): (i) rule, without authority in Colorado law, that serving Samuel with a motion in a case to which he is not a party could substitute for a complaint; (ii) deny him civil discovery; (iii) find personal jurisdiction without specifying any acts taken in Colorado; (iv) never address the federal "minimum contacts" requirement that Samuel must have "purposefully established minimum contacts within

---

[32]    The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124 requires acts within Colorado, which do not exist. The trusts have no Colorado assets or beneficiaries. The 2020 appellate decision vacated the DPC's 2018 decisions concerning Samuel for lack of notice, and did not reach objections to personal jurisdiction, detailed in his appellate brief (App.Vol.1 at 151-161).

[Colorado]";[33] (v) (iii) hold a hearing on the damages claim against Samuel; (vi) find Samuel liable after hearing *no* documentary evidence and testimony only from Dain;[34] (vii) do so based largely on alleged conduct in New York in 2016, far outside the three-year Colorado statute of limitations;[35] (viii) sua sponte remove Samuel as SNT trustee without legal authority (Colorado law allows emergency suspension but not *sua sponte* removal); (ix) sua sponte remove Samuel as Issue Trust trustee, even though Joanne is not an Issue Trust beneficiary and lacks standing to seek suspension or removal; (x) pocket vetoed Samuel's motion for reconsideration, by failing to rule (App.Vol.4 at 1001); (xi) *sua sponte* remove Bernard as SNT Trustee, leaving Dain as sole trustee (despite the EDNY finding that Dain breached his fiduciary duty to the SNT by seeking to defund the SNT; (xii) allow Dain to

---

[33] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[34] The hearing included zero documents, and no specificity about Samuel's conduct. See App.Vol.4 at 919-924 (Dain testimony). No other evidence was offered. Appellant urges this court to review Dain's testimony and try to discern: (i) what conduct by Samuel, in what case, violated which fiduciary duty; and (ii) what conduct involves contacts with Colorado, sufficient to support personal jurisdiction. Most of Dain's testimony concerns the EDNY case against Dain, in which Samuel as SNT trustee was not a party; Joanne was not a defendant; and the EDNY determined that Dain had breached his fiduciary duty to the SNT. Dain also testified, transcript at 54, that "Samuel Black has been involved in suing Ms. Goodwin, the conservator." No such lawsuit exists. Samuel is appealing (App.Vol.4 at 1009).

[35] See Colo.Rev.Stat.§13-80-101(1)(f); *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 606 (Colo.App. 2000).

testify in support of defunding, again ignoring the EDNY decision finding seeking defunding to be a breach of duty; (xiii) sua sponte removed Bernard as Issue Trust trustee, and restore Dain as trustee, despite Dain's resignation in 2015 and the EDNY breach-of-duty finding; and much more.

To describe the DPC as biased does not begin to capture the depth of bias, or the DPC's willingness to ignore procedural protections for litigants. The removal petition required an objectively reasonable basis, which Appellant believes it had. He sought not to multiply litigation, but to substitute a fair federal forum for a biased state forum.

An Illinois case illustrates Dain's efforts to defund his own trusts. The SNT trustees brought an action in Illinois, seeking a declaratory judgment that the Disclaimer was valid under Illinois law (as it clearly is; App.Vol.2 at 280). This effort failed, because an Illinois rule allows dismissal if a similar action is pending elsewhere, even though no motion before the DPC was then pending. Dain's fiduciary duty required him to support the motion. He moved to dismiss in favor of the DPC, where he planned to renew his defunding effort, and did so a year later through the DPC Pleading.

The DPC Pleading seeks damages against Samuel Black, in part, for bringing the declaratory judgment action. That action sought to *protect* the SNT against Dain's efforts to defund it.[36] This claim would be frivolous before any other court.

More recently, the DPC awarded almost $600,000 in fees, to be paid by the trusts, in an *ex parte* proceeding. Bernard and Samuel received no notice and were barred from seeing the fees motion (App.Vol.4 at 1016). Bernard has moved to vacate for lack of due process (App.Vol.5 at 1105). The motion will fail. He will appeal. Again.

This award, if paid, would bring DPC-approved spending on Dain's side to $1.6 million,[37] with at least $1 million more waiting to be approved.[38]

Meanwhile, Samuel has moved to set aside yet more DPC orders of which he received no notice (App.Vol.5 at 1098).

## X.  The DPC Lacks Jurisdiction to Maintain the Conservatorship

To make matters worse, the Conservatorship which should have been terminated years ago, after a New York court found to be competent.

In 2013, Joanne moved back to her long-time home in New York, was hospitalized, resumed taking medication, and recovered. She has lived

---

[36]  *DPC Pleading* ¶¶ 38-41.

[37]  App.Vol.1 at 172 (Harper report documenting prior approvals).

[38]  App.Vol.1 at 228 (unpaid fees as of early 2020).

since 2015 in a half-way home in Brooklyn, New York. In 2016, after a two-day hearing, a New York court found that she did not need a conservator.[39] Under the U.S. Constitution full-faith-and-credit clause and the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act ("**UAGPPJA**"), adopted by both Colorado and New York, this decision binds Colorado. It required the DPC to wind-down the Conservatorship. So does Colorado case law. *People ex rel. Smith v. Fremont Cnty.*, 102 P.2d 476 (1940). Wind-down was mandatory; all other court actions "were not only voidable but void." *Id.* at 478.

The DPC has refused to wind-down the Conservatorship, and sanctioned Bernard for requesting wind-down. Bernard's appellate brief details why the DPC lost jurisdiction to maintain the Conservatorship years ago (App.Vol.5 at 1049). The appeal is pending.

## XI.  Conclusion

This case should turn on technical jurisdictional rules. Non-subject-matter objections to removal were waived. The sole question should be: Did the probate exception apply to each of the 8 claims in the DPC Pleading, so clearly as to make sanctions appropriate? The correct answer is that the probate exception did not bar bringing any of these

---

[39]    *NY Guardianship Case* (sealed), p.7.

claims in federal court. But sanctions are unwarranted if even one claim can be heard in federal court. For the damages claim against Samuel, that is beyond doubt, under *Marshall*.

The District Court misunderstood a basic fact (there is no decedent!), failed to conduct claim-by-claim analysis, and wrongly remanded this claim, which under *Marshall* would stay in federal court even if a decedent existed. The Magistrate's and District Court's ad hominem attacks on Appellant have no place in this case or the federal courts.

Stepping back, Appellant brought a removal petition, seeking a fair forum that could bring an end to litigation that has consumed over $6 million in fees, in a fight over $1 million. Appellant has sought to settle, for 100 cents-on-the-dollar, since 2015. Dain seeks instead, with DPC support, to defund both trusts, fiduciary duty be damned. The DPC's response to the monstrous legal fees is to hide them from public view. In this and many other cases, the DPC is running a racket, which benefits guardians, conservators, and their counsel, and extracts fees from vulnerable people.

Appellant asks the Court to review his briefs to the Magistrate and the District Court, and assess whether the removal petition was what he believes it to be – a carefully researched, legally supported effort to remove a pleading containing new claims, against new defendants, from a biased state court.

Respectfully submitted,

Dated: April 22, 2024                    By: /s/ Bernard Black

Attorney for
Respondent - Appellant
BERNARD BLACK

## REASONS FOR REQUESTING ORAL ARGUMENT

Appellant requests oral argument. In what should have been a narrow, technical case turning on the probate exception, the Magistrate and the District Court were influenced by the DPC's rhetoric against Appellant. Both devoted substantial portions of their opinions to ad hominem attacks. Both reached far outside this case, to find other cases in this family litigation to support sanctions, but misunderstood the cases they relied on. It is clear from the opinions that both awarded sanctions not based on Appellant's legal arguments, but because they thought Appellant had not been punished sufficiently for his supposed misconduct, as described by the DPC.

But this Court cannot rely on the DPC's statements. Appellant's brief lists only some of many instances where the DPC acted without jurisdiction, without notice, against individuals who were not parties before her, etc. The DPC's actions have caused a dispute over $1M in Issue Trust funds (which Appellant offered to transfer to the SNT before the DPC issued its first ruling!) to last ten years and cost over $7 million in legal expenses, and counting. The beneficiaries of this bleeding are DPC-appointed court personnel and attorneys. Appellant sought removal not to multiply litigation, but to end it. The DPC insists on continuing the Conservatorship, despite no subject-matter jurisdiction over a legally competent non-resident.

Oral argument is necessary because Appellant cannot, within appellate briefing constraints, depict the full range of improper DPC conduct *not unique to Appellant*. The DPC was subject to numerous scathing newspaper exposés, discussing a near-racket where court-appointed personnel bleed the estates of protected persons, against family wishes. This gave rise to a public-service organization, Families Against Court Embezzlement Unethical Standards (FACEUS), which airs a weekly radio show and collects data on probate court abuses around the country. The probate court scandals led to scathing state audits in 2011 and 2017, the Colorado Supreme Court Chief Justice promising to address the problems (nothing happened), and legislative reform efforts (which failed). The problems continue.

Oral argument is needed to provide examples of similar DPC actions in other cases. In a current appeal, *In re Wells*, 2023CA784 (Colo.App.), the DPC has maintained a conservatorship against the family's wishes, with major asset transfers and fees from the protected person for useless services by court personnel. On the day of a critical DPC hearing, the court building was closed and all proceedings cancelled due to a blizzard. The DPC claimed to have held a hearing and ruled against the family. No transcript exists for the supposed hearing; there is no evidence it was held. The family is appealing.

Oral argument is needed to explain why the claims in the DPC Pleading against new parties are unrelated to prior DPC proceedings, and thus involve an independent controversy.

Oral argument is needed to explain Appellant's actions to defend the trusts against Dain's and the DPC's efforts to defund them. Joanne should be a rich woman, with $85,000 in annual tax-free income from workers compensation (which Bernard obtained for her) and Social Security Disability, **plus** $8 million in the SNT. Her conservator, with DPC support, is keeping her poor and dependent on handouts from her conservator. Removal was both supported under the law and offered an escape from endless litigation, which benefits only lawyers.

To offer another example, following remand, the DPC authorized payment from the trusts of $592,000 in legal fees, in an ex parte proceeding, of which Bernard and Samuel received no notice (DPC Order, Oct. 10, 2023). Payment to whom? Unknown. For what work? Unknown. This award violates every concept of due process. Bernard is challenging this award before the DPC, which will reject his challenge. He will appeal. Presumably the Colorado appellate court will vacate and remand, and the fees battle will start again, after more fees were spent on the challenge.

FACEUS has collected information about other DPC victims. The pattern of abuse is similar across cases. The District Court should have allowed removal and save Appellant's family from the deeply

problematic DPC. It did not, because it was swayed by the DPC's rhetoric. Appellant asks this Court to at least reverse the sanctions. This may also help Appellant convince other courts to prevent the DPC from maintaining indefinitely an illegal conservatorship over a competent non-resident.

Dated: April 22, 2024              By: /s/ Bernard Black

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **12,902 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: April 26, 2024        By: /s/ Bernard Black

Bernard Black, pro se

Bernard Black, as trustee of the Irrevocable Trust for the Benefit of the Issue of Renata Black

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing

**APPELLANT'S BRIEF** with the Clerk of the Court by using the

Appellate CM/ECF system on April 26, 2024. I further certify that all

participants in the case are registered CM/ECF users and that service

will be accomplished by the appellate CM/ECF system.


Dated: April 22, 2024              By: /s/ Bernard Black

**Attachment 1. Magistrate Judge Neuriter
Recommendation (Feb. 14, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03098-DDD-NRN

JOANNE BLACK, protected person,

Petitioner,

v.

BERNARD BLACK,

Respondent.

_____

**REPORT AND RECOMMENDATION ON ORDER TO SHOW CAUSE WHY THIS
MATTER SHOULD NOT BE REMANDED TO STATE COURT FOR LACK OF
FEDERAL SUBJECT MATTER JURISDICTION (Dkt. #5) AND
BERNARD BLACK'S MOTION TO CHANGE VENUE (Dkt. #7)**

_____

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on an Order to Show Cause why this matter, which purportedly was removed to federal court on November 30, 2022, should not be remanded to state court for lack of subject matter jurisdiction and because of certain procedural deficiencies. *See* Dkt. #5 (Order to Show Cause issued December 2, 2022). The Order to Show Cause also asked the removing party, Mr. Bernard S. Black ("Mr. Black" or "Bernard"), to show cause "why he should not be sanctioned or referred for discipline to the appropriate disciplinary authorities for what appears to be a frivolous and baseless attempt at removal for the purpose of interfering with an ongoing state probate proceeding." *Id.*

**BACKGROUND**

**1. Background of the removal efforts and Order to Show Cause.**

The notice of removal (Dkt. #1) that is the subject of the Order to Show Cause purports to remove (based on diversity jurisdiction) a *single motion* that was filed in an ongoing Denver Probate Court conservatorship matter (the "Probate Case"): *In re Joanne Black*, 2012PR001772. As is apparent from the probate matter case number, the probate matter, a conservatorship, has been pending in the Denver County Probate Court since 2012. The purportedly removed motion was filed in the Probate Court on November 4, 2022 and carries the caption:

> PROTECTED PERSON JOANNE BLACK'S MOTIONS TO VACATE THIS COURT'S ORDER AUTHORIZING THE DISCLAIMERS AND/OR TO VOID THE DISCLAIMERS, TO SUSPEND BERNARD BLACK AS A TRUSTEE OF THE ISSUE AND 2013 TRUSTS, TO SUSPEND SAMUEL BLACK AS A TRUSTEE OF ALL THREE TRUSTS, AND TO SURCHARGE SAMUEL BLACK FOR THE DAMAGES HE HAS COST THE PROTECTED PERSON AND HER CONSERVATORSHIP ESTATE.

Dkt. #1-1.

Mr. Black filed his response to the Order to Show Cause on December 19, 2022. *See* Dkt. #11. In the meantime, on December 7, 2022, Mr. Black filed a 43-page motion to transfer the removed motion to either the Northern District of Illinois or the Eastern District of New York. *See* Dkt. #7.

