No. 23-1377

# In the United States Court of Appeals
# for the Tenth Circuit

JOANNE BLACK,

*Petitioner - Appellee,*

v.

BERNARD BLACK,

*Respondent - Appellant.*

_____

On Appeal from the United States District Court
for the District of Colorado
No. 1:22-CV-03098
Hon. Daniel Domenico

## REPLY BRIEF

Bernard Black, *Pro Se*
bernardsblack@gmail.com
2829 Sheridan Place
Evanston IL 60201
847-807-9599

*Attorney for Respondent - Appellant*
BERNARD BLACK

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES ...................................................... iii

GLOSSARY OF RELATED TERMS ........................................... v

REPLY BRIEF ........................................................................ 1

   PRELIMINARY STATEMENT ............................................. 1

      A.  What Is at Stake in This Appeal ............................... 1

      B.  Appellee Lacks Standing; Her Brief Should be Stricken .......... 3

      C.  Appellee Does Not Address the Merits of Appellant's Argument .......................................................... 3

      D.  DPC Statements Cannot Support Sanctions ........................... 4

      E.  Colorado Probate Courts Are Well-Known for Misconduct ...... 9

      F.  Amicus Briefs Filed in Related Cases Demonstrate that Denver Probate Court Cannot Be Trusted ...................... 9

      G.  Appellant Has Done Nothing Wrong; DPC's Claims Are False ........................................................ 10

   I.  Appellee Lacks Standing ............................................. 12

   II.  Limited Scope of this Appeal ...................................... 13

   III.  Standard of Review ................................................. 13

   IV.  The Removal Petition Cannot Support Punitive Sanctions Because it was Not "Entirely without Color" ........... 14

   V.  Due Process and Heightened Requirements for Punitive Sanctions ................................................. 19

   VI.  The District Court Misunderstood Other Court Decisions ........ 20

   VII.  Sanctions Cannot Be Based on the Court's Reading of Other Cases ........................................................ 21

      A.  Black Family Successes ......................................... 22

      B.  Appellee and Dain are the Ones Multiplying Litigation ........ 24

   VIII.  Appellant's Original Conduct ................................... 26

IX.   DPC Routinely Ignores Decisions by Other Tribunals ..............28

X.   Conclusion ......................................................................29

CERTIFICATE OF COMPLIANCE .......................................................31

CERTIFICATE OF SERVICE ................................................................32

# Table of Authorities

Page

**Cases:**

*Black as Tr. of Joanne Black 2013 Trust Agreement v. Goodwin*
2020 WL 4053176 (N.D. Ill.) ............................................................ 21

*Black v. Black II*
482 P.3d 460 (2020) ........................................... 7, 24, 25, 29

*Black v. Black*
422 P.3d 592 (Colo.App. 2018) ................................... 23, 24

*Black v. Dain*
Case 1:16-cv-01238
(E.D.N.Y. March 30, 2023) ........................................... 7

*Butler v. Biocore Med. Techs., Inc.*
348 F.2d 1163 (10th Cir. 2003) ..................................... 12

*Chambers v. NASCO*
501 U.S. 32 (1991) .................................................. 19, 21

*Cornwall v. Robinson*
654 F.2d 685 (10th Cir. 1981) ..................................... 16, 17

*Dal v. Black*
2020 Ill. App. 191348 (2020) ........................................ 7, 23

*F.D.I.C. v. Schuchmann*
319 F.3d 1247 (10th Cir. 2003) ................................... 16, 17

*F.T.C. v. Freecom Commc'ns, Inc.*
401 F.3d 1192 (10th Cir. 2005) ..................................... 16

*F.T.C. v. Kuykendall*
466 F.3d 1149 (10th Cir. 2006) ..................................... 16

*Farmer v. Banco Popular of North Am.*
791 F.3d 1246 (10th Cir. 2015) ..................................... 20

*FDIC v. Calhoun*
34 F.3d 1291 (5th Cir. 1994) ....................................... 17

*G.J.B. Assocs., Inc. v. Singleton*
913 F.2d 824 (10th Cir. 1990) ..................................... 19

*Goodyear Tire & Rubber Corp. V. Haeger*
  581 U.S. 101 (2017)  ...................................................................... 19, 20

*In re Martin*
  400 F.3d 836 (10th Cir. 2005)  ............................................ 19

*JPMorgan Chase Bank, N.A. v. Black*
  18-cv-03447
  2021 WL 4459482 (N.D.Ill.)  ............................................ 23

*Kornfeld v. Kornfeld*
  393 F.App'x 575 (10th Cir. 2010)  ..................................... 16

*Litvak v. Black*
  147 N.E.3d 835 (Ill.App. 2019)  ..................................... 7, 20

*San Juan Prods., Inc, v. San Juan Pools of Kansas, Inc*
  849 F.2d 468 (10th Cir. 1988)  ............................................ 15

*Schlaifer Nance & Co. v. Estate of Warhol*
  194 F.3d 323 (2d Cir. 1999)  ............................................ 16

*Shimman v; Int'l Union of Operating Eng'rs*
  744 F.2d 1226 (6th Cir. 1984)  ............................................ 21

*Stark-Romero v. Nat'l R.R. Passenger Co.*
  763 F.Supp.2d 1231 (D.N.M. 2011)  ..................................... 17

*Towerridge, Inc. v. T.A.O., Inc.*
  111 F.3d 758 (10th Cir. 1997)  ............................................ 21

