RECEIVED
U.S. COURT OF APPEAL
10TH CIRCUIT
2024 AUG 22 PM 1: 15

Case No. 23-1377

United States Court of Appeals
For the Tenth Circuit

JOANNE BLACK,

Petitioner - Appellee,

v.

BERNARD BLACK,

Respondent - Appellant.

**MOTION BY *AMICI CURIAE*, CENTER FOR ESTATE ADMINISTRATION REFORM, KASEM CARES FOUNDATION, AND LIBERATORS FOR JUSTICE FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF RESPONDENT-APPELLANT**

*Center for Estate Administration Reform (CEAR)*
*Kasem Cares Foundation*
*Liberators for Justice*
*Richard Black, Executive Director, Board Member*
*19825 North Cove Road*
*Suite B176*
*Cornelius, NC 28031*
*(804) 564-5330*
*rick@cearjustice.org*

1

## MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE*

The Center for Estate Administration Reform (CEAR), Kasem Cares Foundation, and Liberators for Justice seek leave to file the accompanying brief as *amici curiae*.

*Amicus* CEAR is a nationwide advocacy group advocating for the interests of individuals victimized by predatory guardians, conservators, trustees, and attorneys. CEAR has years of experience in legal proceedings as an amicus. CEAR participates in legal reform efforts nationwide, assists victims of guardianship and conservatorship abuse in pursuing their rights against fiduciaries, and is engaged in public education. Recently, CEAR helped the US Department of Justice investigate the Colorado guardianship system. Among CEAR's recent cases is the amicus brief filed before the United States Supreme Court in the case of *Van Auken v. Catron, et al.* (2020) in support of granting the certiorari.

*Amicus* Kasem Cares Foundation is a nationwide advocacy group dedicated to fighting against the abuse of elderly and disabled individuals. Kasem Care Foundation is engaged in legal reform work and public education. The Kasem Cares' "Visitation Bill" has been passed in twelve states (CA, TX, IA, UT, LA, VA, AL, WI, IL, AR, MD, NE), and nine states are adopting a version of that bill, making it a total of 21 states.

*Amicus* Liberators for Justice ("L4J") is a public interest coalition that supports an individual's right to exercise choice and control over their lives. L4J is engaged in a broad range of efforts to oppose the use of guardianship as a tool for institutionalization and infringements of the rights of people with disabilities. L4J works under five priorities: individual advocacy, legal education, legislative reform, stakeholder partnerships, and story gathering. L4J members work on state and federal levels to advance the least restrictive measures in legislation and policies. L4J promotes reform in agencies and administrations that impact individuals whose self-determination is at risk.

*Amici* did not seek consent from Petitioner-Appellee because, to *Amici's* understanding, this case does not have a party with standing to oppose the appeal. If the conservatorship team of Joanne Black has standing to oppose the appeal, seeking their consent would have been futile, because they have objected to *Amici* filing briefs in other courts in the past.

*Amici* were not able to file this brief within a week from the filing of Appellant's main brief because at that time, *Amici* were not aware of this case. Amici ask this Court to excuse the lateness. Doing so is within this Court's discretion. The late filing will not prejudice Plaintiff-Appellee because, to *Amici's* best understanding, this appeal does not have an appellee. Plaintiff-Appellee has no

cognizable legal interest in the non-monetary sanction imposed by the District Court which is being appealed.

*Amici's* lateness in filing was not caused by either negligence or intent to obtain an unfair advantage. *Amici* believe that lateness is structurally inevitable, given the characteristics of this case. This case derives from an underlying case in the Denver Probate Court ("DPC"), which Respondent-Appellant sought to remove. The proceedings in the underlying case are not publicly available. *Amici* have no direct access to the relevant DPC documents. It takes time for information about sealed cases to reach victim advocates like *Amici*. Despite *Amici*'s best proactive efforts to detect problematic guardianships, *Amici* are often unable to satisfy the short timing window for appeal due to the extreme secrecy of these cases.

*Amici* seek to provide this Court with information about the broad, significant consequences that the decision on this appeal will have for the disability-rights community and the guardianship/conservatorship community nationwide. Due to baby boomer aging, we are now witnessing an unprecedented growth in guardianships, and a correspondingly unprecedented levels of guardianship abuse. A popular Netflix series, *I Care a Lot*, albeit fictional, is an accurate portrayal of the abysmal guardianship situation in many states. Colorado is among the worst

nationwide in the levels of guardianship abuse. That's why the U.S. Department of Justice filed, last year, a federal lawsuit against the state, seeking to curb abuses.

The disability-rights movement relies critically on the willingness of family members and attorneys to challenge a local state-court judge and her appointed personnel, seeking the end to a predatory or unlawful guardianship. Often, victims and their families either cannot afford to hire counsel, or cannot find counsel. Attorneys are not eager to take these cases. The careers of these attorneys are already at risk because challenging the integrity of the court and court-appointed personnel in the jurisdiction where you practice can bring terrible consequences for an attorney. A predatory guardian may retaliate and is likely to receive support from a friendly probate judge.

If this Court penalizes Appellant for trying to remove this case from the Denver Probate Court, this will put a further strain on attorneys who help victims of guardianship abuse, on victim advocates like *Amici*, and on victims themselves. Such appellate decision will make it more dangerous for attorneys to seek a neutral forum in federal court, even when doing so is entirely appropriate. This will cause significant harm to victims of guardianship abuse and to organizations that protect their rights, like *Amici*.