On January 3, 2023, Mr. Black filed a supplement to his response to the Order to Show Cause. *See* Dkt. #14. In his supplement, Mr. Black argues that because the protected party, his sister Joanne Black ("Joanne"), had not sought remand within 30 days, any non-jurisdictional or procedural basis for remand was waived. *Id.*

Because any remand would likely be considered a dispositive order and because the parties had not consented to magistrate judge jurisdiction, on January 4, 2023, the

2

Court asked the Clerk's Office to reassign the matter to a district judge. Dkt. #15. The case was reassigned to Judge Daniel D. Domenico. Dkt. #16. Judge Domenico then referred the issues raised by the Order to Show Cause to me for a recommendation. *See* Dkt. #18 (Referral order dated January 6, 2023). On January 31, 2023, Judge Domenico also referred the Motion to Change Venue to me for recommendation. Dkt. #22.

On January 20, 2023, Joanne responded to Mr. Black's filings. *See* Dkt. #19. She requested that the case be remanded and also opposed any transfer. *Id.* Mr. Black filed a reply in support of removal on February 2, 2023. Dkt. #24. On February 3, 2023, the Court heard oral argument by telephone on the Order to Show Cause and on Joanne's request for remand. The hearing lasted an hour and a half. *See* Dkt. #26 (Courtroom Minutes for Show Cause Hearing).

As explained in more detail below, the Court recommends that the matter be remanded to the Denver Probate Court and that Mr. Black be ordered to pay the attorney fees of the protected party, Joanne, for his bad faith attempt to remove an on-going state probate matter. The motion to transfer should be denied as moot.

The Court further orders that Mr. Black be referred to the disciplinary authorities of the State Bar of New York. His conduct, as described in the underlying state Probate Case, is shameful. That conduct, coupled with his ongoing attempts to interfere with efforts by Joanne's guardian to recoup money ($1.5 million+) that he stole from Joanne, are unbecoming of a lawyer admitted to practice law in any jurisdiction.

3

**2. Background on the underlying Colorado probate matter and the removing party, Mr. Black.**

The underlying Denver Probate Case has a long and tortured history. There are a number of reported decisions arising out of the Probate Case, from which much of the thumbnail description outlined below is taken.[1]

Joanne and Bernard Black are brother and sister. Joanne suffers from mental illness and cannot manage her own affairs. Mr. Black is a tenured faculty member at the Northwestern University School of Law. He has taught on the subject of the fiduciary duties of directors of corporations.[2] Joanne and Bernard Black's mother, Renata, died in New York in 2012. To account for Joanne's condition, the mother had created a Supplemental Needs Trust (the "SNT") for Joanne's benefit and, in her will, devised two-thirds of her estate to the SNT. The remaining one-third of the estate was devised to a

---

[1] Just some of these decisions include: *Black v. Black*, 422 P.3d 592 (Colo. App. 2018) ("*Black I*"); *Black v. Black*, 482 P.3d 460 (Colo. App. 2020) ("*Black III*") (making a comparison between the Probate Case and Charles Dickens's *Jarndyce and Jarndyce*); *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019) (vacating on the basis of fraud and collusion an agreed judgment between Bernard Black, his son Samuel, and his wife, Katherine Litvak, where they conspired to obtain a judgment to "repay" the wife's purported loans, out of the stolen trust monies); *JPMorgan Chase Bank v. Black*, No. 18-cv-03447, 2021 WL 4459482 (N.D. Ill., Sept. 29, 2021) (interpleader action involving trust funds subject to completing claims, including claims being litigated in the Denver Probate Court); *Black as Trustee of Joanne Black 2013 Trust Agreement v. Goodwin*, No. 19 C 5305, 2020 WL 4053176, (N.D. Ill., July 20, 2020) (suit by Bernard Black against Joanne's conservator, purportedly for aiding and abetting in breach of fiduciary duty, which was dismissed for lack of federal jurisdiction based on the probate exception and the *Rooker-Feldman* doctrine).

[2] The fact that Mr. Black and his wife are lawyers and law professors makes the conduct in this affair that much more appalling.

4

trust for the benefit of Mr. Black and his children (the "Issue Trust" or "IT"). The mother died with about $3.5 million in her brokerage accounts.

Unbeknownst to Bernard Black, and inconsistent with the terms of the will, the mother had executed payable-on-death ("POD") beneficiary designations on her brokerage accounts directing that almost all funds in the accounts be passed directly to Joanne, bypassing the estate and hence, the trusts. Because of this designation, nearly one-third of the money in certain brokerage accounts which, under the will, should have gone through the estate to the IT (for the benefit of Bernard and his children), was designated directly for Joanne.

Bernard Black was executor of his mother's estate. Unhappy with his deceased mother's decision to leave significant assets to his sister via the POD designation, Mr. Black formulated a scheme to gain control of Joanne's finances as her court-appointed conservator. Mr. Black allowed the Denver Probate Court to believe he would deposit the POD assets directly into the SNT for Joanne's benefit. However, he instead caused the bulk of those funds to pass through his mother's estate, where one-third of those POD funds—over $1 million—was redirected to the trust established for the benefit of himself and his children: the IT. *Litvak*, 147 N.E.3d at 836–837.

Mr. Black himself initiated the conservatorship proceeding in the Denver Probate Court because, at the time, his sister was in Denver, homeless, and in a deteriorated state.

Mr. Black's scheme to redirect money from Joanne to the SNT and the IT was accomplished when Mr. Black, acting as Joanne's conservator (and purporting to act on Joanne's behalf), "disclaimed" the money in the POD accounts. The funds then reverted

to the estate, where a substantial portion would be distributed to the IT for the benefit of

Mr. Black and his children. This way, Mr. Black could unilaterally correct what he

perceived as his mother's "mistake" of leaving so much money to his mentally ill sister.

*Black I,* 422 P.3d at 598. In addition to "disclaiming" the POD funds on behalf of his

sister, Mr. Black moved a $300,000 Roth IRA that had been designated for Joanne

directly into new accounts in the name of his children. *Id.*

      Approximately two years after the diversion of funds from Joanne to the IT for

Bernard and his children's benefit, Joanne's guardian ad litem learned of the deception

and filed a motion in the Probate Case challenging Mr. Black's disclaimer transaction.

The guardian ad litem sought to void the disclaimer and asserted claims of breach of

fiduciary duty and civil theft against Mr. Black.

      Following an evidentiary hearing that occurred over four days from June to

September 2015, the Probate Court concluded that Mr. Black had breached his

fiduciary duty to Joanne. And, because had failed to adequately disclose his intent to

use the disclaimer to divest his sister of one-third of the POD assets, Mr. Black

therefore did not have authorization to redirect the assets. The Probate Court found Mr.

Black's actions in redirecting the funds were "deceptive and undertaken in bad faith"

and that his conduct constituted civil theft. Accordingly, the Probate Court removed him

as Joanne's conservator and ordered Mr. Black to reimburse Joanne $1.5 million (the

value of the improperly diverted assets, including the Roth IRA). Further, under

Colorado's civil theft statute, the Court trebled the damages awarded to $4.5 million

total. *Id.* at 598–599. The Probate Court did not at that time void the disclaimer. *Id.* at

599.

Mr. Black appealed the adverse order but the Colorado Court of Appeals affirmed. *See generally id.* The case then was remanded to the trial court for the determination of reasonable attorneys' fees (to which Joanne was entitled upon the finding of civil theft). *Id.* at 612. The Colorado Supreme Court denied certiorari. *See Black v. Black*, No. 18SC419, 2019 WL 2178077 (Colo. May 20, 2019).

In its decision affirming the Probate Court order, the Court of Appeals confirmed that the Probate Court had (and has) authority, either by petition or on its own motion, to address alleged misconduct of a fiduciary. Accordingly, the Denver Probate Court had (and has) jurisdiction to adjudicate the allegations and issues raised by Joanne's motion to void the disclaimer. *Black I*, 422 P.3d at 599.

In a subsequent appellate decision addressing additional expense orders by the Probate Court, the Colorado Court of Appeals granted a limited remand for resolution of certain jurisdictional issues. *See Black v. Black*, No. 16CA0625, 2018 WL 549917, at *1 (Colo. App., Jan. 25, 2018) (unpublished) ("*Black II*").[3]

On remand, the Probate Court found that it had *in rem* jurisdiction over the conservatorship assets and also had personal jurisdiction over Mr. Black and his co-trustee son, Samuel. It also granted Joanne's motion to vacate the POD disclaimers. These orders, too, were appealed. *See Black III*, 482 P.3d at 460.

In *Black III*, the Colorado Court of Appeals affirmed in large part the Probate Court's orders on remand. In so doing, the Court of Appeals explicitly found that:

1. The Probate Court properly exercised subject matter jurisdiction over Joanne's conservatorship. *Id.* at 473;

---

[3] The version of the *Black II* opinion cited here does not contain the text of the opinion, but the Colorado Court of Appeals explained its ruling in a subsequent opinion. *See Black III*, 482 P.3d at 470.

2.  The Probate Court was properly exercising its jurisdiction over the trusts through its continuing *in rem* jurisdiction over the assets transferred into the trusts from Joanne's conservatorship. *Id*. at 474–75;

3.  The Probate Court had and has personal jurisdiction over Bernard and the transferred assets. Critically, the Court of Appeals found that the Probate Court could exercise jurisdiction over Bernard in *all* of his capacities, whether as an individual, as conservator, or as trustee of the trusts. This was because Bernard had submitted himself to the jurisdiction of the Probate Court in his capacity as a co-trustee of the trusts and repeatedly raised no objection to its exercise of jurisdiction over him. *Id*. at 475–76. He had also accepted appointment as Joanne's conservator, which meant that the Probate Court could exercise personal jurisdiction over him by operation of Colorado law. *Id*. at 477 (citing Colo. Rev. Stat. §15-14-111 ("[b]y accepting appointment, a guardian or conservator submits personally to the jurisdiction of the court in any proceeding relating to the guardianship or conservatorship")).

Specific to Mr. Black's present claim that he is seeking removal to this Court only in his capacity as "Issue Trust Trustee Black" (Dkt. #1 at 1) and the suggestion that the Probate Court never had jurisdiction over him in that capacity, the Colorado Court of Appeals found that the Probate Court has jurisdiction over the Issue Trust: "because Bernard funded the Issue Trust with conservatorship assets through his disclaimers of the POD designations, the probate court possessed the authority to determine that it had continuing jurisdiction over those funds." *Black III*, 482 P.3d at 473. The Court of Appeals also agreed with the Probate Court that, "[t]he funds transferred into the Issue Trust were never trust assets at inception as they were POD funds with Joanne Black as beneficiary. Bernard Black's use of the Court's Orders to further a scheme of self-dealing did not change the essential nature of the funds from POD assets, which are conservatorship estate assets, to trust assets beyond the reach of the Court." *Id*. at 474–475.

In confirming the Probate Court's personal jurisdiction over Bernard, the Court of Appeals noted that Colorado has an interest in ensuring that Bernard, who "purposefully

8

derived benefit by appearing in Colorado to divert assets from Joanne's conservatorship
to the Trusts, does not escape having to account in Colorado for consequences that
arose proximately from his activities." *Id*. at 479 (internal citations and quotations
omitted). "Allowing Bernard to come to Colorado, invoke the jurisdiction of its courts,
commit torts against Joanne's conservatorship, and then raise a personal jurisdiction
shield would be antithetical to the purpose of the Colorado courts to serve justice." *Id*.

The Court of Appeals also expressed serious concerns about Mr. Black's
conduct if he were to prevail on his jurisdictional arguments:

> Further, if Bernard prevails on his jurisdictional arguments, he may well
> succeed in misappropriating a portion of Joanne's conservatorship assets
> for his own personal use through the Issue Trust. The record and number
> of out-of-state lawsuits support our conclusion. First, Bernard placed
> Joanne's diverted conservatorship funds into twenty-five different accounts
> in the names of one or more of the Trusts, which the probate court
> concluded "could only be likened to a shell game."

*Id*. The Court of Appeals ultimately found that "[b]ecause the record supports the
probate court's conclusions, we hold that the court properly exercised specific personal
jurisdiction over Bernard *in his capacity as Joanne's conservator, as a trustee of the
Trusts, and in his individual capacity.*" *Id*. at 480 (emphasis added).

After the Court of Appeals' decision in *Black III*, Mr. Black again petitioned for
certiorari to the Colorado Supreme Court, but the petition was denied. *In re Joanne
Black*, No. 20SC554, 2021 WL 1030354, at *1 (Colo. March 15, 2021).

Thus, in *Black III*, the Court of Appeals affirmed most of the Probate Court
decisions. However, because the Probate Court had made certain decisions relating to
distribution of funds while *Black II* was pending review before the Colorado Supreme
Court, the Court of Appeals found that those decisions were made without jurisdiction.

9

These included the Probate Court's decision to vacate the POD disclaimers. In addition, because the Probate Court's decision to remove Bernard's son Samuel as trustee of the SNT was made without appropriate due process, the Court of Appeals held that decision too should be vacated. 482 P.3d at 472, 480, 482–83. Those discrete issues then were remanded for new determinations, including "for a determination of whether the disclaimers were valid." *Id*. at 488.

Following the Colorado Court of Appeals' remand, on May 10, 2021, the Probate Court directed Joanne to file the motion that Mr. Black now seeks to remove to federal court. Specifically, the Probate Court ordered as follows:

> The Protected Person has identified several issues to be addressed by this Court at remand hearing, to-wit:
>
>> Voiding the disclaimers used by Bernard Black
>>
>> Return of conservatorship assets as previously ordered by this Court, which orders pre-dated Mr. Black's initiation of US District Court proceedings;
>>
>> Suspension and/or removal of Bernard Black and Samuel Black as Trustees from all trusts holding assets derived from the conservatorship estate;
>>
>> Personal liability and damages against Samuel Black.
>
> The Court directs the Protected Person to file such motions as needed to frame the issues she identifies . . ."