**Statutes:**

28 U.S.C. § 1446  ................................................................ 29

28 U.S.C. § 1447  ............................................................ 5, 15

28 U.S.C. § 1927  ................................................................ 15

iv

## Glossary of Related Terms

| Abbreviation | Definition |
|---|---|
| 2013 Trust | Joanne Black 2013 Trust |
| Bernard | Bernard Black, in contexts where it is not important to specify the capacity in which he is acting. |
| Conservatorship | Conservatorship over Joanne Black, DPC Case 12 PR 1272 |
| Dain | Anthony Dain, co-trustee of the SNT and former co-trustee of the Issue Trust (resigned in 2015) |
| DoJ | U.S. Department of Justice |
| DPC | The Denver Probate Court |
| DPC Pleading | Pleading filed with DPC, styled as a motion but in fact bringing new claims against new parties, which requires a complaint under Colorado Rules of Civil Procedure |

| EDNY Decision | *Black v. Dain*, Case 1:16-cv-01238 (E.D.N.Y.), Memorandum and Order (March 30, 2023) ("**EDNY-Decision**"), at 30-35, *recons.denied* (July 31, 2023) |
|---|---|
| *Interpleader Case* | *JPMorgan Chase Bank, N.A. v. Black*, 18-cv-03447, 2021 WL 4459482; see also App.Vol.1 at 200) |
| Issue Trust | Irrevocable Trust for the Benefit of the Issue of Renata Black |
| IT Trustee Black | Appellant, in his legal capacity as Issue Trust Trustee |
| Joanne | Joanne Black, Bernard's sister and the person subject to the Conservatorship |
| Non-subject-matter objections | Objections to removal, on any basis other than federal subject-matter jurisdiction to hear the removed claims, once removed. |
| *NY Guardianship Case* | *In re Application of Bernard Black for Appointment of a Guardian for Joanne Black*, Index 80253/2014 (N.Y. Sup.Court, Richmond County) (June 7, 2016) |

| Renata | Renata Black, mother of Bernard and Joanne |
|---|---|
| SNT | Supplemental Needs Trust for the Benefit of Joanne Black |
| SNT Trustee Black | Bernard, in his legal capacity as SNT Trustee |
| UAGPPJA | Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act |

<u>**Reply Brief**</u>

## PRELIMINARY STATEMENT

### A.  What Is at Stake in This Appeal

At stake in this appeal is whether the Tenth Circuit will have a functioning removal regime. Federal removal lets out-of-state litigants escape biased or corrupt state-court judges. Removal law facilitates escape by making removal a matter of right; subject only to jurisdictional requirements. The litigant does not need to have a good case or be a good person to escape. The federal court cannot peek into case merits to decide on removal. The federal court cannot rely on case-specific facts at all, unless those facts affect federal jurisdiction. It especially cannot rely on what the state-court judge, from whom the litigant seeks escape, thinks about the litigant.

The state-court judge cannot be assumed to be neutral. By seeking removal, the litigant has expressed concern that the state-court judge is not trustworthy. The federal court must allow for that possibility and place no weight on state-court opinions.

Further, if federal courts impose sanctions on litigants for good-faith attempts to flee state-court bias, this will undermine removal, violate litigants' removal rights, and encourage state-court misconduct.

Colorado probate courts, and the Denver Probate Court (DPC) in particular, have a nationwide reputation for misconduct. As discussed in an amicus brief in the Appendix (Supp.App.3 at 616), the Department of Justice (**DoJ**) is suing the state of Colorado for systemic guardianship abuse instigated and condoned by Colorado probate courts. *U.S. v. Colorado*, Case 1:23-cv-02538 (D.Colo.).The state of Colorado has commissioned three state audits of its probate courts and guardianship system (Supp.App.1 at 4, 151, Supp.App.2 at 335); each found major problems. The Chief Justice of the Colorado Supreme Court promised to fix the problems; nothing was done (Supp.App.1 at 125, 127). Colorado media are awash in investigative reports of DPC (the court from which removal was sought), which document pervasive misconduct (Supp.App.1 at 44, 125, 127; Supp.App.2 at 325, 401; Supp.App.3 at 537, 551, 558, 560).

Given this context, it is improper for this Court to sanction Appellant for trying to escape DPC. If the DoJ and three Colorado state audits do not think the Colorado probate courts act properly, it cannot be sanctionable misconduct for Appellant to try to escape.

The victims of Colorado's dysfunctional probate-court system need a way out. In some circumstances, like the current case, removal could help. This Court should help litigants vindicate their rights before a

trustworthy tribunal, as removal law is intended to do. If nothing else, the array of problems with the DPC and other Colorado probate courts establish Appellan's good faith in seeking removal.

## B.  Appellee Lacks Standing; Her Brief Should be Stricken

Appellant moves to strike Appellee's Response Brief, for lack of standing. For legal fees, Appellee has been paid, cannot be paid again, and Appellant does not seek return of the payment. Appellee therefore lacks a sufficient interest to justify standing. She also lacks standing for the bar referral sanction, as she has no stake in this sanction.

Appellant discussed Appellee's standing in his opening brief (App.Op.Br.), at 58–59; Appellee ignores this issue.

## C.  Appellee Does Not Address the Merits of Appellant's Argument

Appellee's Response Brief (Resp.Br.) does not defend, *at all*, the District Court's remand decision. Yet if Appellant even had a colorable basis for removal, sanctions cannot stand.

Assessing the basis for removal involves removal law, probate-exception law, and clear factual error. Legal issues are reviewed de novo. Relying on clearly erroneous facts is abuse of discretion. The District Court remanded under the probate exception, asserting that the Conservatorship "regards the administration of a decedent's estate."

District Court Opinion (Dist.Ct.Op.) 6. There was, however, no decedent (App.Op.Br. 4). The District Court cannot remand based on invented facts.