*Amici* seek to explain little-known, but critical details of the recent lawsuit that the U.S. Department of Justice filed against the state of Colorado, where DOJ seeks to curb guardianship abuse, and to explain how the DOJ case is relevant to the current case.

*Amici* also seek to show this Court that this appeal presents a recurring and important issue: state courts and court personnel in Colorado fail to protect vulnerable people from predatory guardians. Instead, guardians with known, lengthy history of abuse receive blessing from Colorado probate courts, and are appointed to new guardianship positions. This pattern makes it necessary for Colorado-based federal courts to lean toward allowing removal whenever the statute permits.

*Amici* seek to explain why so few victims of predatory guardianships are able to defeat these guardianships in Colorado state courts, and thus, need an opportunity to remove their cases to federal courts whenever possible.

*Amici* seek to demonstrate that Colorado probate courts, and the Denver Probate Court in particular, have often enabled guardianship abuse. For this reason, this Court should not penalize Appellant and similarly positioned individuals for the efforts to seek a more just forum.

Finally, A*mici* seek to explain how this Court's decision in the current case will impact the ability of Americans to use the removal statute more broadly, to protect themselves from untrustworthy state courts far beyond guardianship.

These matters provide important, and new, perspectives on why the Court should rule in favor of Appellant.

*Amici* therefore seek leave to file their brief.

August 19, 2024

Respectfully submitted,

*/s/*

*Center for Estate Administration Reform (CEAR)*
*Kasem Cares Foundation*
*Liberators for Justice*

*Richard Black, Executive Director, Board Member*
*19825 North Cove Road*
*Suite B176*
*Cornelius, NC 28031*
*(804) 564-5330*
*rick@cearjustice.org*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, a true and correct copy of the foregoing Motion to file Amicus Brief was served by upon the following, in the manner indicated below.

/s/ Richard Black, Executive Director
Center for Estate Administration Reform

By U.S. mail:

*Appellee:*
*Counsel for Joanne Black*
*Lisa DiPonio, Esq., #27707*
*DiPonio & DiPonio*
*7931 S. Broadway, #348*
*Littleton, CO 80112*

*Pro Se Appellant*
BERNARD BLACK
2829 Sheridan Place
Evanston, Illinois 60201
(847) 807-9571

RECEIVED
U.S. COURT OF APPEALS
10TH CIRCUIT
2024 AUG 22 PM 1: 16

Case No. 23-1377

United States Court of Appeals
For the Tenth Circuit

JOANNE BLACK,

Petitioner - Appellee,

BERNARD BLACK,

Respondent - Appellant.

## BRIEF of *AMICI CURIAE*, CENTER FOR ESTATE ADMINISTRATION REFORM, , KASEM CARES FOUNDATION, AND LIBERATORS FOR JUSTICE IN SUPPORT OF RESPONDENT-APPELLANT

*Center for Estate Administration Reform (CEAR)*
*Richard Black,-Executive Director*
*Kasem Cares Foundation*
*Liberators for Justice*
*Richard Black, Executive Director, Board Member*
*19825 North Cove Road*
*Suite B176*
*Cornelius, NC  28031*
*(804) 564-5330*
*rick@cearjustice.org*

# Contents

INTERESTS OF AMICI CURIAE ................................................................. 1

TABLE OF AUTHORITIES.......................................................................... 4

BRIEF OF *AMICI CURIAE* ....................................................................... 5

SUMMARY OF ARGUMENT..................................................................... 5

ARGUMENT............................................................................................ 15

1. This appeal presents a recurring and important issue – the legal system fails to protect vulnerable people from predatory guardians, when those guardians have the blessing from friendly probate courts. ................................................................................................................ 16

A. The Department of Justice investigation of the Colorado guardianship system and DoJ's lawsuit against the State of Colorado. 17

B. The critical role of the Denver Probate Court in the abuse of Joanne Black and her family by DPC-appointed professionals. .......................... 20

C. The Denver Probate Court has a long history as a highly problematic court. ...................................................................................................... 23

2. This Court cannot stop the unlawful actions of the Denver Probate Court, but it can and should make sure that the Black family is not punished for their efforts to remove the case, and it must send a signal to other victims of predatory guardianships: federal courts will not stand by and do nothing, watching the abuse.............................................................................................. 27

CONCLUSION......................................................................................... 29

CERTIFICATE OF COMPLIANCE............................................................ 31

# INTERESTS OF AMICI CURIAE

***Center for Estate Administration Reform*** (CEAR) CEAR is a nonprofit foundation and nationwide advocacy group advocating for the interests of individuals victimized by predatory guardians, conservators, trustees, and attorneys. CEAR has years of experience in legal proceedings as an amicus. CEAR participates in legal reform efforts nationwide, assists victims of guardianship and conservatorship abuse in pursuing their rights against fiduciaries, and is engaged in public education. Recently, CEAR helped the US Department of Justice investigate the Colorado guardianship system. Among CEAR's recent cases is the amicus brief filed before the United States Supreme Court in the case of *Van Auken v. Catron, et al.* (2020) in support of granting the certiorari.

***Kasem Cares Foundation*** is a nonprofit foundation and nationwide advocacy group is a nationwide advocacy group dedicated to fighting against the abuse of elderly and disabled individuals. Kasem Care Foundation is engaged in legal reform work and public education. The Kasem Cares' "Visitation Bill" has been passed in twelve states (CA, TX, IA, UT, LA, VA, AL, WI, IL, AR, MD, NE), and nine states are adopting a version of that bill, making it a total of 21 states. that advocates for the rights of vulnerable adults, assists victims being involuntarily isolated and promotes reforms nationwide to reduce the

victimization via isolation and abuses routinely experienced in durable power of attorney, guardianship and conservatorship frauds.