Order, *In re Joanne Black*, 2012PR001772 (Denver Prob. Ct, May 10, 2021). Consistent with the Probate Court's Order, on November 4, 2022, Joanne filed her motion (which Mr. Black presently seeks to remove to this Court) raising exactly the issues ordered by the Denver Probate Court—including the voiding of the disclaimers, the return of the stolen conservatorship assets, the suspension and removal of Mr. Black and his son as

trustees from all trusts holding assets derived from the conservatorship estate, and recoupment of damages from the son, Samuel Black. *See* Dkt. #1-1.

In sum, Mr. Black seeks to remove to federal court a motion seeking to remediate the harm he and his family have done to the conservatorship estate. The motion arises from the conservatorship proceeding that Mr. Black himself initiated ten years ago, and during which he was found to have committed theft of $1.5 million from his disabled sister. The issues raised in the disputed motion (such as voiding the disclaimers) have been percolating in the Denver Probate Court for literally years.

### 3.    Other lawsuits initiated by Mr. Black and his family.

Joanne's counsel explains that the delay in filing the disputed, purportedly removed, motion in Denver Probate Court was due in part to the distraction of having to defend some of the numerous legal actions that Mr. Black or his family have filed around the country. These include an Illinois state court matter filed by Mr. Black and his son, Samuel. That action sought a declaratory judgment that the disclaimers Mr. Black employed in his fraudulent scheme were valid under Illinois law. The Illinois Chancery court dismissed that lawsuit on comity grounds. *See Black v. Black*, No. 2021CH6049 (Chancery Ct., Cook Cnty, Ill. September 23, 2022).

On January 29, 2016, Bernard and Samuel Black filed a lawsuit against Joanne in the United States District Court for the Northern District of Illinois. *See* Compl., *Black v. Black*, No. 16-cv-1763 (N.D. Ill. Jan. 29, 2016), Dkt. #1. In that case, Bernard and Samuel alleged that they were under "judicial restraints" to distribute funds through the IT based on orders issued by New York and Colorado state courts, and requested that the court issue a declaratory judgment, binding against Joanne, that they are free from

11

judicial restraint to administer the IT. That case failed when the court granted Joanne's motion to dismiss with prejudice due to lack of personal jurisdiction. *See* Order, *Black v. Black*, No. 16-cv-01763 (N.D. Ill. July 13, 2016), Dkt. #27.

Mr. Black filed another case that has distracted from the work of Joanne's conservator's efforts to recoup Joanne's stolen money: *Black as Tr. of Joanne Black 2013 Tr. Agreement v. Goodwin*, No. 19 C 5305, 2020 WL 4053176, at *1–7 (N.D. Ill., July 20, 2020). In that matter, Mr. Black sued Joanne's current conservator, Jeanette Goodwin, in Illinois federal court alleging that Ms. Goodwin aided and abetted in breaches of fiduciary duty, civil conspiracy, and that Goodwin's actions have injured certain Black family trusts. The supposed damages all flowed from Ms. Goodwin's efforts in the Denver Probate Court. Judge Feinerman of the Northern District of Illinois dismissed that case for lack of subject matter jurisdiction based on the probate exception to federal jurisdiction, and the *Rooker-Feldman* principle that a federal court should not interfere with ongoing state court proceedings. *Id*. at *7. Notably, at a hearing before Judge Feinerman in that case, Mr. Black's lawyer admitted that Mr. Black had filed suit in Illinois because Mr. Black "did not think [he] would get anywhere with the Colorado court." The lawyer also conceded that Mr. Black was "forum shopping." *Id.* at *6.[4]

---

[4] During oral argument before this Court on February 3, 2023, this Court asked Mr. Black about this specific example of forum-shopping. Mr. Black acknowledged that the suit was filed in the Northern District of Illinois purely to put pressure on Joanne's conservator to reach some kind of settlement. Dkt. #29 (February 3, 2023, Show Cause Hearing Tr.) at 54:16–22 ("So that was a case that I would describe as 'We are just desperately looking for some way to bring these people into settlement, where they are refusing to talk to us.' And we thought there was an opportunity to put some pressure on Jeanette Goodwin by bringing a case against her in Illinois, seeking damages.")

Beyond direct lawsuits seeking damages, Mr. Black, his son Samuel, and his wife (Katherine Litvak), all have engaged in collusive lawsuits intended to obtain confessed judgments to encumber the assets of the SNT and IT. As described in *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019), the scheme involved Ms. Litvak bringing a collusive lawsuit against Samuel and Mr. Black in their capacities as co-trustees of the trusts (SNT and IT). Ms. Litvak claimed to be owed hundreds of thousands of dollars that supposedly had been lent to the trusts for payment of attorney fees. Of course, the trust assets consist exclusively of money that should belong to Joanne. One week after suit was filed, Ms. Litvak, Mr. Black, and Mr. Black's son Samuel, without answering the complaint, asked an Illinois circuit court to enter an agreed judgment against the trusts for the full amount of the claim. This was done without notifying Joanne's court-appointed conservator of the lawsuit. The Illinois Court of Appeals eventually vacated the confessed judgments in favor of Ms. Litvak as a product of collusion and fraud. But Joanne's conservator had to hire counsel and expend attorney fees to reverse this fraudulent and collusive conduct. *See generally id.*

A similar confessed judgment against the trusts and for the benefit of Olga Dal, (Ms. Litvak's cousin), was upheld by the Illinois Court of Appeals. Yet, in that case too, the defendants (Mr. Black and his son Samuel) never answered the complaint; an agreed judgment for the full amount claimed was quickly presented to the court; and Ms. Goodwin was not notified of the proceedings, despite the fact that Joanne was a named beneficiary of two of the affected trusts. Nevertheless, despite intervention by Ms. Goodwin, that collusive judgment was not vacated because the trial court found that Ms. Litvak's cousin, Olga Dal, was an innocent lender who did not realize she was being

13

86

used improperly to encumber trust assets that belonged to Joanne. *See Dal v. Black*, No. 1-19-1348, 2020 WL 7046887, at \*7–8 (Ill. App. Nov. 30, 2020).

There is also currently an interpleader action pending in the Northern District of Illinois, where J.P. Morgan Chase Bank has asked for guidance as to what to do with the SNT and IT funds to which there are competing claims. *See JPMorgan Chase Bank*, 2021 WL 4459482, at \*1. The interpleader action was instituted after counsel for Mr. Black and his son sent a letter to JPMorgan stating that they would hold JPMorgan responsible if it took any action toward the SNT's accounts, *including any action implementing orders from the Denver Probate Court*. *Id.* at \*4. JPMorgan filed the interpleader to resolve the risk of competing liabilities and multiple litigation. *Id*.

In issuing her own order on whether she had jurisdiction to entertain the interpleader action, Judge Wood of the Northern District of Illinois cited the Colorado Court of Appeals' decision in *Black III* and reaffirmed that the Denver Probate Court has continuing *in rem* jurisdiction of the interpleaded assets, which are held in accounts belonging to the trusts. *Id*. at \*6. Nevertheless, because an interpleader action is *in personam*, not *in rem*, in Judge Wood's view, it was not appropriate to dismiss the interpleader based on the prior exclusive jurisdiction of the Denver Probate Court. Nor was it appropriate to dismiss the interpleader action based on the probate exception to federal jurisdiction because Judge Wood did not intend to interfere with the probate proceedings, to assume general control of the probate, or to control property in the custody of the state court. *Id*. at \*8. Nevertheless, Judge Wood did make clear that "the Interpleaded Assets were stolen from Joanne," and "are not the rightful property of the Trusts." *Id*. at \*11.

14

Judge Wood also considered whether it would be appropriate to enjoin additional proceedings before the Denver Probate Court. The answer to that question was an emphatic "no," in part based on the extensive history of litigation in Colorado and the need to efficiently determine the proper disposition of the disputed assets. Instead, Judge Wood's order provided for the Denver Probate Court to continue with its determination of whether to undo the disclaimer and address related issues, while simultaneously ensuring that there should be no attempt to turn over or make any withdrawal of the disputed funds without prior approval of the Northern District of Illinois:

> If the Court stayed the DPC [Denver Probate Court] proceedings and took up the issue pending there—whether to undo the disclaimer of the POD assets—it would complicate and delay the matter of whether and how Joanne's assets will be returned to her. The DPC has had much to unravel. As noted in *Black III*, "Bernard placed Joanne's diverted conservatorship funds into twenty-five different accounts in the names of one or more of the Trusts, which . . . could only be likened to a shell game." 482 P.3d at 479. Bernard also previously transferred $258,000 from the SNT—for which Joanne is the sole beneficiary—to one of his personal accounts, violating a prior order of the SNT. *Id.* at 484. And after several years and multiple appeals, the DPC is poised to determine whether Bernard's disclaimer of the POD assets—the fraud that initiated countless legal actions across numerous forums—should be undone, and the assets returned to the conservatorship. The DPC is in the best position to trace the disputed assets. For one thing, it has already analyzed Bernard's disposition of the POD assets, supported by a forensic accounting. (Compl., Ex. 11, Attachment A: DPC March 2016 Order, Dkt. No. 1-11.) There is no equitable reason to repeat those proceedings here.
>
> Thus, the Court enters the following injunction. JPMorgan shall not allow any withdrawals of the Interpleaded Assets or execute any instructions with regard thereto without prior approval from this Court. Such approval shall be sought by written motion with due notice provided to all parties. The parties may continue to litigate the disposition of the POD assets in the DPC proceedings. Otherwise, no party may seek to effectuate any turnover or withdrawal of the Interpleaded Assets from the accounts held by Plaintiff, or seek to enforce any court order requiring such, without first filing a motion with this Court.

15

This order balances several factors, including the risk of multiple liability faced by JPMorgan, the DPC's holding that the POD assets belong to the conservatorship and are not property of the Trusts, the need to efficiently determine the proper disposition of the Interpleaded Assets, and the goal of concentrating litigation instead of allowing for its continued dispersal across several forums.

*Id.* at *13.

In a later Order, issued September 27, 2022, Judge Wood expressly authorized Joanne to proceed with her efforts in the Denver Probate Court to hold Mr. Black and his son Samuel to account for the harm to the conservatorship. Order, *JPMorgan Chase Bank v. Black*, No. 18-cv-03447 (N.D. Ill. September 27, 2022), Dkt. #251. The September 27 Order was issued at Joanne's request granting express advance approval of Joanne's actions in the Probate Court. Joanne had sought to ensure that by filing a motion or seeking a hearing in the Probate Court, she would not run afoul of Judge's Wood's orders. Judge Wood made clear that Joanne was authorized to take appropriate steps in the Probate Court:

Joanne's motion seeks approval from this Court to schedule a hearing with the DPC. Joanne claims that, on April 17, 2021, the DPC ordered the parties in that proceeding to schedule a hearing to address the following issues: (1) voiding Bernard's disclaimers of payable-on-death ("POD") assets; (2) returning conservatorship assets; (3) suspending or removing Bernard and Samuel as trustees from all trusts with assets from the conservatorship; and (4) personal liability and damages as to Samuel. Those four issues were remanded to the DPC by the Colorado Court of Appeals.

Joanne requests confirmation that scheduling the DPC hearing will not conflict with this Court's June 2019 Order, which barred "any party from seeking to enforce any court order requiring, or otherwise seek to effectuate, any turnover or withdrawal of the interpleader assets."
(6/12/19 Minute Entry, Dkt. No. 69.) Joanne claims that the DPC hearing will not affect the interpleader assets, and further attests that she will ask the DPC to stay any order that implicates the assets until this Court approves its enforcement.

16

89

> In response to the motion, and to avoid any confusion on the matter, the Court clarifies that Joanne and the parties need not inquire with this Court as to whether they may move forward with the DPC litigation. While the Court stated in its June 2019 Order—and still maintains—that the parties cannot effectuate any turnover or withdrawal of the assets, the Court further explained in its September 2019 memorandum opinion that "[t]he parties may continue to litigate the disposition of the POD assets in the DPC proceedings." (Mem. Op. and Order at 25–27.) This Court will not police the DPC's jurisdiction, which lies within the DPC's purview. The hearing before the DPC about which Joanne inquires concerns suspending Samuel as a trustee of the Supplemental Needs Trust and voiding Bernard's disclaimers, and the DPC can issue a decision regarding those matters without going so far as touching the interpleader assets. Further, Joanne has confirmed in her briefing and during a telephonic hearing that she will request a stay of any DPC order that seeks to effectuate a turnover or withdrawal. As a result, this Court grants Joanne's motion, with the clarification that the parties need not seek this Court's approval to continue litigating before the DPC.

*Id.* at 2.

In the face of the Judge Wood's explicit refusal to enjoin the Denver Probate Court matter, in part so as to "concentrate the litigation" in Colorado and prevent its "dispersal across several forums," and with Joanne having received express approval from Judge Wood to proceed in the Denver Probate Court, Mr. Black now has sought to remove the very motion that addresses the issue of undoing the disclaimer (which is at the core of the *in rem* proceedings before the Denver Probate Court). He also asks to transfer that removed motion to the Northern District of Illinois. He does this knowing Judge Wood has already decided that the Denver Probate Court is the appropriate court for final determination the validity of the disclaimers and of how to dispose of the POD assets held in the SNT and IT accounts. Mr. Black made no mention of Judge Wood's refusal to enjoin the Probate Court matter or her September 27, 2022 clarifying order in his 43-page motion to transfer.

17

Pending in the Eastern District of New York is yet another lawsuit arising out of the Black family saga. *See Black v. Dain*, 16-cv-1238 (CBA) (ST), 2017 WL 11696660, (E.D.N.Y., August 16, 2017). That case was brought by Sarah, Daniel and Jacob Black, Mr. Black's children (and grandchildren of the deceased Renata). The plaintiffs were beneficiaries of the IT. In the New York matter, the grandchildren sued Bernard and Joanne's first cousins, Anthony Dain and Cherie Wrigley (and others) alleging that Dain and Wrigley (primarily through their efforts in the Denver Probate Court) and Dain as co-trustee of the SNT and IT, had breached duties owed to the trusts by, among other things, seeking to reverse the disclaimer, and withdrawing funds to retain counsel to represent Joanne. In addition to *in personam* damages claims against the named defendants, the New York plaintiffs brought a number of claims for injunctive and declaratory relief, including: seeking removal of Dain as a trustee of the SNT; a declaratory judgment that the Denver Probate Court had no jurisdiction over the Estate of Renata Black, the IT, or the SNT; a declaratory judgment that the Denver Probate Court's orders permitting actions with respect to the Estate, the IT or the SNT have no legal effect; and a preliminary injunction allowing the SNT and IT to compensate their trustees for reasonably incurred legal and accounting expenses associated with the legal battles. *Id.* at *8. Judge Amon of Eastern District of New York allowed the *in personam* money damages claims to go forward, but dismissed based on the probate exception to federal jurisdiction all the claims seeking to limit the authority of the Denver Probate Court to make rulings relating to the Estate or the various trusts. As Judge Amon stated, "[h]ere, plaintiffs are trying to remove into the federal court a *res* over which a state court is exercising control, which is what the 'probate/domestic-relations

18

exception is intended to prevent.'" *Id*. at *9 (citing *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)).