App.Op.Br. 21–27 discussed why the probate exception was the only basis for remand. The District Court's reliance on "removal jurisdiction" was legal error (App.Op.Br. 23–25). Appellee does not reply; conceding the point. The Magistrate's remand on procedural grounds was incorrect, as the District Court recognized (Dist.Ct.Op. **7**).

The only sanction appealed from is bar referral. Yet the Response Brief devotes most of its effort to defending the fee award. This discussion is irrelevant.

For bar referral, Appellant discussed why the District Court cannot rely on conduct in other cases without notice to Appellant and opportunity to respond, andwhy punitive sanctions require heightened protections (App.Op.Br. 41–43). Appellee does not respond.

### D.   DPC Statements Cannot Support Sanctions

Fundamentally, the Magistrate and District Court decided Appellant should be sanctioned because he is a bad person, and decided Appellant is a bad person because DPC said so. Yet nothing DPC said was relevant for the technical, jurisdictional decision on removal.

Courts often accept opinions of other courts without questioning. But for removal, such deference cannot happen: the point of removal is to

allow an out-of-state litigant to escape a biased or corrupt state-court judge. Removal is sought when the litigant has reasons to distrust the state court. The federal court must allow the possibility that the removing litigant has good reasons – otherwise, the removal regime has no purpose. When the federal judge observes a firestorm of personal attacks against the litigant's entire family, issued **by the very state-court judge whom the litigant seeks to escape**, the federal judge should ask why the state-court judge is acting this way.

It is especially critical for the federal court not to accept state-court statements when the state court's behavior is extraordinary, as is this case. Here, the state-court judge instructed her preferred litigants to bring legal actions against Appellant in other courts. When those actions failed, this state-court judge instructed her preferred litigants to bring those same actions **to her own court (with pre-determined outcome)**. When Appellant removed to federal court, the state-court judge refused to stand down while removal is in process, issuing orders without subject-matter jurisdiction, directly violating federal law, 28 U.S.C. § 1447(d).

When the federal court observes state-court eagerness to keep the case, including violating federal law to do so, the least the federal court should do is not to accept state-judge outbursts as reliable fact-finding.

This Court might get an impression that other courts independently found wrongdoing by Bernard. Completely false Other courts, like the

Magistrate and District Court here, did no independent fact-finding into Bernard's conduct! They simply repeated DPC's statements, taking them as truth without looking into evidence. But the whole house of cards is entirely based on DPC. When other courts have held factual hearings, they have repeatedly held for Appellant.

App.Op.Br. 59–64 discussed DPC's bias against Appellant and his family; this Reply expands that discussion. Here, Appellant offers two egregious examples of DPC conduct.

The first example shows how DPC misconduct spreads because other courts copy its statements without inquiring further. To defend the Black family trusts (the SNT and the Issue Trust) against defunding, the majority trustees borrowed money from Appellant's wife, Katherine Litvak, and Olga Dal. DPC declared that these loans shocked its conscience. DPC issued this statement without evidence, notice, a hearing, jurisdiction, entirely as dicta (Supp.App.2 at 416). The lenders were not parties before DPC, were not informed of the DPC hearing (called for unrelated reasons), were not present, had no chance to respond, etc. DPC simply lambasted individuals not before her, without a shred of legal process. What DPC wrote was false, and the lenders can prove it. Dal did so in Illinois, where her loans were litigated. Had DPC said those things about parties, the parties could have appealed. The lenders had no recourse.

DPC's falsehoods were repeated in other courts. DPC styled its false statements as though they were factual findings A year later, an Illinois appellate court treated this DPC dicta as a factual finding, and quoted it in *Litvak v. Black*, 147 N.E.3d 835, 839 (Ill.App. 2019), and issued its own dicta entirely on this basis. The Illinois appellate court did not make its own factual findings; nor could it; it is an appellate court, not trial. Then, the Colorado appellate court cited the Illinois appellate court's statement, to support the view that DPC did not make up facts about lenders but rather relied on Illinois. Yet the Illinois opinion was issued in 2019 and quoted DPC's **2018** decision.[1] The Magistrate cited the 2019 Illinois decision. The EDNY in 2023 cited both Illinois and the Magistrate.[2] **Five courts, repeating and embellishing DPC dicta about facts that DPC never found!**

When Dal's loans were litigated, they were upheld; no impropriety was found.[3] Litvak's loans have not yet been litigated, but are virtually identical to Dal's, except for amounts; they were confirmed as valid by a forensic accountant (App.Vol.1 at 172). For the Litvak loans, the Illinois appellate court *did not find fraud*; it remanded for a merits hearing. *Id.* at 842.

---

[1]    *Black v. Black II*, 482 P.3d 460, 480 (2020)

[2]    *Black v. Dain*, Case 1:16-cv-01238, (E.D.N.Y. March 30, 2023), App.Vol..4 at 854.

[3]    *Dal v. Black*, 2020 Ill. App. 191348.

DPC's evidence-free, notice-free rhetoric was massively improper. It was inappropriate for the Magistrate to repeat this rhetoric, both because none of these DPC "facts" were relevant to the removal decision, which turns on technical jurisdiction rules and because the statements came from the court which Appellant sought to escape via removal.

Second example of DPC's improper behavior: after remand, Appellant advised DPC that the NDIL, which oversees a federal interpleader case, had frozen the trust assets and required anyone seeking to move them to obtain advance NDIL permission (App.Vol.1 at 200). Appellee violated that court order, in the action that Appellant tried to remove. DPC's conscience was "shocked" again, this time by Appellant's suggestion that it respect the NDIL order (App.Vol.4 at 968):

> The Court finds this attempt to weaponize [the Interpleader] Court's Order and pit this Court against the Illinois Court is repugnant and shocking to the conscience of the Court.