*Liberators for Justice ("L4J")* is a public interest coalition that supports an individual's right to exercise choice and control over their lives. L4J is engaged in a broad range of efforts to oppose the use of guardianship as a tool for institutionalization and infringements of the rights of people with disabilities. L4J works under five priorities: individual advocacy, legal education, legislative reform, stakeholder partnerships, and story gathering. L4J members work on state and federal levels to advance the least restrictive measures in legislation and policies. L4J promotes reform in agencies and administrations that impact individuals whose self-determination is at risk.

Proposed *amici* have interest in ensuring that every person can exercise their right to access a fair and impartial judicial forum when seeking protection from a predatory guardianship or conservatorship. Every person should be able to freely exercise their statutory right to remove a case to federal courts, especially when a state court already demonstrated bias or other improper conduct.

Proposed *amici* further have interest in ensuring that every person in a guardianship or conservatorship, or at risk of one, enjoys full, meaningful due process rights, in light of the significant liberty and autonomy interests at stake in

these proceedings, and the long, often life-long duration of the loss of rights that often occurs in guardianships and conservatorships.

Proposed amici further have interest in enforcing the rights of vulnerable individuals against predatory guardians and conservators, especially when state courts ignore the problems or worse, are part of the problem.

Proposed amici further have interest in ensuring that guardians and conservators perform their duties fully and honestly, and that they face serious scrutiny from disinterested courts when they misbehave.

# TABLE OF AUTHORITIES

**Cases**

*In re Joanne Black*, Index 80253 (Sup.Ct., Richmond Cy.)...............................7, 17

*People ex rel. Smith v. Fremont Cnty. Ct.*, 106 Colo. 95 (1940)...........................8

*People ex rel. Smith v. Fremont Cnty. Ct.*, 106 Colo. 95 (1940)..........................17

U.S. v. Colorado, Case 1:23-cv-02538 (filed 9/29/2023)...........................2, 13, 15

**Statutes**

C.R.S. §15-14.5-205 ...........................................................................................7, 17

Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act...........24

**Other Authorities**

. Mark Hall, *The Greatest Wealth Transfer in History: What's Happening and What Are the Implications*, FORBES (Nov. 11, 2019) .................................20

Arian Campo-Flores & Ashby Jones, *Abuse Plagues System of Legal Guardians for Adults*, WALL ST. J. (Oct. 30, 2015) ....................................21

Dennis Thompson, "How 1.3 Million Americans Became Controlled by Conservatorships," *PressNewsAgency* (October 19, 2021) ............................20

Diane Dimond, WE'RE HERE TO HELP: WHEN GUARDIANSHIP GOES WRONG (2023)............................................................4, 6, 7, 26

Jennifer Kovaleski, *Colorado Guardianships Can Bleed Estates with Little to no Oversight*, ABC-DENVER7 (May 18, 2021).........................................22, 23, 24

Jess Stonefield, *Are Boomers Ready to Make the Greatest Wealth Transfer in History?*, FORBES (May 21, 2018) ..........................................................20

*Mistreatment and Abuse by Guardians and Other Fiduciaries* (updated October 2023).............................................................................................................5

Netflix series, *I Care a Lot* ...................................................................................4

Pam Zubeck, *How courts and guardians exploit the elderly and their estates and get away with it*, COLORADO SPRINGS INDEP. (Jan. 8, 2020) ....................5

Pam Zubeck, *How Courts and Guardians Exploit the Elderly and Their Estates and Get Away with It*, COLORADO SPRINGS INDY (January 8, 2020).........23

Rachel Aviv, *How the Elderly Lose Their Rights*, THE NEW YORKER (October 2, 2017) .....................................................................................................5

Sam Sugar, GUARDIANSHIPS AND THE ELDERLY: THE PERFECT CRIME (2018)............................................................................................................4

Susan B. Garland, *Calls for Court Reform as Legal Guardians Abuse Older Adults*, N.Y. TIMES (July 28, 2017) .......................................................21

# BRIEF OF *AMICI CURIAE* [1]

## SUMMARY OF ARGUMENT

The decision in this case may have broad and deep consequences for the disability- and elderly-rights community and the guardianship community nationwide. Increasingly, disabled or elderly individuals find themselves victims of predatory or unlawful guardianships imposed against their will by state courts. These individuals are victimized by court-appointed guardians and conservators, who steal the wards' assets, overbill, conceal information, and so on. These actions are often ignored or even blessed by friendly appointing courts. The disability- and elderly-rights movements rely critically on the willingness of family members and attorneys to challenge a state-court judge and her appointed personnel when seeking justice for the wards.

Often, victims and their families, as well as victims-rights organizations, cannot find counsel for such cases. Attorneys are not eager to take these cases because challenging the integrity of the court and court-appointed personnel in the jurisdiction where you practice can bring terrible consequences for an attorney.

---

[1] No counsel for a party authored this brief in whole or in part. No party, party's counsel or any other person paid to fund preparing or submitting the brief. The Black family paid copying and mailing costs to mail the briefs to this Court.

The Congress recognized that such situations might happen – that state courts might occasionally show bias. This is why the Congress passed the removal statute. It is critical for federal courts to follow the letter and spirit of the removal statute and show mercy to the victims of guardianship abuse. Federal courts should allow removals liberally, whenever the statute permits, especially in cases where a party seeks to escape from a state court that enabled a predatory guardianship.