Because of the ongoing disputes, including those arising from satellite litigation filed by Mr. Black and his family and the threatening letters from Mr. Black and Samuel's counsel to JPMorgan, there has been no distribution of any of the money in the SNT or IT accounts. Joanne has not benefitted at all from the money in the SNT account, though it has been recognized by multiple courts that the money in the IT account was stolen from Joanne.

In addition, to date, Mr. Black has not returned any of the $1.5 million that he stole from Joanne. Nor has he paid any of the $3 million in additional damages that the Probate Court awarded to Joanne.

4. **Mr. Black's admitted attempts at forum shopping.**

As noted above, Mr. Black's counsel in the dismissed Illinois federal case brought against Joanne's conservator admitted he was "forum shopping" by filing a lawsuit in that venue attacking Joanne's conservator. 2020 WL 4053176, at *6.

When asked at the February 3, 2023 oral argument on the Order to Show Cause whether the instant removal effort was just another attempt at forum shopping, Mr. Black was candid in his response. Although he initiated the conservatorship proceeding in the Denver Probate Court, he does not like how the case has progressed there and wants out of Colorado state court:

> Mr. Black: Ok. So, are we trying to move whatever we can out the Denver Probate Court to somewhere else? Yes. There is no doubt in my mind that I cannot get a fair hearing before the Denver Probate Court. And I could give you chapter and verse, but it would take a long time. So, are we trying to move the case to a forum that we think would be neutral? Yeah. But that is what removal jurisdiction is about. It's the opportunity for a defendant to

19

> say, I want a decision by a federal court, not by a state court. It is the same logic that underlies diversity jurisdiction, and the removal statute gives that right to a removing defendant to seek a federal forum that we believe will be more neutral.
>
> The Court: But you, correct me if I am wrong, you started the Denver Probate Court conservatorship proceeding yourself, on behalf of Joanne.
>
> Mr. Black: As conservator, yes. And, at that time, I had, first of all, no option. But that was as conservator, and I think that, over time, the Denver Probate Court has been persuaded . . . to be hostile to me, to be hostile to my wife, to be hostile to my son, uh, and I want to find another court that won't behave that way. And so I will happily say that. We want this case to be in federal court and not before the Denver Probate Court because we don't think we can get a fair hearing before the Denver Probate Court.

Dkt. #29 (February 3, 2023 Hearing Tr.) at 45:19–46:20. Thus, ten years into a conservatorship proceeding that he himself began, Mr. Black is now trying to remove the case (or parts of the case) to federal court because he does not like the decisions from Colorado's state courts that seek to hold him accountable.

Of course, the forum-shopping goes well beyond this removal attempt. For example, in the interpleader action pending in the Northern District of Illinois, on October 4, 2022, Mr. Black tried to preemptively invalidate any potential orders from the Denver Probate Court by filing amended counterclaims seeking a declaratory judgment against Joanne's current conservator and others. The declaration Mr. Black seeks there is a patent effort to relitigate many of the matters that have already been decided or are being decided by the Denver Probate Court.[5] The Judge Wood has not yet ruled on the propriety of these counterclaims.

_____

[5] For example, Mr. Black asks the interpleader court to declare, among other things: that Joanne does not have any interest in the IT; that the SNT accounts are not assets of Joanne's conservatorship; that any order by the Denver Probate Court with respect to SNT assets would be void and unenforceable due to lack of jurisdiction over Samuel as SNT trustee; that Bernard, as executor of the estate is entitled to recover

## ANALYSIS

1. **Mr. Black's removal attempt is procedurally flawed.**

The many flaws with Mr. Black's attempt to remove a single motion in a ten-year-old probate case are apparent from the face of the removal document.

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *United States ex rel. King v. Hillcrest Health Ctr.*, 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

Section 1446 of Title 28 of the United States Code governs the procedure for removal. Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed. A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. *See Huffman v. Saul Holdings LP*, 194 F.3d 1072, 1077 (10th Cir. 1999). With respect to subject matter jurisdiction, "[t]he burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). A defect in

---

attorneys fees and accounting expenses he has incurred to defend the estate assets; that the disclaimers that resulted in Joanne's POD assets being included in the SNT and IT "are valid and irrevocable;" that any orders of the Denver Probate Court against Bernard in his capacity as trustee of the IT are "void and unenforceable on the grounds that the Denver Probate Court does not have personal jurisdiction over him as trustee of the IT;" and that the Denver Probate Court lacks jurisdiction to enjoin Bernard or Samuel from acting as a trustee or co-trustee of the SNT or IT. *See* Bernard S. Black and Samuel Black's Am. Compl. at 13-16, *JPMorgan Chase Bank v. Black*, Case No. 18-cv-03447 (N.D.Ill., Oct. 4, 2022), Dkt. #253.

21

subject matter jurisdiction can never be waived and may be raised at any time. A procedural defect, however, does not involve the subject matter jurisdiction of the court and may be waived. *Huffman*, 194 F.3d at 1076–77.

First, a party may not remove a single *motion* from an on-going state court case to federal court. The federal removal statute, 28 U.S.C. §1446, speaks of removal of "any civil action" or "proceeding," not a single motion. *See* 28 U.S.C. §1446(a) & (b). Either the entire proceeding is removed, or it is not. This principle follows from the explicit language of the removal statute.

The federal removal statute, 28 U.S.C. § 1446(b)(1), anticipates removal after receipt of an initial pleading in a "civil action." "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006). A "civil action" is simply "a civil . . . judicial proceeding." *Action*, Black's Law Dictionary (11th ed. 2019); *see Burton*, 549 U.S. at 91 & n.3 (relying on Black's Law Dictionary for the ordinary meaning of "action"). A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary, *supra*, *Proceeding*. A "complaint" is "[t]he initial pleading that starts a civil action. . ." *Id.*, *Complaint*; *see also Burton*, 549 U.S. at 91 (quoting Black's Law Dictionary for this definition). Thus, the ordinary meaning of "civil action" is "a single proceeding begun with a complaint and continuing all the way through entry of judgment." *Tucker v Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014). Thus, in the context of the Probate Case, the "action" is the *entire* probate conservatorship proceeding, not a discrete motion.

22

95

Here, Mr. Black attempts to remove only a portion of the probate proceeding from state to federal court. *See* Dkt. #1 at 1 ("Bernard Black, acting pro se, in his capacity as trustee . . ., hereby moves to remove to federal court the *attached motion . . . .*"). (emphasis added). This is simply not contemplated by the removal statute. "The defendant cannot carve out of the state court litigation a claim [or claims] which fits the definition of diversity found in the jurisdictional statutes and remove only that claim, because the term civil action will not permit removal of a single claim without the rest of the action." *Stark-Romero v. National R.R. Passenger Co.*, 763 F. Supp. 2d 1231, 1273 (D.N.M. 2011). Or, as put by the Western District of Louisiana when it rejected an attempt to remove from a lawsuit a single third-party claim asserted by one defendant against its insurer:

> In light of the use of the term "civil action" in the removal statute, and of this Court's understanding of the term "action" as comprising the entirety of a case, and of the longstanding prohibition against removing only handpicked claims from state court to federal, and as the removing defendant has made no attempt to reconcile its theory of partial removal with the well-settled judicial tenets with which it is in conflict, this Court finds that the defendant's attempt at a partial removal is contrary to both the law and the theory of removal.

*Levert-St. John, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. CIVA 06-1023, 2006 WL 1875494, at *2 (W.D. La. July 3, 2006).

This is consistent with the authoritative treatise on federal courts, Wright & Miller's *Federal Practice and Procedure*, which makes clear that there is a prohibition, in place for over a century, against removing only a portion of an action:

> There is also a sensible judge-made limitation--stemming from the civil-action requirement--that proceedings that are ancillary to an action pending in state court cannot be removed separately from the main claim. This restriction is premised on the wastefulness of having a satellite element of

a case pending in federal court when principal claims are being litigated in state court.

14C Wright & Miller, *Federal Practice and Procedure* § 3721.1 (4th ed. 2018).

Mr. Black's initial explanation for his attempt to remove only a single motion (as opposed to the entire probate proceeding), was that, in his view, the Probate Court motion is itself procedurally improper and constitutes a *new* lawsuit or complaint. *See* Dkt. #11 at 3 ("To avoid removal to this Court, and subsequent transfer back to the NDIL, Plaintiff's attorneys styled their pleading as a "motion" (the "DPC 'Motion'"), rather than a complaint. They did so in bad faith. Their filing is a completely new action, indeed eight new actions, which require a complaint."). But even if it were true that the "motion" were a new complaint under Colorado law, then Mr. Black should have sought relief from the Probate Court from the purported procedural impropriety of filing a mere motion in a pending conservatorship proceeding, rather than a complaint. On its face, however, the document was a motion filed in a long-pending state court proceeding.

Moreover, contrary to Mr. Black's assertions, Joanne's motion was not a "new claim" but a filing intended to address issues that had been in the conservatorship proceeding for years, such as the validity of the disclaimers. Indeed, as described above, the motion was filed at the explicit direction of the Denver Probate Court (after a remand from the Court of Appeals) to address prior remanded orders and to facilitate the recoupment of funds that Mr. Black as conservator had unlawfully redirected (and which were received by Mr. Black and his son as trustees of the SNT and IT). Mr. Black cites no authority that would justify removing a single motion which raises issues over which the Probate Court indisputably has jurisdiction, and all of which are supplemental

to the Probate Court's efforts to retrieve funds that rightfully belong to the conservatorship for the benefit of Joanne.

Indeed, a somewhat similar case out of Illinois comes down firmly against removing only an ancillary part of a probate case. In *Fischer v. Hartford Life Ins. Co.*, 486 F. Supp. 2d 735 (N.D. Ill. 2007), a petition was filed with an Illinois probate court seeking a citation to recover assets from an insurance company. The petitioner had alleged that insurance proceeds from a life insurance policy should have been estate property subject to administration by the Illinois probate court. The insurance company filed a notice of removal of the petition to the Northern District of Illinois. The matter was remanded. Holding that "only independent suits are removeable," the Illinois federal court found the effort to parse only one aspect of the probate matter for removal to be improper. 486 F. Supp. 2d at 740. In addition, because the petition for a citation was an effort to recover assets of the probate estate, it was a supplementary proceeding— substantially a continuation of the estate administration which could not be separately removed to federal court. *Id*.

In Mr. Black's Reply, he seems to concede that removing a single motion in an on-going proceeding is not appropriate. Dkt. #24 at 2 ("Removal applies to an entire case, not only to specific parties or claims."). Thus, Mr. Black appears to argue that he in fact did remove the entire probate proceeding, but the Court should remand only those portions of the proceeding over which it lacks jurisdiction. *See id*. at 2–3 ("If some claims within an overall case are not within federal jurisdiction, only those portions may be remanded. Conversely all claims within an overall case that are within federal jurisdiction must remain removed, even if other portions are remanded."). And yet, at

25

oral argument, Mr. Black flip-flopped again, acknowledging that he was not intending to

remove the entire conservatorship, but merely the purported "new claims." When asked

directly "What has been removed?" Mr. Black responded cryptically:

> It would never have occurred to me that I was removing the underlying
> conservatorship. What I was trying to do was remove the new claims that
> were brought in October of last year. The underlying conservatorship exists.
> It is ongoing. There is a conservator. The conservator does what she does.
> I'm not trying to remove those claims. I trying to remove the claims that
> should have been brought as brand new complaints, but were not. And then
> along with those, because they are all tied up in a single motion, I think that
> the issue of 'Can the disclaimer be reversed?' comes along with those. But
> I do not believe that this has any impact on the underlying conservatorship.

Dkt. #29 (February 23, 2023 Show Cause Hearing Tr.) at 6:13–7:1. This is simply not

how removal is contemplated by the removal statute.

It is true that the filing of a *motion* alone may make removable an otherwise non-

removable *case*. *See* 28 U.S.C. § 1446 ("a notice of removal may be filed within 30

days after receipt by the defendant, through service or otherwise, of a copy of an

amended pleading, *motion*, order or other paper from which it may first be ascertained

that *the case* is one which is or has become removable") (emphasis added). But that

statute makes explicit that it is the entire case, not the discrete motion, which is properly

removed to federal court. Either the federal court gets the entire case, or nothing.

Accepting Mr. Black at his word that he was not seeking to remove and does not seek

to remove the entire conservatorship, and because the removal statute does not

contemplate removal of a single motion, the removal effort must fail and whatever Mr.

Black thinks he removed to federal court should be remanded.

Mr. Black himself seems to acknowledge that certain portions of the disputed

motion should not be removed, because they address issues that have already been

before the Denver Probate Court and are core issues to the conservatorship. For example, Mr. Black conceded at oral argument that the request to void the disclaimers was properly before the Denver Probate Court and that request, by itself, would not be removable:

> If the only motion before the Denver Probate Court had been, "Judge, please reconsider the disclaimer. . . . we want to come back to this issue," there would be no basis for removing that claim by itself. The basis for removal is that new claims were brought against new defendants. Okay. And so, in my mind, the issue of the disclaimer gets caught up in that, even though if that had been the only claim that had been brought, it would not have been removable.