DPC thus attacked Appellant for informing DPC that the action was brought illegally.

State-court conduct like this is why removal exists.

### E.   Colorado Probate Courts Are Well-Known for Misconduct

The Colorado guardianship system, run by its probate courts (DPC being the main one) are currently under federal investigation for abuse of wards, theft of funds, and other misconduct. After investigation, DoJ found significant evidence of misconduct, and filed a federal lawsuit in the District Court of Colorado. *U.S. v. Colorado.* DoJ found that Colorado's probate courts maintain a system where court-appointed guardians and nursing home providers collude to extract payments from Medicaid for needless services for their wards. Court-appointed guardians force wards to stay in nursing homes, who would have been better off at home.

### F.   Amicus Briefs Filed in Related Cases Demonstrate that Denver Probate Court Cannot Be Trusted

DPC's misconduct in this family saga has generated interest from several important nationwide organizations that specialize in the issues of guardianship abuse. These organizations wrote amicus briefs supporting the Black family in the Colorado Court of Appeals and the Second Circuit. The Second Circuit briefs, in the Appendix, detail a broad range of other Colorado probate court abuses (Supp.App.3 at 616**,** 655). DPC is especially notorious.

In Colorado, Appellant is challenging DPC's subject-matter jurisdiction – the patently unlawful continuing conservatorship over Joanne Black (App.Op.Br. 63–64; see discussion below).

In the Second Circuit, the Black family successfully sued Anthony Dain, a minority SNT and Issue Trust trustee, for seeking to defund his own trusts, in breach of his duty of loyalty. Dain and Appellee are jointly seeking defunding. The amici submitted briefs supporting the Blacks' position that a trustee who seeks to defund his own trusts must pay damages for breach, even if he finds a court (DPC) willing to rule his way.

### G.   Appellant Has Done Nothing Wrong; DPC's Claims Are False

Appellee has been trying for a decade to defund both Black family trusts. The claim before DPC in 2015 was that the SNT should have received all assets from a disclaimer, not two-thirds; the Issue Trust received the remaining third. DPC agreed, called this the transfer of one-third of assets to the Issue Trust "theft", but did not defund the trusts, and instead awarded damages against Appellant (Supp.App.2 at 310). A complete response to the asserted harm was to move the contested assets from the Issue Trust to the SNT. Call this the "Transfer Remedy." Appellant proposed this remedy before DPC issued its judgment in 2015, and many times since, including to DPC after

remand (App.Op.Br. 50). Appellee refused. Her true goal is not more assets for the SNT, but instead removing all funds from both trusts. Only then can Appellee and an army of other counsel be paid for a decade of unnecessary litigation.

It is a strange form of "theft" when the supposed thief offers to place the assets where the victim's supposed defenders claim they belong, and the defenders refuse. It's even stranger when the supposed "thief" received no assets personally. All assets contributed to the Issue Trust are still there, available for transfer to the SNT. It's still stranger when the supposed defenders are seeking to remove trust assets to pay themselves.

Yet DPC supports defunding both trusts (App.Vol.4 at 963). DPC is also maintaining a Colorado conservatorship over Joanne Black, who has lived in N.Y. since 2013, and was found there in 2016, after multi-day hearing, not to need a conservator.[4] If the Conservatorship ends, litigation will too. Joanne can begin to enjoy SNT distributions. Continuing the Conservatorship over a competent ward violates the full-faith-and-credit clause, Colorado Supreme Court precedent, and a governing Colorado statute (App.Op.Br. at 63–64).

Meanwhile, a second federal court, EDNY, found that Dain breached his fiduciary duty by seeking to defund his own trusts (App.Vol.4 at 854). Dain ignored that ruling and continues to seek defunding. DPC

---

[4]    *NY Guardianship Case* (June 7, 2016) (sealed proceedings).

ignored the EDNY decision; it *rewarded* Dain for his efforts by removing the *other* trustees (App.Vol.4 at 973); no matter that removing trustees without notice exceeds its powers.

Appellant returns below to DPC's misconduct, Dain's breach of duty, his own efforts to settle, and his defense of the trusts against defunding. The District Court's rhetoric aims at the wrong target.

## I.  Appellee Lacks Standing

Appellant moves to strike Appellee's brief for lack of standing.

For the fee award, Appellant has paid it, in the form Appellee proposed (payment to charity). Appellant does not seek return of the payment. There is therefore no case or controversy for the fee payment. The fee sanction cannot form a basis for Appellee's standing to submit her Response Brief.

Appellee also has no standing for the bar referral sanction, as she has no stake in whether that sanction is affirmed or not. *Butler v. Biocore Med. Techs., Inc.*, 348 F.2d 1163, 1169 (10th Cir. 2003).

Appellee's December 2023 letter (not a motion) to the District Court, asking whether this payment satisfies the District Court's decision (App.Vol.4 at 1033), is not at issue in this appeal, because: (i) it was sent after this appeal was filed; and (ii) the District Court's response

12

was without subject matter jurisdiction (App.Vol.4 at 1041, 1046). An actual motion to recover additional fees would be improper, because Appellee cannot recover double damages.

## II.  Limited Scope of this Appeal

Appellant has paid the fee award, in the form suggested by Appellee (payment to charity), and does not seek its return. This appeal is limited to the bar referral sanction.

## III.  Standard of Review

The legal basis for remand and for sanctions is reviewed de novo. The factual basis is reviewed under an abuse of discretion standard, but reliance on "clearly erroneous" factual findings are abuse of discretion. This includes factual assertions without record support.