It is critical that federal courts not impose their own penalties on parties who seek to remove a case involving a predatory guardianship or conservatorship. Should this Court do so, attorneys will refuse to risk seeking removal, even when removal is proper. Victims, their families, and victim-rights organizations will suffer. Predatory guardians will increase abuse.

In Colorado, the guardianship system is maintained by probate courts. Colorado probate courts, including the largest one – the Denver Probate Court ("DPC") – have a nationwide reputation for abuse of wards by predatory guardians and conservators. This abuse is so widespread and well-known that the Department of Justice recently filed a lawsuit against the state of Colorado in the District Court of Colorado.[2] The DoJ's case is narrow

---

[2] *U.S. v. Colorado*, Case 1:23-cv-02538 (filed 9/29/2023).

because of jurisdictional concerns, but the exposed misconduct is indicative of a much broader class of problems in Colorado probate courts.

Moreover, Colorado probate courts have been subjects of three state audits – in 2006, 2011, and 2017. Each state audit found significant problems related to the misconduct of court-appointed personnel and poor supervision by probate judges. Further, the Denver Probate Court has been repeatedly, negatively profiled in investigative media reports. Despite occasional media frenzy, nothing seems to change.

Every victim of the abhorrent Colorado guardianship system has a right to a trustworthy forum. Colorado probate courts do not provide them such forum because, as state audits have repeatedly found, Colorado probate courts are a part of the problem. The Congress recognized that state court can be biased, in particular against out-of-state litigants such as Appellant in this case. That's why the Congress passed a statute allowing parties to remove cases to federal courts.

Appellant had every right to seek removal of his family's case away from the Denver Probate Court. His decision was fully justified, given DPC's long, well-documented record of improper conduct, in this case and in many other similar cases. If this Court chooses to punish Appellant for seeking to

remove, this will fuel the already intolerable level of abuse that vulnerable people suffer in the hands of probate-court appointees. Victims of guardianship abuse and victim-rights organizations will be afraid to seek help in federal courts.

We urge this Court not to do this.

Further, we urge this Court to reconsider its decision to remand the case back to the Denver Probate Court.

With the aging of baby boomers, we have entered a major crisis of our guardianship system. Rogue guardians, with critical aid from friendly probate courts, loot the estates of helpless individuals. The crisis has reached such proportions that it became a cultural meme, finding reflection in a Netflix series,[3] books,[4] and press coverage.[5] Criminal prosecutions have occurred, but sadly, very rare.[6] The US Department of Justice issued its own

---

[3] See Netflix series, *I Care a Lot*.

[4] See Diane Dimond, WE'RE HERE TO HELP: WHEN GUARDIANSHIP GOES WRONG (2023); Sam Sugar, GUARDIANSHIPS AND THE ELDERLY: THE PERFECT CRIME (2018).

[5] See Rachel Aviv, *How the Elderly Lose Their Rights*, THE NEW YORKER (October 2, 2017).

[6] *See* Pam Zubeck, *How courts and guardians exploit the elderly and their estates and get away with it,* COLORADO SPRINGS INDEP. (Jan. 8, 2020), at.

report, *Mistreatment and Abuse by Guardians and Other Fiduciaries*,[7] describing this problem and decrying the limited recourse, information, and help for the victims.

A typical looting-guardianship (or, as in this case, conservatorship) scheme works as follows: a money-driven professional guardian finds a wealthy person, often elderly or disabled, but capable of managing her own affairs, either alone or with the help of family. The professional approaches a friendly local court, known for close ties to the guardianship circles, and seeks to establish a guardianship/conservatorship. Because victims lack sophistication or are hit by surprise, these cases often barely see any defense. Once the court grants guardianship/conservatorship, the ward loses control over her assets and her major decisionmaking. The professional then loots the estate through overbilling, sales of the ward's assets to related parties at low prices, and simple misappropriation.

When the victim has relatives, the looting professional "deliberately align[s] him or herself with the most disruptive and untrustworthy member

---

https://www.csindy.com/coloradosprings/how-courts-andguardians-exploit-the-elderly-and-their-estates-and-get-awaywith-it/Content?oid=21038322.

[7] *Mistreatment and Abuse by Guardians and Other Fiduciaries* (updated October 2023), at https://www.justice.gov/elderjustice/mistreatment-and-abuse-guardians-and-other-fiduciaries

of a family. This ensures the family fights will continue. Angry opposing relatives will file multiple complaints with the court… Each time a complaint is filed, a hearing is called, and the guardian must respond to the grievance in court. Time spent preparing for court, or appearing in court, or writing a post-hearing report allows the guardian to charge for more and more billable hours… [I]t is in the guardian's financial interest to keep the conflicts brewing."[8]

The current system encourages predatory guardians to hire an army of attorneys, accountants, psychiatric evaluators, and so on, because doing so helps fuel litigation and generates professional fees. "And guess who is responsible for paying the ever-mounting fees for all those outside players? It is the ward, as their confiscated money is used to pay all the bills. When a frustrated family member fights what they see as an unjust system, they may very well be depleting their own inheritance."[9]

Rogue conservators and guardians would not have been able to succeed in their misconduct if they were not supported by friendly state courts. What

---

[8] Diane Dimond, WE'RE HERE TO HELP: WHEN GUARDIANSHIP GOES WRONG (2023) (*Dimond*), p.7.

[9] *Dimond*, pp. 7-8.

makes the current case truly extraordinary is the role of the Denver Probate Court, which maintains a conservatorship over Joanne Black.