Dkt. #29 (February 3, 2023 Show Cause Hearing Tr.) at 5:13–24. But Mr. Black gets it exactly wrong. Ongoing conservatorship matters do not get "caught up" in supplemental claims that Mr. Black thinks might be removable to federal court. Those new "claims" seek to recover assets that belong to the conservatorship or to recover damages for unlawful actions taken against the conservatorship. They are therefore supplemental to the ongoing probate matter and, for that reason, cannot be removed separately. *Fischer*, 486 F. Supp. 2d at 740.

Mr. Black's removal attempt is incorrect for another reason. His basis for removal is diversity jurisdiction. Dkt. #1 at 1. The federal removal statute is clear that a case may not be removed on the basis of jurisdiction conferred by Section 1332 (diversity of citizenship) more than one year after commencement of the action. 28 U.S.C. § 1446 (c)(1). This is so even if the case only becomes *removable* more than a year after initiation (absent bad faith). Here, the Probate Case has been pending for ten years. It is therefore not removable on diversity jurisdiction grounds per 28 U.S.C. § 1446 (c)(1). *See*, *e.g., Hajdasz v. Magic Burgers, LLC*, 805 Fed. Appx. 884 (11th Cir. 2020)

(affirming imposition of Rule 11 sanctions where defendant attempted to remove case on diversity grounds two years after initial filing, and well after the one-year removal time limit). The fact that the issue of the validity of the disclaimer has been percolating in the Denver Probate Court literally for years makes it apparent that this is no "new" claim. Similarly, the issues of recouping the money from the IT and removing the Blacks as trustees of trusts which hold Joanne's assets have been before the Denver Probate Court for years as well.

2. **Joanne did not waive procedural objections to the removal.**

Mr. Black claims that even if there are procedural deficiencies in his removal attempt, Joanne waived those procedural deficiencies by not moving for remand within the 30 days contemplated by 28 U.S.C. § 1447(c). *See* Dkt. #14 (Supplemental Response). Under that statutory provision relating to procedure after removal, "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." § 1447(c). A plaintiff is deemed to have waived procedural defects in a removal notice where she does not seek remand within 30 days, as required under § 1447(c). And there is authority for the proposition that a district court lacks even the authority to remand *sua sponte* for procedural defects after the 30-day limit for filing remand motions has passed. *See, e.g.*, *F.D.I.C. v. Loyd*, 955 F.2d 316 (5th Cir. 1992) (reversing *sua sponte* District Court remand on procedural grounds some twenty months after the thirty-day remand period had expired); *Hamilton v. Aetna Life and Cas*

28

101

*Co.*, 5 F.3d 642, 644 (2d Cir. 1993) (holding that "an order remanding on procedural grounds either upon an untimely motion or *sua sponte* more than 30 days after removal. . . is not authorized by § 1447(c) [and] is reviewable").

But in this case, within the 30 days mandated by section 1447(c), this Court issued its show cause order identifying potential procedural and jurisdictional problems with Mr. Black's removal attempt. The notice of removal was filed November 30, 2022. Dkt. #1. The Order to Show Cause issued two days later, on December 2, 2022. Dkt. #5. Mr. Black was ordered to respond by December 9, 2022. *See id.* He then asked for an extension (*see* Dkt. #8) and filed his response (Dkt. #11) on December 19, 2022. Joanne filed her own response (Dkt. #18) to Mr. Black's response to the Order to Show Cause on January 20, 2022.

Thus, within the requisite 30 days, procedural and jurisdictional improprieties of the removal were teed-up for briefing by the Court's Order to Show Cause. Joanne can hardly be deemed to have waived those procedural deficiencies. Questions about the procedural propriety of the removal were before the Court via the show cause order within the 30 days mandated by § 1447(c), the Court believes it proper to consider procedural defects of the removal effort. *See, e.g.*, *Tengler v. Spare*, No. C-95-3421 SI, 1995 WL 705142, at *5 n.3 (N.D. Cal. Nov. 15, 1995) (concluding that where an Order to Show Cause addressing procedural problems with removal is issued within the 30 day period, the Order to Show Cause should be treated as motion for purposes of § 1447(c)); *In re Gold Messenger, Inc.*, 221 B.R. 259 (D. Colo. 1998) (rejecting the notion that a Court cannot act *sua sponte* within the 30-day period based on procedural defects in the removal notice, but recognizing that a *sua sponte* remand for procedural

defects after 30 days is not appropriate); *Corry v. City of Houston*, 832 F. Supp. 1095, 1096–97 (S.D. Tex. 1993) (explaining that "Congress' purpose in amending § 1447(c) was not to altogether limit district courts' *sua sponte* remands but only to require that remands based on procedural defects be addressed within thirty days of removal").

    3. **The Court lacks subject matter jurisdiction.**

    Putting aside the procedural improprieties of Mr. Black's removal effort, the most basic, and ultimately fatal, problem with Mr. Black's removal attempt is that this Court lacks jurisdiction over probate matters such as the underlying conservatorship proceeding. This is the so-called "probate exception" to federal jurisdiction. *See generally Marshall v. Marshall*, 547 U.S. 293, 308 (2006). "[T]he the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id*. at 311–12. A case which seeks to reach a *res* in the custody of a state probate court is likewise not cognizable in federal court. *Id*. at 312.

    Specifically, federal courts are without jurisdiction to hear *in rem* or *quasi in rem* matters in which a state court has exercised jurisdiction, such as conservatorship proceedings. *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993) (holding that federal court lacked jurisdiction to hear RICO suit alleging malfeasance brought against trustees of testamentary trust, because beneficiaries' action was *in rem* or *quasi in rem* and county court had already exercised jurisdiction over the disputed trust); *Beren v. Ropfogel*, 24 F.3d 1226, 1228 (10th Cir. 1994) (dismissing for lack of jurisdiction and holding that while federal courts may entertain certain actions collateral to a probate

proceeding, federal courts may not interfere with probate proceedings or assume general jurisdiction of the probate estate or control of property in state court's custody); *see also Black v. Dain*, 2017 WL 11696660, at *9 ("[A] probate court administering the estate of a conservatee or a guardian is within the boundaries of the probate exception") (citing *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)). Put simply, federal courts are prohibited from endeavoring to dispose of property that is in the custody of a state probate court. *Id.* If the claim or claims a defendant seeks to remove concern the *res* under the jurisdiction of a state court, the federal court must remand for lack of federal jurisdiction. *Marshall,* 547 U.S. at 311–12.

The prohibition against "endeavoring to dispose of property that is in the custody of a state probate court" is, the Supreme Court has explained, "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 311 (internal citations omitted). "This general principle applies equally when, as in this case, the *res* in question is not property of an estate but property of a trust." *Mercer v. Bank of N.Y. Mellon, N.A.,* 609 F. App'x 677, 678–79 (2d Cir. 2015); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *Beach v. Rome Trust Co.*, 269 F.2d 367, 371 (2d Cir. 1959). Moreover, it applies to jurisdiction that is quasi *in rem*: it "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Princess Lida*, 305 U.S. at 466–67.

31

104

When analyzing the applicability of the probate exception, the Court "must examine the substance of the relief that Plaintiffs are seeking, and not the labels that they have used." *Mercer*, 609 F. App'x at 679–80. The Colorado Court of Appeals made clear in *Black III* that Joanne's conservatorship is an *in rem* proceeding. *Black III*, at 467. And the Colorado Court of Appeals affirmed both the Probate Court's continuing *in rem* jurisdiction over the conservatorship trust assets and its personal jurisdiction over the actions of IT trustee Bernard. *Id.* ("[W]e hold that the probate court retains in rem jurisdiction over the assets transferred to the foreign trust"), *see also id.* at 474. Here, the disputed, purportedly removed, motion deals directly with matters over which the Denver Probate Court has properly asserted jurisdiction—the conservatorship, the disclaimers which allowed conservatorship assets to be transferred to the trusts, the trusts into which the conservatorship assets were unlawfully transferred, and the trustees who conspire to keep the stolen assets from being returned to the conservatorship. Whether the Probate Court has jurisdiction over Samuel (in addition to Bernard), for the damage caused to the conservatorship has not yet been definitively decided by the Probate Court or the Colorado Court of Appeals, but the issue is clearly closely related and supplemental to the issues indisputably before the Probate Court.

Both the Northern District of Illinois and the Eastern District of New York, the two courts to whom Mr. Bernard would have this Court transfer the disputed motion, have recognized that the Denver Probate Court has subject matter jurisdiction over the conservatorship and issues that concern the conservatorship *res*, and that the Denver Probate Court is the appropriate place for these decisions to be made. Judge Wood of the Northern District of Illinois has already abstained from deciding, and elected not to

enjoin the Denver Probate Court from addressing, precisely the issues raised in the disputed motion. *See JPMorgan Chase Bank*, 2021 WL 4459482, at *12–13. The Eastern District of New York, for its part, has already explicitly said that there are certain things it cannot do precisely because of the probate exception to federal jurisdiction. These include interfering with the Denver Probate Court's ongoing administration of the conservatorship estate, making decisions regarding access to funds in the estate and payment of fees and expenses, or issuing orders concerning the jurisdiction of state probate courts over the estates. *See Black v. Dain*, 2017 WL 11696660, at *8–9.

There is one aspect of Joanne's disputed motion that arguably does not fall under the probate exception to federal jurisdiction. That is the part of the motion that seeks damages from Samuel for his frivolous and groundless legal shenanigans against Joanne, Conservator Goodwin, and Trustee Dain, including his fraudulent and collusive efforts to encumber the trusts—all in direct breach of his fiduciary duties. The motion asks that the Denver Probate Court hold a hearing and require Samuel to "show cause why he should not be surcharged the damages, i.e., attorney's fees and costs, he has cost the Protected Person and the Conservatorship." Dkt. #1-1 at 22, ¶¶ 7–8. This could be characterized as an independent, *in personam*, claim against Samuel for breach of fiduciary duty causing damage to the conservatorship estate which, under the logic of *Marshall*, would not necessarily implicate the probate exception. The federal court arguably could retain jurisdiction over such a claim if it were filed independently. But, for the reasons set forth below, the Court will not recommend retaining jurisdiction over just one part of the disputed motion.

33

First, the actions of Samuel are intimately related to the ongoing conservatorship. Samuel's actions as trustee of the trusts that contain conservatorship assets arguably damaged the conservatorship. Removing just a discrete claim against Samuel from an ongoing conservatorship proceeding runs counter to the principle that parties may not parse out certain claims for removal while leaving other parts of a case behind. Claims against Samuel are supplemental to the ongoing conservatorship proceeding.

Second, Samuel has not appeared. No one acting on Samuel's behalf has removed anything to federal court. Bernard purports to be appearing *pro se* in his capacity as trustee of the IT. He is not authorized to act as an attorney on behalf of Samuel. Thus, there is no basis to treat the purported claim against Samuel as having been properly removed.

Third, much of Bernard's argument about why many of the "claims" asserted in the removed motion should not be remanded are based on the Denver Probate Court's supposed lack of jurisdiction over Samuel, either personally or in his capacity as trustee. But Mr. Black and Samuel are free to raise any personal jurisdictional concerns in the Denver Probate Court in the first instance, or in the Colorado Court of Appeals on appeal. Alleged lack of personal jurisdiction in a state court is not a valid objection to the remand of claims.

Therefore, for all the reasons stated above, including especially the lack of federal jurisdiction, this case (or "motion," or whatever Mr. Black thinks he removed) should be remanded to the Denver Probate Court.

4. **Bernard Black should pay Joanne's attorney fees for his bad faith attempt to remove a single motion filed in Denver Probate Court.**

The Court concludes that Mr. Black's attempt to remove a single motion in a 10-year old probate matter was done in bad faith, for the purpose of forum shopping, to delay the Denver Probate Court's effort to reacquire funds that belong to Joanne, and to interfere with the administration of justice. Mr. Black has been told by numerous courts that the Probate Court has jurisdiction over funds that were unlawfully transferred to other trusts, and also has jurisdiction over Mr. Black in every possible capacity: conservator, individual, and trustee. Mr. Black's attempt to justify why the probate exception does not apply in this situation ignores the decisions of at least two other federal courts that recognized that the most expeditious way to get a final resolution of this case is to have the Denver Probate Court engage in the determinations that Joanne's motion expressly requests. *See JPMorgan Chase Bank*, 2021 WL 4459482, at *13 ("[T]he DPC is poised to determine whether Bernard's disclaimer of the POD assets—the fraud that initiated countless legal actions across numerous forums—should be undone, and the assets returned to the conservatorship.").

Mr. Black's arguments are all-the-more egregious because he is both a lawyer and a law professor. There is no justification for the kinds of procedural and rhetorical games Mr. Black is playing. He should, and in the Court's view, does, know better. He is using his myriad legal skills to file cases across the country, engage in procedural gymnastics to avoid legitimate court judgments, impose undue and unnecessary legal costs on Joanne's conservator, and inappropriately pressure for settlement. He has imposed significant burdens on multiple courts for no legitimate or justified reason. The

35

108

victims of this chicanery are his disabled sister and the state and federal court systems that he is abusing. As a lawyer and law professor, he needs to accept the fact that that he has been adjudged by a court of competent jurisdiction to have stolen his disabled sister's assets. That decision was affirmed on appeal and certiorari was denied. Under our system of laws, there must come a point where the machinations stop.

5. **An award of attorney fees on remand is authorized under 28 U.S.C. §1447(c).**

Federal law specifically allows for an award of attorney fees against the removing party on issuance of a remand order. *See* 28 U.S.C. §1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). There is no automatic presumption that fees will be awarded on remand. Nor is there a presumption against an award of fees. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136–139 (2005) ("[W]e see nothing to persuade us that fees under § 1447(c) should either usually be granted or usually be denied."). That said, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Id.* at 140. "Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.* Therefore, per the Supreme Court, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* In light of this objective, a trial court may award attorney's fees under §1447(c), "only where the removing party lacked an objectively reasonable basis for

seeking removal." *Id*. at 141. As set forth extensively above, Mr. Black had no objectively reasonable basis for seeking removal.