Prior case law distinguishes between compensatory and punitive sanctions. The bar referral is clearly punitive. Thus, fee cases are relevant only insofar as they involve punitive fee awards, although even the "objectively reasonable" standard for a compensatory award is not met (App.Op.Br. 37–39).

The District Court's remand on the grounds that the conservatorship over Joanne Black involved "administration of a decedent's estate," Dist.Ct.Op. 6, is clear error. The conservatorship involved no decedent, nor a decedent's estate; not undisputed. The District Court's implicit

finding that there was a decedent is implausible: The Conservatorship involves a living ward, Joanne. The remand decision is nonreviewable, but the sanctions decision rests on the same erroneous factual belief.

Appellant submits that the District Court's (mis)reading of other cases should receive no deference. Deference is appropriate for facts that the District Court, after holding a hearing and receiving evidence, is in a better position to assess than the appellate court. There was no hearing or testimony about those other cases. Appellant received no notice that the District Court would rely on them. Reliance should be improper on those grounds alone. Moreover, Appellant has found no case in which a court based sanctions on its reading of other decisions; nor does the Response Brief cite any. If any reliance is allowed, deference should not be granted. This Court is in a better position than the District Court to assess those cases, having received Appellant's discussion of them (App.Op.Br. 48–55).

## IV. The Removal Petition Cannot Support Punitive Sanctions Because it was Not "Entirely without Color"

Appellant believes that his removal petition was legally correct and remand was improper. The petition is clearly correct for the probate exception, because the Conservatorship does not involve a decedent (App.Op.Br. 28–31). All non-subject-matter objections were waived,

cannot support remand, and thus cannot support sanctions (App.Op.Br. 27–28.) Appellee does not dispute either of these assertions.

It would be bizarre for waived objections to justify sanctions but not remand. Moreover, Appellant had a sound basis for seeking removal (App.Op.Br. 32–39); Appellee does not respond. The standard for awarding fees is whether an "objectively reasonable" basis for removal exists; F.R.C.P. 11 is similar; the Tenth Circuit applies this standard to sanctions under inherent authority (App.Op.Br. 39–40).

The District Court relied on inherent judicial authority to sanction misbehaving litigants.[5] The scope for using inherent authority to support punitive sanctions is even narrower than the "objectively reasonable" test. *San Juan Prods., Inc, v. San Juan Pools of Kansas, Inc*, 849 F.2d 468, 486 (10th Cir. 1988), requires that a claim be *both* entirely meritless and invoked in bad faith:

> To [support a punitive award of attorney fees] the claim must be entirely without color and asserted wantonly, "for purposes of harassment of delay, or for other improper reasons." *Sterling Energy, Ltd. v. Friendly Nat. Bank,* 744 F.2d 1433, 1435 (10th Cir.1984) (quoting *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977)). "Neither meritlessness alone nor improper motives will suffice." *Colombrito v. Kelly,* 764 F.2d 122, 133 (2d Cir.1985). The standard for finding bad faith

---

[5]    The Magistrate also invoked 28 U.S.C. § 1447(c) and 28 U.S.C. § 1927 to justify the fees award. The District Court relied only on inherent authority. Dist.Ct.Op. at 9-10. Only inherent authority can support the bar referral sanction. A fee-shifting statute cannot.

must be narrowly drawn to avoid deterring litigants with colorable though untested claims for seeking a federal forum. *Sterling,* 744 F.2d at 1435.... Moreover, "the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.'" *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir. 1981).

The 10th Circuit has reversed lower court sanctions, for not satisfying the "entirely without color" standard. E.g., *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1201 (10th Cir. 2005):

> [A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis. (Quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999)).

See also *F.D.I.C. v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003):

> This court has repeatedly recognized that the exception [allowing a punitive fee award] is a narrow one and may be resorted to only in exceptional cases. *E.g., Autorama Corp. v. Stewart,* 802 F.2d 1284, 1287 (10th Cir.1986). "Hence, it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that challenged actions are taken entirely without color and are pursued for reasons of harassment or delay." *Id.* at 1288.

As *Schuchmann* and other cases stress, there must be "clear evidence" supporting both complete lack of a colorable argument and bad faith pursuit of a legal claim. See also, e.g., *Kornfeld v. Kornfeld*, 393 F.App'x 575, 479 (10th Cir. 2010); *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). Contestable evidence on whether the argument is

colorable is insufficient. A finding that a claim was "frivolous" is insufficient, if not accompanied by a finding of intent to file an improper claim. *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir. 1981).

So is a finding that a claim was "meritless," without explaining why. *F.D.I.C. v. Schuchmann*, 319 F.3d at 1251. *Schuchmann* (quoting *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)):

> We have long held that a district court, in applying sanctions, may have to make a detailed explanation for its legal reasons.... [We should not have] to guess what unwarranted factual and legal errors were the basis of the sanctions.

These cases involve fee awards, but the logic is the same for the bar referral sanction at issue here

The sanctions in this case have ample color and were made in good faith. For legal basis:

i. diversity jurisdiction exists, not contested;

ii. technical removal requirements were met, not contested;

iii. non-applicability of the probate exception is not only colorable correct; there is no decedent (App.Op.Br. 28–32);

iv. For waived procedural concerns, if relevant, the state-court filing constituting a separate "civil action" was supported by *Stark-Romero v.*

*Nat'l R.R. Passenger Co.*, 763 F.Supp.2d 1231 (D.N.M. 2011), which the District Court misread (App.Op.Br. 34–36). There was no adverse 10th Circuit precedent.

For good faith, Appellant sought a fair federal hearing, not obtainable from DPC. Removal did not multiply proceedings, it only replaced one proceeding with another.