Joanne Black, the ward in this case, has lived her entire life in New York, and was in Colorado only temporarily for part of 2012-2013. She never established Colorado residency and lived temporarily in motels. The Denver Probate Court established a conservatorship over her in 2012 due to her mental health crisis. In early 2013, Joanne returned to New York, where she received treatment. In 2016, a New York court held a multi-day evidentiary hearing, and concluded that Joanne was competent and does not need conservatorship.[10]

This should have ended all restrictions on Joanne's freedom to manage her own affairs. Under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, adopted by Colorado, C.R.S. §15-14.5-205, the competency decisions made by the court in the state of the ward's domicile are binding on all other states. Under *People ex rel. Smith v. Fremont Cnty. Ct.*, 106 Colo. 95 (1940), Colorado courts lose subject matter jurisdiction to maintain a conservatorship as soon as a court of relevant jurisdiction finds the ward legally competent or not in the need for a conservator.

---

[10] *In re Joanne Black*, Index 80253 (Sup.Ct., Richmond Cy.) (June 7, 2016).

But DPC refuses to honor the N.Y. decision and dissolve the Colorado conservatorship. **For eight years, DPC has been maintaining a conservatorship over a legally competent non-resident.** This conservatorship is plainly unlawful. During these years, Joanne's unlawful Colorado conservatorship team has employed more than a dozen professionals and generated millions of dollars in professional fees.

The current case might well become a new high-water mark for the systemic dysfunction of our guardianship system. *Amici* cannot recall another case where for eight years, a court has refused to dissolve a conservatorship over a legally competent non-resident, ignoring a binding adjudication of the ward's full legal capacity, and lack of need for a conservator, issued by the court of the ward's jurisdiction.

The Joanne Black conservatorship is unusual in a second respect. One common family strategy, to provide protected assets for a disabled family member, is to set up a family trust for his or her benefit. The Black family did so. Joanne Black is the primary beneficiary, and sole beneficiary during her lifetime, of the Supplemental Needs Trust for the Benefit of Joanne Black ("SNT"). This trust cannot be invaded to pay the fees of her conservator, her DPC-appointed counsel, her DPC-appointed guardian-ad-litem, and a veritable

army of lawyers, who have run up millions of dollars in unpaid fees. Their solution is to seek to defund the SNT, transfer all SNT assets to the conservatorship – which they run! – so they can be paid from the trust assets. The DPC, astonishingly, is supporting this effort.

The actions of the Denver Probate Court create a strong impression of impropriety and even corruption. It is hard to think of any purpose for maintaining this bizarre conservatorship, and for seeking to defund a trust established to protect assets for Joanne Black's benefit, except to transfer Joanne's protected assets to an army of highly-paid professionals, retained by DPC or DPC-appointed personnel.

If Joanne's conservator and other DPC-appointed "protectors", supported by the DPC, succeed if removing assets from the SNT, all wealth of the Black family will be transferred to DPC's appointees.

Joanne's brother, Appellant Bernard Black, attempted to prevent this disaster by removing a new set of claims that the conservatorship team filed at DPC, from DPC to a federal court. Bernard had every right to do so. The federal district court should have honored the removal statute and should have kept the case. Instead, the district court remanded, and, while doing so, it sanctioned the Black family for trying to remove. The sanctions ruling was based almost

entirely on references to inflammatory opinions issued by DPC against members of the Black family, either directly or from other courts which quoted DPC.

This puts our removal system on its head. The Congress expressly recognized that sometimes, we cannot trust state courts, and passed the removal statute for that reason. When a litigant is trying to remove, he signals that he does not trust a state court, exactly as the Congress envisioned. A federal court should not respond to the removal petition by asking what that state court judge thinks about the litigant. The whole point of removal is that the litigant has reasons to think that the state court judge is not trustworthy! An honest state court judge has no reasons to oppose the removal, much less to issue a blasting diatribe against the removing litigant to impress other courts. If anything, an honest state court judge would welcome removal as clearing the docket. The worst state court judges put out the most inflammatory attacks on litigants and their families precisely because they know that such attacks could prejudice the views of other judges.

We ask this Court to respond to such behavior by state court judges differently. **The more a state court judge personally attacks a litigant and litigant's family, the stronger should the federal court militate toward allowing removal.**

This Court should hold that it is not appropriate to decide a removal petition, and worse, to sanction the party seeking removal, on the basis of opinions of the state court from whom a litigant is trying to remove. Giving any weight to state court's views in removal decisions would incentivize rogue state courts nationwide to publicly attack victims of guardianship abuse, their families, and victims'-rights organizations, to prevent victims from escaping to federal courts. We also urge this Court to reject punishments for seeking removal, because punishments will dry up an already small pool of counsel who are willing to stand up with guardianship victims against a local state court. A clear, strong statement to that effect will strengthen our removal regime, as it was envisioned by the Congress, will move us towards fixing out horrid guardianship system, and will help the most defenseless in our society.

## ARGUMENT

This appeal presents an important issue affecting millions of vulnerable Americans: their inability to escape rogue court-appointed guardians and conservators who transfer their wards' assets to themselves with impunity.

As discussed below, the Colorado guardianship system, overseen by state probate courts, is thoroughly dysfunctional and one of the worst in the

country. This Court cannot directly intervene into that dysfunction. For this, the U.S. Justice Department has recently filed a suit in the US District Court in Denver.[11] Likewise, this Court cannot end Joanne Black's Colorado conservatorship, unlawfully maintained by the Denver Probate Court, the court that has been at the center of numerous scandals and investigations for years.[12] But this Court does have the power to rein on the abuse in other ways.