    6.  **The Court has inherent authority to sanction an attorney of party.**

Federal courts have certain "inherent powers" which are not conferred by rule or statute "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Among these powers is a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see also Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *3–4 (S.D.N.Y. July 10, 2019) (imposing sanctions pursuant to court's inherent powers).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. But it is undisputed that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id*. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). One permissible sanction is an assessment of attorney fees, requiring the party that has engaged in misconduct to reimburse the legal fees and costs of the other party. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Such a sanction must be compensatory rather than punitive in nature, and any attorney fee award is limited to the fees "the innocent party incurred solely because of the misconduct—or, put another way, to the fees that party would not have occurred but for the bad faith." *Id*. at 104.

Sanctions under the Court's inherent authority appear to require a finding of bad faith on the part of the attorney to be sanctioned. *See Farmer v. Banco Popular of North*

*America*, 791 F.3d 1246 (10th Cir. 2015) (upholding sanction award under the Court's inherent authority finding bad faith by a party in failing to comply with order enforcing settlement); *Chambers*, 501 U.S. 32 (1991) (holding there was no abuse of discretion in district court's resort to inherent power to impose sanctions for bad-faith conduct, even though some conduct was also sanctionable under the rules of civil procedure).

7. **Sanctions are also available under 28 U.S.C. § 1927 for vexatiously multiplying proceedings.**

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Given this statutory language, "[a] court may assess attorney[s'] fees against an attorney under § 1927 if (a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000).

Actions are considered vexatious and unreasonable if the attorney acts in bad faith . . . or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court." *Id*. The attorney's conduct is judged objectively; subjective bad faith is not required to justify § 1927 sanctions. *See Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."). In *Miera v. Dairyland Ins. Co.*, 143 F.3d

1337 (10th Cir. 1998), the Tenth Circuit listed the categories of conduct that might justify

the imposition of sanctions under § 1927. These include:

> • acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law;

> • when an attorney is cavalier or "bent on misleading the court;"

> • intentionally acts without a plausible basis;

> • when the entire course of the proceedings was unwarranted;

> • or when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of the litigation.

143 F.3d at 1342.

In the Tenth Circuit, the standard for imposing sanctions for unreasonably and

vexatiously multiplying proceedings is an "extreme standard," and fees should be

awarded as a sanction "only in instances evidencing a serious and standard disregard

for the orderly process of justice." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015)

(quoting *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997)) (internal

quotation marks omitted). The statute makes attorneys potentially liable for harm

caused "because of" unreasonable and vexatious multiplication of proceedings. 28

U.S.C. § 1927. Thus, "there must be a causal connection between the objectionable

conduct of counsel and multiplication of the proceedings," such that the conduct

"result[ed] in proceedings that would not have been conducted otherwise." *Peterson v.*

*BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Ultimately, whether to award

§ 1927 sanctions is a matter committed to this Court's discretion. *Dominion Video*

*Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278–79 (10th Cir. 2005).

The District of New Mexico has found that sanctions under 28 U.S.C. § 1927 are appropriate where an attorney improperly attempted to effectuate removal to federal court in contravention of the express language of the removal statute, while nevertheless insisting that removal was somehow proper. *See Doe ex rel. Hughes v. Martinez*, 674 F. Supp. 2d 1282, 1285-86 (D.N.M. 2009).

8.    **The Court concludes that sanctions against Mr. Black are appropriate.**

The Court finds the removal was in bad faith, vexatious, and without reasonable basis. Given Mr. Black's conduct in the underlying probate matter, the fact that the underlying probate court matter has been pending for more than 10 years, his repeated and shameless efforts to shop for fora other than Colorado, his disregard for basic legal principles and procedural rules in attempting the removal, and his request to transfer probate-related matters to two federal court (in Illinois and New York) that have already said that the Denver Probate Court is the venue where these issues are to be decided, sanctions are merited under the Court's inherent authority, under 28 U.S.C. §1447(c), and under 28 U.S.C. §1927. Mr. Black has multiplied the proceedings in the underlying probate matter by vexatiously and without a plausible basis removing the case to federal court.

The Court specifically finds that the removal in this instance, coupled with the motion to transfer the case, was done in bad faith. Mr. Black concedes that the issue of reversing the disclaimer is properly before the Denver Probate Court and there would be no legitimate basis to remove that particular issue. The request to transfer to the Northern District of Illinois is patently absurd, given that the Northern District which has the pending interpleader action, specifically explained in its own opinion and in a second

40

113

clarifying order, that the Denver Probate Court is the proper venue for addressing the issue of voiding the disclaimer, and related questions the trust accounts that hold Joanne's assets.

It is therefore recommended that Mr. Black be ordered to pay Joanne's attorney fees in opposing the removal and the motion to transfer. The Court shall retain jurisdiction to consider the exact amount of an appropriate award of attorney's fees, costs and actual expenses to be awarded Joanne on account of the improper removal by Mr. Black. Accordingly, if Judge Domenico adopts this Recommendation, Joanne's counsel shall within ten (10) days of Judge Domenico's ruling file an affidavit detailing what they assert is the reasonable attorney's fees, expenses and costs that should be awarded for the improper removal. Mr. Black shall have ten (10) days after such affidavit is filed to submit any written challenge concerning the reasonableness of attorney's fees, expenses and costs that the Court will award pursuant to § 1447(c).

9. **The Clerk of Court shall refer Mr. Black to disciplinary authorities in the State of New York.**

The Court believes it has an obligation to bring serious misconduct by an attorney to the attention of appropriate disciplinary authorities. *See* Colo. R.P.C. 8.3(a) (Reporting Professional Misconduct; Maintaining the Integrity of the Profession) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."). As the comment to this Rule states, "Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct."

In this case, and as described in exhaustive detail above and in numerous other court decisions, Mr. Black has been adjudged by a court of competent jurisdiction to have abused his fiduciary position to steal $1.5 million from mentally ill sister. Because he was found to have committed civil theft, that $1.5 million damage amount was trebled. The Denver Probate Court's civil theft decision was affirmed on appeal and is now a final judgment. In addition to committing civil theft, Mr. Black and his law professor wife have conspired to fraudulently encumber the accounts which contain the stolen money, making it more difficult for the money to be released for his sister's benefit. The theft and the fraudulent encumbrance constitutes conduct that, on its face, "raises a substantial question as to [Mr. Black's] honesty, trustworthiness or fitness as a lawyer." Colo. R.P.C. 8.3(a). Mr. Black has not returned the stolen money, instead, throwing up legal impediments after legal impediment.

Mr. Black says he is licensed to practice law in the State of New York. Dkt. #11 at 7 ("Bernard is a licensed attorney in New York. He is not licensed in Colorado and has not sought *pro hac vice* privileges in Colorado. He should not need them, since he is acting solely pro se."). It is not apparent that any disciplinary authority, in any jurisdiction, has taken action regarding Mr. Black's conduct in this affair. If Mr. Black were admitted to practice law in the District of Colorado or the State of Colorado, the Court would not hesitate to refer him for discipline to this Court's Committee on Conduct or to the Colorado Supreme Court's Office of Attorney Regulation Counsel.

The New York State Bar Association's Committee on Professional Discipline makes clear that "As officers of the court, all [New York] attorneys are obligated to maintain the highest ethical standards. In furtherance of this obligation, attorneys are

42

115

guided by a code of conduct, the NY Rules of Professional Conduct, as adopted by the Appellate Division of State Supreme Court. Attorneys who violate the law or fail to abide by this code of conduct are subject to discipline, which may include admonishment, reprimand, censure, suspension or loss of his or her license to practice law." *A Guide to Attorney Disciplinary Procedures in New York State*, NYSBA Committee on Professional Discipline, https://nysba.org/public-resources/guide-to-attorney-discipline (last visited February 13, 2023).

Accordingly, the Clerk of Court is **ORDERED** to send to the Appellate Division of the New York State Supreme Court (1) a copy of this recommendation; (2) the appellate court decisions in *Black v. Black*, 422 P.3d 592 (Colo. App. 2018) ("*Black I*"); *Black v. Black*, 482 P.3d 460 (Colo. App. 2020) ("*Black III*"); and the decision in *Litvak v. Black*, 147 N.E.3d 835 (Ill. App. 2019) (vacating on the basis of fraud and collusion an agreed judgment between Bernard Black, his son Samuel, and his wife, Katherine Litvak). The package to the Appellate Division should include a formal request that the appropriate New York State Bar disciplinary authority investigate Mr. Black for his conduct as described in those reported decisions and in this case, and consider imposing appropriate discipline, including potentially suspension or disbarment.

## CONCLUSION

In light of the foregoing, it is hereby

**RECOMMENDED** this matter be **REMANDED** to the Denver Probate Court. It is further

**RECOMMENDED** that the Motion to Change Venue (Dkt. #7) be **DENIED AS MOOT**. It is further

**RECOMMENDED** that Mr. Black be ordered to pay Joanne's attorney fees as outlined above. Finally, it is

**ORDERED** that the Clerk of Court send a formal request to the Appellate Division of the New York State Supreme Court referring the matter of the Mr. Black's misconduct as described in this matter and the underlying probate case and associated cases for attorney discipline.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: February 14, 2023
    Denver, Colorado

_____
N. Reid Neureiter
United States Magistrate Judge

**Attachment 2. District Judge Domenico Decision**
**(April 4, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:22-cv-03098-DDD-NRN

JOANNE BLACK,

      Petitioner,

v.

BERNARD S. BLACK,

      Respondent.

---

ORDER ADOPTING RECOMMENDATION OF MAGISTRATE JUDGE
AND REMANDING CASE

---

United States Magistrate Judge N. Reid Neureiter recommends that this case be remanded to state court and that Respondent Bernard Black be sanctioned for engaging in bad-faith litigation. Doc. 30. Mr. Black timely objected to the recommendation. Doc. 35. He also subsequently filed a motion for a temporary restraining order, Doc. 37, and a motion to vacate orders, Doc. 38, both of which ask this Court to enjoin ongoing proceedings in state court. Having reviewed the record and the relevant filings in this case, I find that Judge Neureiter's recommendation is correct, and this Court does not have subject-matter jurisdiction over this matter. The recommendation is therefore adopted, and the case is remanded. Judge Neureiter's imposition of sanctions is not clearly erroneous or contrary to law, so it too is adopted. The remaining motions are denied as moot.

- 1 -

## BACKGROUND

The background of this matter is laid out in detail in Judge Neu-reiter's recommendation and need not be repeated here. The relevant points are that Joanne Black, Mr. Black's sister, has been deemed incompetent to manage her own affairs under the law. Doc. 30 at 4. A conservatorship regarding Joanne has been pending in Denver County Probate Court since 2012. That is the year the Blacks' mother died. Prior to her death, she had created a Supplemental Needs Trust for Joanne's benefit, and in her will she had devised two-thirds of her estate to that trust, and one third to a trust for Bernard and his children. She also had about $3.5 million in brokerage accounts. Those accounts included payable-on-death benefits that designated that a third of the funds be given directly to Joanne, not the trusts. Bernard has been fighting that designation ever since.

Bernard filed the 2012 conservatorship and was appointed Joanne's conservator. *See In re Black*, No. 2012PR001772 (Denver Cty. Probate Ct. filed Oct. 16, 2012); *Black v. Black* (*Black II*), 482 P.3d 460 (Colo. App. 2020). Suffice it to say that case has not turned out the way Mr. Black must have hoped. The probate court, among other things, found that he improperly diverted funds from Joanne and that his actions were "deceptive and undertaken in bad faith" and constituted civil theft. The court removed him as Joanne's conservator, ordered him to reimburse Joanne $1.5 million, and trebled the damages to $4.5 million under Colorado's civil-theft statute. *Black v. Black* (*Black I*), 422 P.3d 592, 598-99 (Colo. App. 2018). In addition to unsuccessful appeals in Colorado's courts, Mr. Black and his immediate family members have since tried to get courts in a variety of other jurisdictions to help dig out of this hole. *See* Doc. 30 at 11-19 & n.1 and cases cited.

- 2 -

This matter is another such effort. Here, Mr. Black filed a notice of removal, purporting to remove not a case, but a motion filed by Joanne in the Denver probate case. Doc. 1-1. Judge Neureiter issued an order requiring Mr. Black to show cause why this case shouldn't be remanded for lack of subject-matter jurisdiction and procedural flaws in the removal and why he should not be sanctioned for filing a frivolous removal notice. Doc. 5. Mr. Black responded first by filing a motion "to transfer venue to the Northern District of Illinois or the Eastern District of New York and/or dismiss the claims in the state court motion," Doc. 7, and then by filing a response to the order to show cause, Doc. 11, and a supplement to that response, Doc. 14. Judge Neureiter construed Mr. Black's response as, in part, non-consent to jurisdiction over the case by a magistrate judge, and the case was reassigned to me as the presiding judge. Docs. 15, 16. Judge Neureiter held a hearing and heard argument on his show-cause order, and ultimately issued the recommendation at issue here.

Mr. Black objects to Judge Neureiter's recommendation. Doc. 35. He has also filed a motion for a temporary restraining order, Doc. 37, and a motion to vacate orders issued by the probate court, Doc. 38.[1]

## STANDARD OF REVIEW

When reviewing a magistrate judge's recommended disposition of a pretrial matter dispositive of a party's claim or defense, a district judge must conduct a de novo review of those portions of the magistrate judge's recommendation to which a party has filed timely and specific written

---

[1]    On April 3, 2023, Mr. Black left two voicemails and emailed my chambers inquiring about the status of his most recent filings. He is admonished to refrain from any further ex parte communications with the Court. *See* Local Civ. R. 77.2. Any such future communications will be ignored.

objections. Fed. R. Civ. P. 72(b)(2)-(3); 18 U.S.C. § 636(b)(1). To preserve an issue for de novo review, a party's objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). As to those portions of the recommendation to which no timely, specific objection has been made, the district judge may review the magistrate judge's factual and legal conclusions under any standard the district judge deems appropriate. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). Upon review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 18 U.S.C. § 636(b)(1).

When reviewing a magistrate judge's order that is not dispositive of a party's claim or defense, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual findings, which may not be set aside unless "on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Residences at Olde Town Square Assoc. v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072 (D. Colo. 2019) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The "contrary to law" standard applies to the magistrate judge's legal determinations and permits plenary review as to matters of law; the district judge may set aside a legal ruling if the magistrate judge applied the wrong legal standard or applied the appropriate legal standard incorrectly. *Olde*

- 4 -

*Town Square*, 413 F. Supp. 3d at 1072 (citing 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3069 (2d ed.)).