Appellant submitted careful briefs below. Those briefs provide evidence of good faith. As discussed above, before imposing sanctions based on a party's legal arguments, the District Court must explain why those arguments are "entirely without color," and explain why. So too for bad faith. See *Sterling Energy,* 744 F.2d at 1437 (reversing fee award because District Court did not explain basis for finding bad faith). Appellant informed the court that "there was no will, no decedent, and no decedent's estate." (Supp.App.3 at 606) The District Court ignored this explanation. The District Court also adopted the Magistrate's misreading of *Stark-Romero*, despite Appellant explaining the Magistrate's error (App.Vol.3 at 722–723)

Beyond this, the District Court's remand grounds--that the Conservatorship involved administering a decedent's estate—were raised sua sponte. Appellant submits that if the basis for remand is so obscure that no one had raised them, that should preclude sanctions, even had the basis been correct. The probate-exception argument that

Appellant made, responding to the Magistrate, apparently had sufficient color that the District Court accepted it and ruled on different grounds.

The District Court never discussed or applied the 10th Circuit cases above, on use of inherent authority to impose punitive sanctions.[6]

## V. Due Process and Heightened Requirements for Punitive Sanctions

Tenth Circuit precedent confirms that notice is required for punitive sanctions. As explained in *In re Martin*, 400 F.3d 836, 840 (10th Cir. 2005):

> In *Mattox v. Disciplinary Panel of U.S. Dist. Court for Dist. of Colorado,* 758 F.2d 1362, 1369 (10th Cir.1985), this court reversed ..., concluding that the district court had violated the attorney's right to procedural due process by failing to "give notice and the reasons for its view before its decision [was] final, and [by failing to] give the [attorney] an opportunity to respond."

*G.J.B. Assocs., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990), explains that notice includes "an opportunity to fully brief the issue." For the bar referral, a severe sanction that threatens his professional reputation, Appellant believes a hearing should be required.

---

[6]    The District Court cited only *Chambers v. NASCO*, 501 U.S. 32, which does not discuss standards for sanctions, and *Goodyear Tire & Rubber Corp. V. Haeger*, 581 U.S. 101 (2017), which *rejected* a punitive award, because heightened procedural protections were not provided.

Here, the Magistrate and District Court relied on statements by other courts without notice to Appellant that they would do so (App.Op.Br. 43–44), and **misunderstood** those statements (App.Op.Br. 48–54). That risk underscores the need for specific notice.

Due process is especially important for a punitive sanction, such as the bar referral. *Goodyear Tire*, 581 U.S. at 108, requires "criminal-type protections" for punitive sanctions. The District Court did not provide even ordinary due process.[7]

## VI.  The District Court Misunderstood Other Court Decisions

Appellant argued that the District Court misunderstood the other cases it relied on, and cherrypicked the cases it relied on; ignoring cases where Appellant and his family were successful in other courts. Appellee does not dispute Appellant's reading of those cases.[8] Instead, Appellee cites another case, not relied on to support sanctions by the

---

[7]   *Goodyear Tire* was decided in 2017. Earlier cases upholding punitive sanctions without extra procedural protections, including *Farmer v. Banco Popular of North Am.*, 791 F.3d 1246 (10th Cir. 2015), may need to be reconsidered in light of the *Goodyear Tire* decision.

[8]   Resp.Br. at 10 &n.1 claims the District Court's reading was correct without engaging with Appellant's analysis. It repeats the District Court's misreading of *Litvak v. Black*, 147 N.E.3d 835, which was not a merits decision (see App.Op.Br. at 51-52). It blames Appellant for: (i) this litigation, initiated by Appellee's associates against Appellant's wife; (ii) Chase Bank's filing an interpleader action; and (iii) two appeals of DPC decisions in Colorado, the second largely successful (DPC's reversal of the disclaimer and actions against Samuel Black were vacated).

Magistrate or the District Court.[9] Sanctions, however, cannot be affirmed based on supposed conduct that the District Court did not rely on. Among other problems, Appellant had no notice that this case might form the basis for sanctions, nor opportunity to respond; nor did any court assess the claims substance**.**

## VII.   Sanctions Cannot Be Based on the Court's Reading of Other Cases

Even apart from lack of notice and opportunity to respond, Appellant argued that sanctions cannot be based on the District Court's reading of other cases (App.Op.Br. 47–48). Appellee responds that *Chambers v. NASCO*, 501 U.S. 32 permits a court to look beyond the specific conduct before it (Resp.Br. 7–8**)**. *Chambers,* however, assessed solely on conduct closely related to the case before the court. The Tenth Circuit has ruled out basing sanctions on non-litigation conduct. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). *Towerridge* rejects basing sanctions on misconduct that gave rise to the litigation but was not part of the litigation itself. It holds that the District Court exceeded its inherent authority by relying on "pre-litigation conduct," to justify sanctions. *Id.* at 768. *Cf. Shimman v; Int'l Union of Operating Eng'rs*,

---

[9]    The case, *Black as Tr. of Joanne Black 2013 Trust Agreement v. Goodwin*, 2020 WL 4053176 (N.D. Ill.), was dismissed without prejudice for lack of jurisdiction.

744 F.2d 1226, 1229–1231 (6th Cir. 1984) (rejecting bad faith for conduct outside the litigation). Here the external conduct was both pre-litigation and occurred in entirely separate cases.

Even if relying on other cases is permitted, and even if the District Court had read correctly those decisions (it misread them, Ap.Op.Br. 48-54), it cannot selectively cite some decisions, while ignoring others.