The District Court should have helped the Black family escape the abuse of the predatory conservatorship team by removing the case to the federal court. It did not. At the very least, this Court should not impose any further punishments on Bernard Black for trying to liberate his family from a rogue court. This Court should make it clear to victims of misbehaving state courts and court personnel: the federal system is there to help them vindicate their rights.

**1. This appeal presents a recurring and important issue – the legal system fails to protect vulnerable people from predatory guardians,**

---

[11] See infra, part 2.A, for details on the DoJ lawsuit against the state of Colorado.

[12] See infra, part 2.D.

**when those guardians have the blessing from friendly probate
courts.**

### A. The Department of Justice investigation of the Colorado guardianship system and DoJ's lawsuit against the State of Colorado.

The Colorado guardianship system, run by its probate courts, has a
nationwide reputation for corruption, funneling of wards' assets to court-
appointed professionals, and abuse of wards. The US Department of Justice
has recently investigated it and found significant evidence of misconduct.
DoJ attempted to negotiate with the state of Colorado, failed, and is currently
suing the state in the District Court of Colorado, seeking significant
changes.[13] Amicus CEAR participated in the DoJ investigation, contributing
its expertise in this area. CEAR was disappointed, but not surprised, that
Colorado was unwilling to reach a consent settlement with DoJ and reform
its guardianship system, that could have avoided the lawsuit.

The DoJ complaint refers to overbilling of Medicaid, and may appear
unrelated to the issues raised by the current case, but this would be a mistaken
impression. The underlying issues are the same: Colorado probate courts,
Denver Probate Court being the main one, are violating the rights of wards

---

[13] *U.S. v. Colorado*, Case 1:23-cv-02538 (filed 9/29/2023).

for the benefit of court-appointed guardians, conservators, and their associates.

In particular: the state of Colorado has many elderly and disabled individuals who receive government-funded services. These individuals are entitled to receive these services at their own homes. Instead, the state of Colorado insists on providing essential services only in nursing homes. Per DoJ complaint:

> These services can be provided to people in their own homes. But thousands of people with physical disabilities in Colorado can only access these services by giving up their homes and moving into a nursing facility. Each year, many Coloradans with physical disabilities move into nursing facilities… For some, a brief rehabilitative stay turns into a long-term nursing facility placement when the State does not provide the services they need to move back to their homes. As a result, some people who want to return home have stayed in nursing facilities for many years.[14]

---

[14] *Id.*, DoJ Complaint at 2.

The reason for this is simple: money. When wards are institutionalized in closed facilities, it is easy for dishonest proprietors and court-appointed personnel to turn them into cash cows. Institutionalized wards can be medicated with little oversight from families, from independent medical professionals, or from independently-retained lawyers. Institutionalized wards do not file complaints, do not contest their treatment, and do not inquire into the amounts of prescriptions, reimbursements, or any gaps between what's ordered, what's necessary, and what's delivered. Institutionalization also generates billable hours for rogue guardians and other personnel. Finally, the individuals who run those institutions financially benefit from having more institutionalized wards.

Moving an institutionalized ward back home causes the loss of serious money for dishonest nursing home proprietors and guardians. Thus, when a ward or her family asks to return home, court-appointed guardians often collude with nursing home proprietors and other interested personnel to keep the ward institutionalized. When the family complains, the rogue guardian asks the friendly probate court, which originally established the guardianship, to seal information from the family, and/or asks for a restraining order against the family, barring the family from having any

contacts with the ward.

This isolation causes grievous harm to the wards. And yet, the unholy alliance of guardians, nursing home proprietors, and Colorado probate courts makes the abuse nearly impossible to end. Below, we list a few publicly profiled horror stories from the Denver Probate Court that illustrate the pattern.[15]

Federal courts might be the only entities that are able and willing to address the problem of state probate courts run amok. This was likely the reason behind the DoJ's decision to file its current lawsuit against Colorado in the District Court of Colorado. The federal government cannot directly intervene into the abuse of wards perpetrated with the blessing of Colorado probate courts, but it can challenge violations of specific federal statutes, such as the Americans with Disabilities Act.

**B. The critical role of the Denver Probate Court in the abuse of Joanne Black and her family by DPC-appointed professionals.**

The case on this appeal is among the most extreme in CEAR's lengthy experience. Joanne Black is a lifelong resident of New York. In 2012-13, while having a mental breakdown, for a few months, she traveled to

---

[15] Infra Part 1.C.

Colorado. In Denver, Joanne did not establish residence, but lived in motels, moving frequently from one motel to another. In 2012, the Denver Probate Court established a conservatorship over Joanne to address issues arising from the death of her mother in New York. In early 2013, Joanne returned to New York and has lived there since. In 2016, the New York supreme court held a multi-day hearing, where Joanne and many witnesses testified. The court found Joanne fully legally competent and not in the need of a conservator.[16]

Because New York is the state of Joanne's domicile, this decision is binding on Colorado.[17] Under the binding Colorado Supreme Court precedent,[18] as soon as a court with jurisdiction (here – NY) finds the ward legally competent, state courts lose subject matter jurisdiction to maintain a conservatorship. Denver Probate Court was required to promptly dissolve Joanne's conservatorship in June of 2016. Colorado is required to give full faith and credit to the N.Y. decision.

---

[16] *In re Joanne Black*, Index 80253 (Sup.Ct., Richmond Cy.) (June 7, 2016).