While Mr. Black is apparently a licensed attorney in New York, he is proceeding here pro se, and I liberally construe his pleadings.[2] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). I may not, however, assume the role of advocate on his behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*).

## Discussion

Mr. Black requests oral argument, but I have reviewed the pleadings and docket in this matter, and the transcript of the hearing before Judge Neureiter and am confident that oral argument would be of no help. *See* Local Civ. R. 7.1(h).

## I.  Remand

Because remand is dispositive of this matter, at least as far as federal court is concerned, I review that aspect of Judge Neureiter's recommendation de novo. Like Judge Neureiter, I conclude that this Court does not have subject-matter jurisdiction over the matter Mr. Black seeks to remove. As Judge Neureiter notes, the statute conferring removal jurisdiction on federal courts does not permit removal of a particular motion from state court, but "speaks of removal of 'any civil action' or 'proceeding.'" Doc. 30 at 22 (citing 28 U.S.C. § 1446(a), (b)). Judge Neureiter's explication of the statutory language is straightforward and correct:

> A "civil action" is simply "a civil . . . judicial proceeding."
> *Action*, Black's Law Dictionary (11th ed. 2019); *see Burton*,
> 549 U.S. at 91 & n.3 (relying on Black's Law Dictionary for

---

[2]  I note that Mr. Black is also a tenured law professor, but that does not entitle him to any further accommodation.

> the ordinary meaning of "action"). A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary, *supra*, *Proceeding*. A "complaint" is "[t]he initial pleading that starts a civil action. . ." *Id.*, *Complaint*; *see also Burton*, 549 U.S. at 91 (quoting Black's Law Dictionary for this definition). Thus, the ordinary meaning of "civil action" is "a single proceeding begun with a complaint and continuing all the way through entry of judgment."

*Id.* (quoting *Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014)).

A state-court *motion* is neither a civil action nor a proceeding, and thus is not within the ambit of the removal statute. Remand is therefore necessary. *Stark-Romero v. National R.R. Passenger Co.*, 763 F. Supp. 2d 1231, 1273-74 (D.N.M. 2011).

That is reason enough to remand the case. But as Judge Neureiter recognized, there is another flaw in Mr. Black's removal. Removal is only permitted if the underlying matter could have been brought in federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). The matters here are clearly within the probate exception to federal jurisdiction. That exception holds that federal courts may not adjudicate matters regarding the probate of a will and the administration of a decedent's estate, and precludes federal courts from taking action that will dispose of property in the custody of state probate court. *Marshall v. Marshall*, 547 U.S. 293, 311 (2006). The conservatorship action in general is undoubtedly within that exception, as it regards the administration of a decedent's estate. *See also Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993). And even if Mr. Black could remove a single motion, his

- 6 -

124

puzzling arguments cannot overcome the fact that the motion he seeks to remove here could not have been brought in federal court because the issues it raises are precisely the sorts of probate questions the exception covers.[3]

Mr. Black's argument that the motion in question could have, or even should have, been brought as a separate proceeding is irrelevant to the removal question. What is inarguable is that the motion in question is, in the probate court, being addressed as part of the ongoing probate proceeding, and indeed the probate court specifically directed Joanne Black to file a motion in that case addressing these issues. *See* Order, *In re Black*, No. 2012PR001772 (Denver Cty. Probate Ct. May 10, 2021). Whether the motion should be treated separately in state court is a matter for the state courts. The federal removal statute does not allow Mr. Black to pluck out part of that case and bring it to federal court.

Mr. Black's arguments in response to the show-cause order and his objections to Judge Neureiter's recommendation focus on Judge Neureiter's identification of "procedural" flaws. These, he says, cannot be raised *sua sponte* by a judge and are waived if not raised by the opponent of removal within thirty days. *See* Doc. 14 at 3, Doc. 35 at 11-14. If there were only procedural flaws with Mr. Black's removal, he would have a point. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made

---

[3]    The motion deals with the following issues, as ordered by the probate court on remand from the Court of Appeals: (1) voiding the disclaimers used by Bernard Black; (2) return of conservatorship assets as previously ordered by the probate court; (3) suspension and/or removal of Bernard Black and Samuel Black as trustees from all trusts holding assets derived from the conservatorship estate; and (4) personal liability and damages against Samuel Black. *See* Order, *In re Black*, No. 2012 PR001772 (Denver Cty. Probate Ct. May 10, 2021).

- 7 -

within 30 days after the filing of the notice of removal . . . ."). But the flaws discussed above are not procedural, they are jurisdictional. The matter he seeks to remove (a motion pending in a state-court probate proceeding) is not one Congress has seen fit to give federal courts jurisdiction over. And of course, courts not only are permitted to address subject-matter-jurisdiction questions *sua sponte*, we have a duty to do so. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*.").

This Court does not have subject-matter jurisdiction over this matter, and it must be remanded to state court.

## II. Sanctions

Judge Neureiter found Mr. Black's removal effort here, and the motion to transfer venue, to be part of a lengthy pattern of vexatious and bad faith litigation on his part, including in the underlying probate action and the other cases around the country. Doc. 30 at 40-41. He therefore recommends that Mr. Black be sanctioned under the Court's inherent authority by being forced to pay the attorney fees Joanne has incurred in opposing the removal and transfer motion. *Id*. He also ordered the Clerk of Court to send to bar authorities in New York (where Mr. Black is licensed to practice) copies of the recommendation and other court orders describing the conduct of Mr. Black and his family over the last eleven years. *Id*. at 41-42.

Mr. Black objects, arguing that the question is not whether he and his family are "good people" or not. Doc. 35 at 5. Mr. Black is right about that—a higher authority than any judge of this Court can ultimately settle that question. But he is wrong about the rest. First, Judge

- 8 -

Neureiter carefully laid out the legal standards that govern the imposition of sanctions under courts' inherent authority. As he explained, within the inherent powers retained by federal courts is the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." Doc. 30 at 37 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). Judge Neureiter noted that courts' inherent powers must be exercised with restraint. *Id*. However, in a situation such as the present one, a court may require a party that has engaged in misconduct to reimburse the legal fees and costs of the other party, so long as the sanction is compensatory rather than punitive, and the fees are limited. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Judge Neureiter fastidiously followed these criteria.

Nor is there any support for Mr. Black's contention that Judge Neureiter was not permitted to look beyond the filings in this case to assess whether it was part of a pattern of bad faith and unnecessary multiplication of litigation. For one thing, a single bad-faith, frivolous filing in a single case can be vexatious and worthy of sanctions—that would be sufficient to leave Judge Neureiter's sanctions in place. But there is also no reason that a judge cannot look at a litigant's broader activities, at least when they are related to the present matter, to see if he is abusing the system in general. That is what Judge Neureiter found here, and that finding is amply supported by the record.

Indeed, even a mere adjunct professor can recognize that part of Mr. Black's strategy in dragging this case out and avoiding sanctions is to file discrete motions and actions in different courts around the country, effectively to see what he can get away with. As Joanne has noted, even since Judge Neureiter's rebuke, Mr. Black has disingenuously represented his role in these goings-on in at least two other courts. In Oregon, Mr. Black and his son Samuel have filed a motion seeking to

- 9 -

intervene as plaintiffs in a case brought by Joanne's conservator *against Mr. Black. In re Foreign Judgment Rendered in the Case of Conservatorship of Joanne Black v. Bernard Black*, No. 19CV24979 (Multnomah Cir. Ct. March 8, 2023). Messrs. Black purport to act as the "majority" of the trustees in Joanne's supplemental needs trust in what appears to be yet another blatant attempt to escape the repercussions of their fraud. The Second Circuit, after Mr. Black's oral argument, noted:

> Bernard Black was suspended from his role as co-trustee of the SNT by the Denver Probate Court in January 2018. *See* [*Black II*]. He asserted in his oral argument in this appeal that that the Denver Probate Court order suspending him as co-trustee has lapsed by operation of law, but he does not contend that the Colorado court, or any other court, has ended the suspension or reinstated him as trustee.

*Black v. Wrigley*, No. 21-2553, 2023 WL 2591014, at *1 n.2 (2d Cir. Mar. 22, 2023); Doc. 128-1 at 2. This is, if anything, a more insidious form of vexatious, multiplicitous litigation than the more mundane repeat filings in a single court that are the usual subject of similar sanctions. That Judge Neureiter went to the trouble of looking beyond the present matter and the confines of this District to see the true pattern of Mr. Black's conduct is the opposite of an abuse of discretion or clear error.

This entire federal case has been the definition of vexatious and wasteful. It would warrant the sanctions Judge Neureiter recommended no matter the context. That the other side of the underlying matter is a disabled sibling seeking what court after court has recognized is rightfully hers does not change the result of this order, but, one must assume, will be taken into account by that higher authority when the time comes.

- 10 -

128

CONCLUSION

It is **ORDERED** that:

The Objections by Bernard Black to Magistrate Judge's Report and Recommendation, **Doc. 35**, are **OVERRULED**;

The Report and Recommendation, **Doc. 30**, is **ACCEPTED** and **ADOPTED**;

Mr. Black's motions, **Docs. 7**, **37**, **38**, are **DENIED AS MOOT**; and

This matter is **REMANDED** to the Denver County Probate Court.

The Court retains limited jurisdiction to impose sanctions under its inherent authority. As explained in the recommendation, *see* Doc. 30 at 41, it is **FURTHER ORDERED** that:

Joanne's counsel must within ten days of this Order file an affidavit detailing what she asserts is the reasonable attorney fees, expenses, and costs that should be awarded for the improper removal; and

Mr. Black will have ten days after such affidavit is filed to submit any written challenge concerning the reasonableness of attorney fees, expenses, and costs that the Court will award pursuant to Section 1447(c).

DATED: April 5, 2023                          BY THE COURT:

                                              Daniel D. Domenico
                                              United States District Judge

- 11 -

**Attachment 3. Magistrate Judge Neuriter Recommendation on Fees (August 9, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03098-DDD-NRN

JOANNE BLACK, protected person,

Petitioner,

v.

BERNARD BLACK,

Respondent.

---

**ORDER AWARDING ATTORNEYS' FEES AS SANCTION FOR FILING VEXATIOUS
REMOVAL PAPERS**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

     This matter is before the Court to determine the amount of attorneys' fees to be assessed as a sanction against Respondent Bernard Black. *See* Dkt. #30 (Report and Recommendation of February 14, 2023 recommending, in part, that Mr. Black pay Joanne Black's attorney's fees); Dkt. #39 (Order by Judge Domenico of April 5, 2023, adopting recommendation and noting that the Court retains limited jurisdiction to impose sanctions under its inherent authority and under 28 U.S.C. §1447(c)); Dkt. #41 (Verified Affidavit of Attorney's Fees and Costs).

     The issue of amount of the sanction was referred by Judge Domenico by text entry order on June 13, 2023. Dkt. #50.

**Procedural Background**

Much of procedural history of this case has been recited in prior orders and need not be repeated here. Briefly, this matter arrived in federal court on November 30, 2022, when the Respondent, Bernard Black, sought to remove a single motion that had been filed in pending Colorado state court conservatorship matter. Dkt. #1. The conservatorship had been pending in state court for years, and in fact had been initiated by Mr. Black with respect to his sister, Joanne Black. The conservatorship proceeding had not gone as Mr. Black had originally hoped: he ended up being assessed millions of dollars by the Denver Probate Court for having stolen money from his disabled sister. The removed motion involved follow-on proceedings after various appeals to the Colorado Court of Appeals.

After removal, this Court promptly issued an order asking Mr. Black to show cause why the case should not be remanded and why he should not be sanctioned for what appeared to be a frivolous and baseless attempt at removal for the purpose of interfering with the ongoing state probate proceeding. *See* Dkt. #5. The case was subsequently reassigned to Judge Domenico (Dkt. #16), but Judge Domenico referred Mr. Black's response to the Order to Show Cause to me for a report and recommendation. Dkt. #18. In the meantime, Mr. Black filed a motion to transfer venue or to dismiss the "claims" purportedly asserted in the state court motion that he had sought to remove. Dkt. #7.

After full briefing on the Order to Show Cause and the change of venue motion (including more than 110 pages of briefs filed by Mr. Black), and an extensive oral argument, I ultimately issued a report on February 14, 2023 recommending that the

2

matter be remanded and that sanctions be awarded against Mr. Black. Dkt. #30. Having reviewed extensive orders from the Colorado state conservatorship matter and numerous other related cases filed by Mr. Black and his wife around the country, I concluded that the removal was done in bad faith, in part to try to avoid answering in Colorado state court for the consequences of having committed civil theft against his sister. I therefore recommended that Mr. Black be ordered to pay Joanne's attorney fees in opposing the removal and motion to transfer. Dkt. #30 at 41.

Mr. Black objected to the recommendation with a 72-page submission. Dkt. #35. Ms. Joanne Black filed her own extensive response to the Mr. Black's objection. Dkt. #36.

On April 5, 2023, Judge Domenico overruled Mr. Black's objections and adopted my recommendation, both on the issue of remand and on the issue of sanctions. Dkt. #39. The matter was ordered remanded to state court for lack of subject matter jurisdiction. Dkt. #39 at 8. On the issue of sanctions, Judge Domenico found that Mr. Black has a strategy of filing "discrete motions and actions in different courts around the country, effectively to see what he can get away with." Dkt. #39 at 9. He found Mr. Black's conduct in these various courts seeking to collaterally challenge the proceedings in the Colorado probate court as "a more insidious form of vexatious, multiplicitous litigation than the more mundane re-peat filings in a single court that are the usual subject of similar sanctions." *Id.* at 10. In sum, Judge Domenico agreed "[t]his entire federal case has been the definition of vexatious and wasteful." *Id.*

Judge Domenico ordered counsel for Joanne Black to submit an affidavit detailing what she asserts is the reasonable attorney fees, expenses, and costs that

should be awarded for improper removal. *Id.* at 11. Mr. Black was then given ten days to submit any written challenge concerning the reasonableness of attorney fees, expenses and costs that the Court would award pursuant to Section 1447 (c). *Id.* 28 U.S.C. Section 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Mr. Black attempted to appeal Judge Domenico's decision remanding the case and awarding sanctions. The Tenth Circuit dismissed the appeal on the ground that it lacked jurisdiction because: (1) a district court order remanding a case to state court for lack of subject matter jurisdiction is generally not an appealable order, and (2) the district court had not yet fixed the amount of monetary sanctions against Mr. Black. Dkt. #51 at 2 (Tenth Circuit Order of July 19, 2023 in Case No. 23-1155).