### A.   Black Family Successes

Outside DPC, the Black family has won multiple times:

1. The Blacks stopped an effort to install Dain's sister Wrigley as Joanne's guardian.[10]

2. In the *N.Y. Guardianship Case*, they obtained a restraining order against Dain and Wrigley, banning them from "harassing, intimidating, threatening, or otherwise interfering with the Black family."[11]

3. The Blacks defeated Dain's effort to defund the trusts in the *N.Y. Guardianship Case*.[12]

4. The Blacks stopped Dain's effort to defund the trusts in New York Surrogates Court.[13]

---

[10]   *NY Guardianship Case* (sealed proceedings)

[11]   *Id.* (Jan. 29, 2016).

[12]   *Id.* (June 7, 2016).

[13]   Petition for Turnover of Property, *Estate of Renata Black*, file 2012-1209 (Surrogate's Court, Westchester County, N.Y.) (Aug.10, 2016), Supp.App.2 at 333 (not acted on).

5. In 2016 Chase Bank filed interpleader in N.Y. for the Issue Trust. Appellant defended; the claim was dismissed.[14]

6. In 2018, Conservator Goodwin sought damages and dismissal of Bernard and Samuel Black in Illinois. Appellant moved to dismiss; Goodwin then dismissed her own complaint.[15]

7. The Blacks succeeded in the FINRA action, discussed below, in freezing the trusts and stopping Dain from spending trust assets on litigation (App.Vol.1 at 121).

8. Olga Dal defeated Dain's and Goodwin's challenge to loans she made to the trusts to finance legal defense against attacks on the trusts, both at trial and on appeal; the loans were found legitimate.[16]

9. The Blacks defeated an effort to challenge the interpleader court's jurisdiction.[17]

10. The Blacks had partial, successes in the Colorado Court of Appeals, which affirmed DPC not reversing the disclaimer in 2018;[18]

---

[14]   *JPMorgan Chase Bank v, Issue Trust*, Index 156343/2016 (N.Y. Supreme Ct., N.Y.Cy.) (dismissal order, May 4, 2017). Appellant opposed interpleader limited to the Issue Trust. Chase Bank subsequently filed interpleader for both trusts in Illinois; case discussed above.

[15]   *Goodwin v, Black*, Case 2018-CH-00563 (Chancery Ct., Cook Cy., Ill. (dismissal order, May 30, 2018), Supp.App.3 at 535.

[16]   *Dal v. Black*, 2020 Ill. App. 191348

[17]   *JPMorgan Chase Bank, N.A. v. Black*, 18-cv-03447, 2021 WL 4459482 (N.D.Ill.).

[18]   *Black v. Black*, 422 P.3d 592, 612–613 (Colo.App. 2018) *(Black v. Black I)*

ruled separately in 2018 that DPC acted without establishing jurisdiction over the SNT;[19] and ruled in 2020 that DPC acted without jurisdiction in reversing the Disclaimer, and without notice for Samuel Black.[20]

DPC is the only court that reliably rules against Appellant. Any fair assessment of Appellant's conduct must consider both wins and losses, and cannot be based on DPC (the court from whom removal was sought).

## B.   Appellee and Dain are the Ones Multiplying Litigation

It is Appellee and her collaborator Dain who are multiplying litigation. They have sought to defund the trusts *eight times*, before *five courts*, failing everywhere except DPC:

1. Dain sought defunding in N.Y. Supreme Court in 2015.[21] Failed.

2. Dain and collaborators tried at DPC in 2015. Failed.[22]

3. They appealed to the Colorado Court of Appeals. Failed.[23]

4. Again in N.Y. Supreme Court in 2016. Failed.[24]

---

[19]   *In re Joanne Black*, 16CA0625 (Colo.App.2018) (App.Vol.1 at 99) (vacating DPC orders; basis for SNT jurisdiction not established).

[20]   *Black v. Black II*, 482 P.3d at 480.

[21]   *NY Guardianship Case* (transcript, Feb.19, 2015) (sealed).

[22]   DPC Order (Sept. 28, 2015), Supp.App.2 at 310.

[23]   *Black v. Black I*, 422 P.3d at 612–613.

[24]   *NY Guardianship Case* (Order, June 7, 2016) (sealed)/

5. Again in N.Y. Surrogates Court in 2016. Failed.[25]

6. In DPC again in 2018; vacated on appeal.[26]

7. In 2021, in the *Interpleader Case*. Failed.[27]

8. Now back to DPC with *the same demand* to defund the trusts.

The current effort is legally hopeless. DPC's 2023 decision (App.Vol.4 at 963) reversing prior decisions authorizing the Disclaimer, and declining to reverse those decisions, can survive appeal only if:

i. Disclaimers are not irrevocable, despite an explicit Colorado statute saying they are. C.R.S.§15–11–1205(5) ("A disclaimer becomes irrevocable when it is delivered or filed").

ii. DPC can invoke C.R.C.P. 60(b) sua sponte, even though no 60(b) motion was made.

iii. DPC can, under C.R.C.P. 60(b), reverse its own 2012 and 2013 orders authorizing the disclaimer, and its 2015 order not reversing that decision, more than 10 years after the original decision, even though the first reversal attempt failed, and the decision not to reverse the disclaim was upheld on appeal.

iv. *Res judicata* does not apply to the 2015 decision.

v. The long-expired statute of limitations for a direct claim against the trusts does not apply.

---

[25]  Supp.App.2 at 333 (not acted on).

[26]  *Black v. Black II*, 482 P.3d at 480.

[27]  Motion for Leave to Amend (Dec. 30, 2021), in *Interpleader Case*, Supp.App.3 at 566.

C,R.C.P. is 60(b), similar to F.R.C.P. 60(b). It permits a second bite at the litigation apple in limited circumstances. Appellee had that bite in 2015. No case supports a third bite, let alone 10 years later, let alone after the second bite was rejected; with rejection affirmed on appeal.