[17] Under the *Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act*, adopted by Colorado, C.R.S. §15-14.5-205, the competency decisions made by the court of the ward's permanent residence are binding on all other states.

[18] *People ex rel. Smith v. Fremont Cnty. Ct.*, 106 Colo. 95 (1940).

But DPC did not end the conservatorship. Instead, for eight years, it has continued to ignore its lack of subject matter jurisdiction. During this period, DPC issued numerous rulings, all aimed at helping DPC-appointed Colorado conservator and her team generate millions of dollars in fees for their "services" to Joanne – a legally competent New Yorker.

This is where the current case comes in, the case that Bernard Black tried to remove. Joanne has no money to pay enormous fees generated by her conservatorship team. Joanne's money is securely shielded in her supplemental-needs trust, the SNT. The SNT is a statutory trust; per statute, the money cannot be withdrawn to pay Joanne's personal creditors, including conservators and anyone hired by them. The only way for Joanne's Colorado team to be paid with Joanne's money is to remove assets from the SNT.

To accomplish this, the Denver Probate Court issued an order, where it instructed DPC-appointed conservator to file a new case **before DPC itself** (!!!), seeking to defund the SNT. Defunding strips trust assets of their statutory protection, so they can be paid out to the conservatorship team.

DPC-orchestrated scheme of defunding the SNT generates no benefit to Joanne, the ostensible target of these "good deeds". As soon as the assets leave the SNT, they will be subject to claims from Joanne's conservatorship

team in payment for their "services" to her. Whatever is left over will be claimed by Medicaid, which over Joanne's lifetime accumulated millions of dollars in claims against her. Worse: the defunding will cause Joanne to lose eligibility to means-tested government services, which she currently receives, and lose, among other things, her housing in a government-supported halfway house, where she pays deeply subsidized rent. The remainder beneficiaries of the SNT will unquestionably lose, as they will get nothing at all.

### C. The Denver Probate Court has a long history as a highly problematic court.

We are in the midst of the greatest intergenerational transfer of wealth in human history.[19] Over the next two decades, Baby Boomers will transfer more than $30 trillion in wealth to younger generations.[20]

Guardianships affect a substantial portion of these transfers. Every year, new guardianships or conservatorships place more than $50 billion under the

---

[19] Jess Stonefield, *Are Boomers Ready to Make the Greatest Wealth Transfer in History?,* FORBES (May 21, 2018).

[20] Mark Hall, *The Greatest Wealth Transfer in History: What's Happening and What Are the Implications,* FORBES (Nov. 11, 2019). https://www.forbes.com/sites/markhall/2019/11/11/the-greatest-wealth-transfer-in-history-whats-happening-and- what-are-the-implications/#e5752314090a.

control of others, and with the average case lasting about six years, that makes for a $300 billion pot of assets subject to guardianship or conservatorship at any given time. This is the money that is being controlled by largely unsupervised court appointees.[21] Other sources estimate a similar amount, more than $250 billion.[22] With the aging of the baby boomers, these numbers will increase.[23]

Abuse runs rampant. Examples abound, many from the same Colorado court, the Denver Probate Court, whose actions create the backdrop for the events on this appeal. Here are a few chilling stories from DPC.

A USPS employee, Pat Brannigan, lived independently until he received a $100,000 settlement for his job injury. Before he could get the money, the probate court placed him into a court-ordered conservatorship. "[S]ocial services petitioned the court and felt Brannigan couldn't take care of the settlement money." The conservators then charged Brannigan $210 per hour for tasks like making phone calls, which Brannigan managed to do throughout his lifetime by himself. As a result, "within two years all the money was gone." – spent

---

[21] *See* Dennis Thompson, "How 1.3 Million Americans Became Controlled by Conservatorships," *PressNewsAgency* (October 19, 2021).

[22] *See* Arian Campo-Flores & Ashby Jones, *Abuse Plagues System of Legal Guardians for Adults,* WALL ST. J. (Oct. 30, 2015).

[23] Susan B. Garland, *Calls for Court Reform as Legal Guardians Abuse Older Adults,* N.Y. TIMES (July 28, 2017).

on the conservatorship personnel. "[I]nstead of paying off his mother's home, a reverse mortgage was placed on it." None of the settlement money went to Brannigan. Once the money was gone, the conservator was gone as well.[24]

Denver Probate Court imposed a similar predatory conservatorship on Sharon Wells. Wells "now has a court-appointed guardian who oversees her care, and a conservator who oversees her money. Reports from the conservator show both have drained hundreds of thousands of dollars from her estate in fees... For one 18-month period, records show the conservator charged nearly $150,000 to Sharon Wells, making up to $325 an hour for taking care of her estate." Wells has grown children, who have repeatedly asked the DPC to take over the conservatorship, but the court refused. "It's a money-making machine," said Greg [Well's son].[25]

Yet another case from the same Denver Probate Court is that of Luanne Fleming, who became "a victim-turned-advocate after her mother was placed in a guardianship in Colorado several years ago."[26] "Her family watched as millions were drained from her parents' estate when 17 attorneys worked their way into the case.

---

[24] Jennifer Kovaleski, *Colorado Guardianships Can Bleed Estates with Little to no Oversight*, ABC-DENVER7 (May 18, 2021). https://www.denver7.com/news/investigations/colorado-guardianships-can-bleed-estates-with-little-to-no-oversight.

[25] Id.

[26] Id.