**Joanne Black's Fee Request**

Consistent with Judge Domenico's Order, on April 15, 2023, Ms. Lisa DiPonio, counsel for Joanne Black, filed her Verified Affidavit of Attorney's Fees and Costs. Dkt. #41-1. Ms. DiPonio represents that time "would exceed $5,000 for hours spent in participating in this matter on behalf of Joanne." *Id.* at ¶ 5. Ms. DiPonio also expended $31.60 in costs in defending against the improper removal. Dkt. #42-2.

I find that Ms. DiPonio's estimate of more than $5,000 in attorney time is reasonable given the amount of briefing filed by Mr. Black before Judge Domenico and me (including Mr. Black's response to the Order to Show cause and the motion to transfer venue) and in connection with his attempted appeal, the scope of Ms. DiPonio's responses, and the necessary preparation for the oral argument on the Order to Show

4

134

Cause and the transfer motion. At a reasonable estimate of $250 per hour for her time, Ms. DiPonio would have incurred $5,000 in fees in just three days (approximately 20 hours) of work on this removal matter. Reading page after page of the numerous briefs filed by Mr. Black and writing coherent responses certainly would have taken that amount of time, at a minimum.

For example, Mr. Black's response to my Order to Show Cause (Dkt. #11) was 29 pages long. Mr. Black's motion to transfer venue (Dkt. #7) was 42 pages long. Mr. Black also filed an 11-page "supplemental response" to the Order to Show Cause emphasizing that Ms. Joanne Black had allegedly waived any procedural defects in the removal by not objecting to the removal petition within 30 days. *See* Dkt. #14.

Ms. DiPonio's combined response to Mr. Black's venue transfer motion and response to the Order to Show Cause was 27 pages. *See* Dkt. #19.

Mr. Black also filed a 36-page reply addressing the Order to Show Cause and in further support of his motion to transfer venue. Dkt. #24.

Then, after I had issued my report and recommendation, Mr. Black filed a 71-page objection (including the appendix). Dkt. #35. Ms. DiPonio's response to Mr. Black's objection (Dkt. #36) was similarly lengthy, coming in at 76 pages. On April 3, 2023, Mr. Black filed two additional motions, a Motion for Temporary Restraining Order to stop the Denver Probate Court from conducting any further proceedings, which was 42 pages (Dkt. #37), and a Motion to Vacate Orders of the Denver Probate Court with respect orders issued after this matter was remove, which was 38 pages. Dkt. #38.

Mr. Black was given 10 days after the filing of Ms. DiPonio's affidavit "to submit any written challenge concerning the reasonableness of attorney fees, expenses, and

5

135

costs that the Court will award pursuant to Section 1447(c)." Dkt. #39 at 11. Mr. Black

submitted nothing challenging the estimate of $5,000 in fees. Therefore the Court

deems the $5,000 figure of the reasonable fees to have been conceded by Mr. Black.

Ms. DiPonio has said that she does not want the $5,000 in fees to be awarded to

her. She asks instead that Mr. Black be ordered to make a donation of the $5,000 to a

charity of his choice in the name of his deceased son:

> I have a family of my own and certainly could use the award of attorney's
> fees which would exceed $5,000.00 for hours spent in participating in this
> matter on behalf of Joanne. However, rather than seeking those fees, I
> would prefer Mr. Black utilize that money by making a donation to the charity
> of his choice in the name of his deceased son. I would expect Mr. Black
> would appeal any efforts I sought to collect on such fees; and, that would
> just continue the scorched earth litigation he continues to perpetuate in
> Colorado and elsewhere. In making such an unconventional request, it is
> my hope Mr. Black will realize the importance of family, including his sister
> Joanne, rather than continue his ongoing litigation which benefits none of
> the Black family.

Dkt. #41-1 at ¶ 5.

Although Ms. DiPonio's is an altruistic request, the Court finds no authority that

would permit the imposition of a charitable donation sanction, such as the one proposed

by Ms. DiPonio. The law contemplates sanction awards that require payment of

reasonable attorney fees to the opposing side. In this instance, Ms. DiPonio appears

reluctant to accept such an award, in part because of Mr. Black's abusive litigation

tactics and the likelihood that such an award will only trigger more appeals and more of

such tactics. But the response to the implicit threat of more abusive litigation tactics in

the future should not be submission to the threat.

Moreover, the award of sanctions in this case is not intended solely for the

purpose of compensating Ms. DiPonio or her client for time and money spent fighting

against a frivolous and vexatious attempt to interfere with the Denver Probate Court proceedings. Sanctions can have different objectives. They can be viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation, or as a form of punishment imposed on those who violate the rules. The imposition of sanctions is, in part, meant to deter attorneys from violating the rules. Sanctions should also be educational and rehabilitative in character.

Sanctions are also a means by which the Court can defend itself, the institution that administers justice, from abusive or destructive litigation tactics. Ordering Mr. Black to make a payment to a charity would, in certain respects, be a capitulation to the abusive tactics that he has demonstrated. The Court will not reward Mr. Black by allowing him to decide what entity will benefit from his litigation abuse.

Therefore, within 10 days from the date of this order, Mr. Bernard Black is hereby **ORDERED** to pay to Counsel Lisa DiPonio the sum of $5,031.60 for reasonable attorney fees and expenses incurred in defending this inappropriately removed matter.

Dated: August 9, 2023
     Denver, Colorado

_____
N. Reid Neureiter
United States Magistrate Judge

7

**Attachment 4. District Judge Domenico Decision on Fees (November 8, 2023)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Civil Action No. 1:22-cv-03098-DDD-NRN

JOANNE BLACK,

      Petitioner,

v.

BERNARD S. BLACK,

      Respondent.

---

**ORDER OVERRULING OBJECTIONS AND DENYING MOTION TO STAY**

---

Before the Court are Respondent Bernard Black's "Motion to Stay Pending Appeal," Doc. 53, and "Objections to Magistrate Judge's Award of Fees and Other Sanctions," Doc. 55. The motion is denied and the objections are overruled for the reasons stated below.

### BACKGROUND

The background of this matter is laid out in detail in Judge Neureiter's prior recommendation and the court's order adopting that recommendation, so it need not be repeated in full here. Docs. 30, 39.

The procedural history relevant to the two pending motions is as follows. Mr. Black filed a notice of removal, purporting to remove not a case, but a motion filed by Joanne Black in the Denver probate case. Doc. 1-1. Judge Neureiter issued an order requiring Mr. Black to show cause why this case shouldn't be remanded for lack of subject-matter jurisdiction and procedural flaws in the removal and why he should not be sanctioned for filing a frivolous removal notice. Doc. 5. Mr. Black

- 1 -

responded first by filing a motion "to transfer venue to the Northern District of Illinois or the Eastern District of New York and/or dismiss the claims in the state court motion," Doc. 7, and then by filing a response to the order to show cause, Doc. 11, and a supplement to that response, Doc. 14. Judge Neureiter construed Mr. Black's response as, in part, non-consent to jurisdiction over the case by a magistrate judge, and the case was reassigned to me as the presiding judge. Docs. 15, 16. Judge Neureiter held a hearing and heard argument on his show-cause order, and ultimately issued the first recommendation at issue here. Mr. Black objected to Judge Neureiter's recommendation. Doc. 35. He also filed a motion for a temporary restraining order, Doc. 37, and a motion to vacate orders issued by the probate court, Doc. 38.

In an April 4, 2023 order, the court accepted and adopted Judge Neureiter's report and recommendation, denied as moot various of Mr. Black's motions, and remanded the case to Denver County Probate Court. Doc. 39 at 11. In relevant part, the court held that it lacked subject-matter jurisdiction over this case for a number of reasons, including because Mr. Black purported to remove a motion rather than a civil action, that matter fell within the probate exception to federal jurisdiction, and that the jurisdictional flaws with this case were properly raised *sua sponte*. Doc. 39 at 5-8. The court also upheld Judge Neureiter's finding that sanctions were appropriate here. *Id.* at 9-11.

Mr. Black then filed an appeal of this court's order. Docs. 42-45. On May 30, 2023, the Tenth Circuit ordered Mr. Black to show cause why it had jurisdiction over his appeal. Doc. 49. Mr. Black responded, but the Tenth Circuit dismissed the appeal and found that Mr. Black's appeal of the sanctions order was premature because the amount of fees to be assessed against Mr. Black had not been decided. Doc. 51. Thereafter, Judge Neureiter entered an order fixing the award of attorneys' fees in

- 2 -

the amount of $5,031.60. Doc. 52. Mr. Black then filed his pending motion to stay and objections ostensibly to Judge Neureiter's latest order, Doc. 52. Docs. 53, 55.

## STANDARD OF REVIEW

When reviewing a magistrate judge's recommended disposition of a pretrial matter dispositive of a party's claim or defense, a district judge must conduct a de novo review of those portions of the magistrate judge's recommendation to which a party has filed timely and specific written objections. Fed. R. Civ. P. 72(b)(2)-(3); 18 U.S.C. § 636(b)(1). To preserve an issue for de novo review, a party's objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). As to those portions of the recommendation to which no timely, specific objection has been made, the district judge may review the magistrate judge's factual and legal conclusions under any standard the district judge deems appropriate. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). Upon review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 18 U.S.C. § 636(b)(1).

When reviewing a magistrate judge's order that is not dispositive of a party's claim or defense, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual findings, which may not be set aside unless "on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been

- 3 -

committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Residences at Olde Town Square Assoc. v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072 (D. Colo. 2019) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The "contrary to law" standard applies to the magistrate judge's legal determinations and permits plenary review as to matters of law; the district judge may set aside a legal ruling if the magistrate judge applied the wrong legal standard or applied the appropriate legal standard incorrectly. *Olde Town Square*, 413 F. Supp. 3d at 1072 (citing 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3069 (2d ed.)).

While Mr. Black is apparently a licensed attorney in New York, he is proceeding here pro se, and I liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). I may not, however, assume the role of advocate on his behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*).

**DISCUSSION**

### I.  Motion to Stay

In Mr. Black's "Motion to Stay," he appears to argue that the court incorrectly held that it lacked subject-matter jurisdiction rather than removal jurisdiction. Mr. Black appears to seek a stay of Judge Neureiter's award of $5,031.60 in fees and, more importantly to Mr. Black, Judge Neureiter's referral of Mr. Black to the New York State Bar for potential discipline. Doc. 53 at 1.

Notably absent from Mr. Black's motion is any real discussion of the standard for staying an order pending appeal, including an order awarding fees. The relevant factors when considering a stay pending appeal are whether the applicant has made a strong showing that he is likely

to succeed, whether he'll suffer irreparable harm absent a stay, whether a stay will substantially injure the other parties in the proceeding, and where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The only factor that Mr. Black appears to address is his likelihood of success on appeal. But he merely re-hashes the same arguments he made in objection to Judge Neureiter's original order. The court finds these arguments unpersuasive for the same reasons stated in its order adopting the report and recommendation. *See* Doc. 39 at 5-11. And Mr. Black has made no other showing why a stay would be appropriate, including why the absence of a stay would impose irreparable harm on him. To the extent that Mr. Black seeks a stay of Judge Neureiter's referral of certain docket entries and other published case decisions in other jurisdictions relating to this matter, that ship appears to have sailed. For those reasons, the motion to stay is denied.

## II. Objections to Award of Sanctions

Mr. Black also objects to the award of sanctions, arguing that he had an objectively reasonable basis for removal. He says that his latest objections are directed toward both the "order from Magistrate Judge Neuriter [sic] awarding fees to Plaintiff, and the prior order by Judge Neuriter [sic] referring Respondent to the New York State Bar for having sought removal." Doc. 55 at 1.

As an initial matter, to the extent that Mr. Black is simply re-objecting to Judge Neureiter's original report and recommendation, Doc. 30, as he appears to be doing, that objection is untimely and improper. The court already overruled Mr. Black's *original* objections to that order this spring in its order adopting Judge Neureiter's recommendation. Doc. 39. In any event, Mr. Black's re-hashed arguments remain unpersuasive. The court disagrees with his views on subject matter jurisdiction for the

- 5 -

143

reasons set forth in its prior order and in Judge Neureiter's original rec-ommendation. Judge Neureiter, and I, moreover, relied not just on the frivolousness of Mr. Black's legal contentions but also his bad faith in removing and litigating this matter as a whole. *See Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1257-60 (10th Cir. 2015) (up-holding sanctions of *pro se* attorney-litigant due to bad-faith stalling of litigation); *see also Bordelais v.* Bordelais, 844 F. App'x 910, 912 (7th Cir. 2021) (circuit court finding sanctions were warranted in part for "wast[in]g this and other courts' time, and not just with this appeal" and citing to various other related appeals made by the sanctioned party).

As to Judge Neureiter's more recent order setting the amount of fees at $5,031.60, Mr. Black raises no complaints as to the amount of those fees or the accounting for those fees. Given this, the court overrules Mr. Black's objections made in Doc. 55.

## CONCLUSION

It is **ORDERED** that:

The Objections by Bernard Black, Issue Trust Trustee, to Magistrate Judge's Award of Fees and Other Sanctions, **Doc. 55**, are **OVERRULED**;

Respondent's Motion for Stay Pending Appeal, **Doc. 53**, is **DENIED**; and

Respondent Bernard Black is **ORDERED** to pay to Counsel Lisa DiPonio the sum of $5,031.60 for reasonable attorney fees and expenses

- 6 -

incurred within 10 days from the date of this order, to the extent those fees and expenses have not already been paid.

DATED: November 8, 2023                    BY THE COURT:

Daniel D. Domenico
United States District Judge