Appellant sought removal to obtain a fair federal ruling. He believes he had a sound legal basis. Given DPC's actions, there is no basis for questioning his good faith in seeking removal.

Appellant agrees that there has been far too much litigation. He has sought to settle through the Transfer Remedy since 2015. Appellee refuses to discuss settlement or even show up for mediation, which Appellant has repeatedly proposed.

## VIII.   Appellant's Original Conduct

It is worth summarizing the original, supposedly terrible conduct, that led DPC to find theft and castigate Appellant.

When Renata died unexpectedly in 2012, Joanne was deeply delusional, had run away from her N.Y. home, and was staying temporarily in Colorado. Most of Renata's financial assets (around $3 million) were at Vanguard, which informed Appellant that it had received internet instructions, weeks before Renata died, without written confirmation, which changed payable-on-death ("POD") beneficiary designations so that 95% of funds would go to Joanne. This made no sense and would have been a disaster for Joanne.

The Black family members believed that the POD change was a mistake. Appellant applied to become Joanne's conservator and seek authority to disclaim the POD designations.

Appellant, advised by experienced Colorado counsel, sought authority as conservator (App.Vol.1 at 15):

> To disclaim Respondent's interest as beneficiary under [Renata's POD] *allowing Respondent's share to pass under Article Fourth of the Last Will and Testament of Renata Black*, dated 12/19/1997, under which *two thirds* of the estate of Renata Black will be contributed to [the SNT].

The disclaimed assets would revert to Renata's estate, and be distributed to the two trusts under her will. Appellee and Joanne's guardian-ad-litem approved Bernard's proposed powers in writing, after reviewing Renata's will and the trusts and counsel explained the disclaimer to them (Supp.App. at 191).

Bernard's request stated that the disclaimed assets would "pass under Article Fourth of [Renata's will]." Article Fourth stated that estate assets would go two-thirds to the SNT and one-third to the Issue Trust (App.Vol.1 at 15). DPC approved the disclaimer (Supp.App.1 at 128, 131). Dain was familiar with Renata's will and knew the Issue Trust would receive one-third of disclaimed assets. Appellee read Renata's will, which said this.

Appellant, as executor, distributed the disclaimed assets two-thirds/ one-third to the SNT and Issue Trust. The *entire claim* against Appellant in 2015 was that, despite disclosure saying "**two-thirds** to the SNT," everyone believed the SNT would receive **all** disclaimed assets. DPC's rhetoric and theft finding far outstrip the reality of what Bernard disclosed.

## IX.   DPC Routinely Ignores Decisions by Other Tribunals

DPC has repeatedly refused to respect other tribunals' decisions. Appellant offered three examples above:

i. DPC refused to honor an NDIL order that litigants obtain NDIL approval before seeking to move trust assets in another court (App.Vol.1 at 200);

ii. DPC ignored an EDNY decision that Dain breached his fiduciary duty and rewarded Dain for his defunding efforts by removing the other trustees (App.Vol.4 at 971);

iii. DPC refused to honor a N.Y. decision that Joanne does not need a conservator,[28] and imposed sanctions on Appellant for even arguing that the N.Y. decision was controlling.[29]

Three more examples.

---

[28]    *NY Guardianship Case (*June 7, 2016) (sealed).

[29]    DPC Order (May 30, 2023), Supp.App.3 at 600**.**

iv. A March 2018 FINRA order froze the trust assets (App.Vol.1 at 121). DPC ordered trust assets transferred to DPC, directly conflicting with FINRA.[30]

v. In January 2018, DPC *sua sponte* suspended Bernard as SNT trustee.[31] (App.Vol.1 at 99). Colorado law requires an emergency suspension to be followed by a hearing. C.R.S. 15–10–503(1). DPC held no hearing. Bernard appealed. The appellate court stressed need for a hearing. *Black v. Black II*, 482 P.3d at 483–484. DPC ignored this instruction.

vi. While removal was pending, 28 U.S.C. § 1446(d) barred DPC from proceeding. DPC scheduled a hearing anyway.[32]

## X.  Conclusion

Non-subject-matter objections to removal were waived. The sole question before the District Court was whether the probate exception applied to all eight claims in the DPC Pleading. Sanctions are unwarranted unless the asserted basis was entirely without color as to all claims. The District Court misunderstood a basic fact (no decedent!), failed to conduct claim-by-claim analysis, and wrongly remanded.

---

[30]    DPC Order (Apr. 27, 2018), Supp.App.3 at 522.

[31]    DPC Order (Jan. 4, 2018), Supp.App.2 at 416.

[32]    DPC order (Feb. 1, 2023), Supp.App.3 at 598.

Stepping back, Appellant brought a removal petition, seeking a fair forum that could bring an end to litigation that has consumed over $6 million in fees, in a fight over $1 million. Appellant has sought to settle, for 100 cents-on-the-dollar, since 2015. DPC seeks instead to defund both trusts. In this and other cases, DPC is running a racket, which benefits guardians, conservators, and their counsel, and extracts fees from vulnerable people.

Appellant urges that the Court read the amicus briefs (Supp.App.3 at 616, 655) to understand the problems with the DPC and the Colorado probate courts. He asks the Court to review his briefs below, and assess whether the removal petition was what he believes it to be – a carefully researched effort to remove a new civil action from a biased state court.

Respectfully submitted,

Dated: July 16, 2024                    By: /s/ Bernard Black

Attorney for
Respondent - Appellant
BERNARD BLACK

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,404 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: July 22, 2024              By: /s/ Bernard Black

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **July 16, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: July 16, 2024                      By: /s/ Bernard Black