'My family had just been played,' she says. She was finally able to rescue her mother from guardianship, she says, but the money was gone."[27]

"'We did eventually get my mom back, but our whole estate was gone, is gone,' Fleming said. 'This is happening systematically throughout Colorado.' … 'I have talked to over 160 families in Colorado,' she said. 'They are telling me that their moms are being taken away from them unwarranted, their estates are being pillaged, that they are restricted from seeing their mothers.'"[28]

The consistent pattern of predatory conservatorships in Colorado led to an effort to change the law. In 2017, Laura Woods, a then-Colorado state senator, "tried to pass legislation… that would have given basic rights to those placed in guardianship." Woods "said the bill was killed in the House because 'we were going to impact the cash cow they have.' Woods pointed to the recent a Netflix movie about a predatory guardianship called 'I Care a Lot,' which she said shows what's happening in courts across Colorado. 'One-hundred percent accurate,' she

---

[27] Pam Zubeck, *How Courts and Guardians Exploit the Elderly and Their Estates and Get Away with It*, COLORADO SPRINGS INDY (January 8, 2020). https://www.cearjustice.org/wp-content/uploads/2020/08/1.8.20.Colorado.INDY_.The-Perfect-Crime.Zubeck.pdf.

[28] Jennifer Kovaleski, *Colorado Guardianships Can Bleed Estates with Little to no Oversight*, DENVER7 (May 18, 2021). https://www.denver7.com/news/investigations/colorado-guardianships-can-bleed-estates-with-little-to-no-oversight.

said."[29]

The pattern of predatory conservatorships in Colorado triggered state audits in 2006, 2011, and 2017. The reports "found a lack of oversight with the courts is at the root of the problem, with conservators charging rates up to $350 per hour."[30]

These are just some of the many stories from Colorado; there are many more from Colorado and other states. This appeal presents issues affecting legions of Americans at the most vulnerable time in their lives. *Amici* urge this Court to confront this problem directly, resolve the appeal of favor of Appellant, and take an important step to limit the harm from predatory conservatorships.

**2. This Court cannot stop the unlawful actions of the Denver Probate Court, but it can and should make sure that the Black family is not punished for their efforts to remove the case, and it must send a signal to other victims of predatory guardianships: federal courts will not stand by and do nothing, watching the abuse.**

The Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (UAGPPJA), adopted in both Colorado and Joanne's home state of New York, was passed precisely for cases like this one. One state court established a

---

[29] Id.

[30] Id.

conservatorship; the ward moved; sometime later, the court of the ward's new domicile state finds the ward not in the need of a conservatorship. The decision of the court in the ward's home state takes priority; all other courts must stop.

The law is clear that New York, the state of Joanne's lifetime and current residence, is determinative. The refusal of DPC to comply with the law and end the conservatorship is, sadly, a classic sign of a predatory conservatorship.

"At a hearing of the Michigan State Senate Judiciary Committee on June 10, 2021, attorney Bradley Geller – a man who wrote the Michigan guardianship reform act… --- gave a very frank assessment of the pending legislation… 'These bills are meaningless and would change nothing… The basic problem in our guardian system is that *judges. don't. follow. the. law!'* he said, deliberately punctuating each word and sparking a round of applause from spectators. 'And it is magical thinking to believe that if judges don't follow the law now, that if we pass new provisions, then suddenly they judges will comply!'" *Dimond*, p.167 (emphasis in original).

DPC simply *does not. follow. the law!* Colorado can try all sorts of legislative reform efforts. But as long as Colorado state courts openly violate the law, reforms are doomed.

This Court cannot stop DPC. The District Court should have allowed the removal of the new claims from DPC to the district court. That would

create a path to escape for other victims of predatory guardianships who also face new, removable claims against them in state courts. The District Court did not do this. The very least this Court can do is to make it clear that seeking removal in situations as extreme as this one will not lead to penalties. This Court can and should clarify that everyone is welcome to seek protection in federal courts, as is their right under the removal statute.

Helping the victims of guardianship abuse escape rogue state courts that promulgate the abuse is critical for the integrity and decency of our failing guardianship system.

## CONCLUSION

For the foregoing reasons, *amici* urge the Court to rule in favor of the Appellant, demonstrating to the guardianship world that the right of the parties to escape a rogue state court and its guardians is protected, and the victim of guardianship abuse will not be punished for daring to file a removal petition.

Respectfully submitted,

*Kasem Cares Foundation*
*Center for Estate Administration Reform (CEAR)*
*Liberators for Justice*

*Richard Black, Executive Director*

*(no relation to Appellants or their family)*
*19825 North Cove Road*
*Suite B176*
*Cornelius, NC 28031*
*(804) 564-5330*
*rick@cearjustice.org*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of Rules 29 and 32, including all formatting requirements set forth in these rules.

Specifically, the undersigned certifies that:

> The brief complies with the applicable word limits set forth in Rule 29(d). The body of the brief contains 5,395 words, versus the limit of 6,500 words.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of Rules 29 and 32.

By: /s/ Richard Black

Richard Black
Executive Director
Center for Estate Administration Reform
Board Member
Kasem Cares Foundation
Board Member
Liberators for Justice

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, a true and correct copy of the foregoing Amicus Brief was served by upon the following, in the manner indicated below:

/s/ Richard Black, Executive Director
Center for Estate Administration Reform

By U.S. mail

*Appellee:*
*Counsel for Joanne Black*
*Lisa DiPonio, Esq.*
*DiPonio & DiPonio*
*7931 S. Broadway, #348*
*Littleton, CO 80112*

By U.S. mail
*Appellant*
BERNARD BLACK, *pro se*
2829 Sheridan Place
Evanston, Illinois 60201
(847) 807-9571